J. Henk Taylor, A.Z. Bar #016321
RYAN RAPP UNDERWOOD & PACHECO, P.L.C.
3200 N. Central Avenue, Suite 2250, Phoenix, Arizona 85012
Telephone: (602) 280-1000
Facsimile: (602) 265-1495
htaylor@rrulaw.com

Aaron S. Ament, D.C. Bar #1602164 (admitted *pro hac vice*)
Daniel A. Zibel, D.C. Bar #491377 (admitted *pro hac vice*)
Maya H. Weinstein*, N.C. Bar #56621 (admitted *pro hac vice*)
NATIONAL STUDENT LEGAL DEFENSE NETWORK
1015 15th Street NW, Suite 600, Washington, D.C. 20005
(202) 734-7495
aaron@defendstudents.org
dan@defendstudents.org
maya@defendstudents.org

Brian Galle, N.Y. Bar #419154 (admitted *pro hac vice*)
Georgetown University Law Center
600 New Jersey Avenue NW, Washington, D.C. 20001
(202) 662-4039
brian.galle@georgetown.edu

Attorneys for Proposed Intervenor-Defendant Student Defense
*Admitted to practice law only in North Carolina; Supervised by organizational principals while D.C. Bar application is pending.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Grand Canyon University,<br><br>    Plaintiff,<br><br>v.<br><br>Miguel Cardona, in his Official Capacity as Secretary of the United States Department of Education, and The United States Department of Education.<br><br>    Defendants,<br><br>and<br><br>National Student Legal Defense Network,<br><br>    Applicant to Intervene. | No.: 2:21-cv-00177<br><br>**REPLY IN SUPPORT OF NATIONAL STUDENT LEGAL DEFENSE NETWORK'S MOTION TO INTERVENE AS A DEFENDANT**<br><br>May 13, 2021 |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................. iii

ARGUMENT ...................................................................................................................... 1

    I.    **Student Defense's Intervention Will Protect the Student Interest** ............................................................................................... 2

    II.   **The Arguments Raised by GCU Are Red Herrings** ....................... 6

    III.  **Participation as an Amicus Curiae Would Likely Prevent Students from Having a Full Voice** ................................................... 9

CONCLUSION ................................................................................................................. 10

# TABLE OF AUTHORITIES

**CASES AND CASE DOCUMENTS**

Compl., Dkt. 2, *Ctr. for Excellence in Higher Educ. v. King*, No. 2:16-cv-00911-CW (D. Utah Aug. 20, 2016) .................................................................................................. 3

Compl., Dkt. 1, *Infusino v. DeVos*, No. 1:19-cv-03162 (D.D.C. Oct. 22, 2019) ..... 4

Def.'s Resp. to Mot. to Intervene, Dkt. 48, *Pennsylvania v. DeVos*, No. 1:20-cv-1468 (July 1, 2020 D.D.C.) ................................................................................................ 6

*Conservation Nw. v. Rey*, No. C08-1067-JCC, 2008 WL 11344657 (W.D. Wash. Oct. 16, 2008) ......................................................................................................................... 1

*Colorado ex rel. Coffman v. Ctr. for Excellence in Higher Educ.*, No. 14-cv-34530, slip. op. (Denv. Dist. Ct., Colo. Aug. 21, 2020) ....................................................... 3–4

Joint Mot. to Seal, Dkt. 48, *Ctr. for Excellence in Higher Educ. v. King*, No. 2:16-cv-00911-CW (D. Utah Aug. 1, 2017) ......................................................................... 9

*Kootenai Tribe of Idaho v. Veneman*, 313 F.3d 1094, 1111 (9th Cir. 2002) ... 1, 2, 9

Min. Order, *Pennsylvania v. DeVos*, No. 1:20-cv-1468 (D.D.C. July 6, 2020) ....... 6

*United States v. City of Los Angeles*, 288 F.3d 391, 400 (9th Cir. 2002) ................ 9

**STATUTES**

Pub. L. 116-260, 134 Stat. 1182 .............................................................................. 8

Pub. L. 117-2, 135 Stat. 4 ........................................................................................ 8

**OTHER AUTHORITIES**

Danielle Douglas-Gabriel, *DeVos cancels nearly $11 million in student loans that the Education Dept. sent to unaccredited for-profit colleges*, Wash. Post (Nov. 8, 2019), *available at:* https://www.washingtonpost.com/education/2019/11/08/devos-cancels-nearly-million-student-loans-that-education-dept-sent-unaccredited-for-profit-colleges/ ................................................................................................................. 5

H. Comm. on Educ. & Labor, Shattered Dreams: Examining the Education Department's Role in the Misconduct of Dream Center Education Holdings (2020), *available at:* https://edlabor.house.gov/imo/media/doc/Shattered%20Dreams%20Examining%20the%20Education%20Departments%20Role%20in%20the%20Misconduct%20of%20Dream%20Center%20Education%20Holdings1.pdf .........................................4-5

Letter from Douglas Parrott, Division Director, U.S. Dep't of Educ., to Eric Juhlin, President, CEHE (Aug. 11, 2016), *available at:* https://www2.ed.gov/documents/press-releases/08112016-cio-decision.pdf ..... 3

Letter from Michael Frola, Dir., Multi-Reg'l & Foreign Schs. Participation Div., U.S. Dep't of Educ., to Mark Dottore, Pres. & CEO, Dottore Cos. & Randall Barton, Chairman of Bd., Dream Ctr. Educ. Holdings (Feb. 27, 2019), *available at:* https://studentaid.gov/sites/default/files/argosy-cio-denial-redacted.pdf ........... 5

Letter from Michael Frola, Dir., Multi-Reg'l & Foreign Schs. Participation Div., U.S. Dep't of Educ., to Brian Mueller, Pres., Grand Canyon Univ. (Nov. 6, 2019), *available at:* https://studentaid.gov/sites/default/files/argosy-cio-denial-redacted.pdf ......................................................................................................... 7

Letter from Susan Crim, Notice Debarment and Suspension Official, U.S. Dep't of Educ. to Eric Juhlin, CEO, Ctr. for Excellence in Higher Educ. (Apr. 23, 2021), *available at:* https://bit.ly/2RJTyBO ..................................................................... 4

Rachel Leingang, *Argosy University in Phoenix is withholding financial aid for students, who can't pay bills*, Republic (Feb. 8, 2019), *available at:* https://www.azcentral.com/story/news/local/arizona-education/2019/02/08/argosy-university-withholds-student-financial-aid-amid-accreditation-woes/2774210002/ ........................................................................................................ 5

Stacy Cowley and Erica L. Green, *Seeking $2.1 Million After College Chain's Collapse (to Repay its Guardian, Not Students*), N.Y. Times (June 21, 2019), *available at*: https://www.nytimes.com/2019/06/21/business/dream-center-argosy-university-art-institutes.html ................................................................................... 5

U.S. Dep't of Educ., *HEERF III Allocations for Proprietary Institutions under ARP section 2003(a)(4)*, *available at:* https://www2.ed.gov/about/offices/list/ope/arpa4allocationtable.pdf ................ 7

# ARGUMENT

The National Student Legal Defense Network ("Student Defense") moved, under Federal Rule of Civil Procedure 24(b), to intervene in this action as a defendant. Defendants Secretary Miguel Cardona and the U.S. Department of Education (collectively, "the Department") and plaintiff Grand Canyon University ("GCU") have both opposed that motion, asserting that a party representing student interests does not deserve a full voice in this case. Those oppositions demonstrate why Student Defense's complete participation is so vital.

As set forth previously, *see* Opening Br. [Dkt. 19] at 11–12, there is no serious question that Student Defense satisfies the threshold requirements of Rule 24(b). Neither GCU nor the Department has offered any real argument as to how intervention will cause delay or prejudice. Student Defense timely filed its motion before the Department filed an Answer. As this is a case under the Administrative Procedure Act ("APA"), Student Defense anticipates no discovery. Furthermore, Student Defense's defenses "squarely respond" to GCU's claims and clearly share common questions with the main action. *Kootenai Tribe of Idaho v. Veneman*, 313 F.3d 1094, 1111 (9th Cir. 2002) (finding that a public interest organization met the requirements for permissive intervention as a defendant in an APA case by asserting the "'defenses' of the government"), *abrogated on other grounds by Wilderness Soc. v. U.S. Forest Serv.*, 630 F.3d 1173 (9th Cir. 2011); *cf. Conservation Nw. v. Rey*, No. C08-1067-JCC, 2008 WL 11344657, at *2 (W.D. Wash. Oct. 16, 2008) (noting under NEPA that "a common question of law and fact existed because the intervenors 'assert[ed] defenses of the government rulemaking that squarely respond[ed] to the challenges made by plaintiffs in the main action.'") (internal quotation marks omitted). Accordingly, this case is plainly one in which the

Court can exercise its discretion to allow Student Defense full participation to represent student interests.

### I.     Student Defense's Intervention Will Protect the Student Interest.

Intervention will not burden existing parties or the judicial process. Instead, Student Defense's involvement is critical to providing expertise on the issues and will be standing in the stead of current and future students who could be harmed if the Department reverses course. The "magnitude of this case is such that [Student Defense's] intervention will contribute to the equitable resolution of this case." *Kootenai Tribe*, 313 F.3d at 1111. Accordingly, the Court should exercise its discretion to grant permissive intervention.

As the intended beneficiaries of the federal student loan programs, whether and how an institution of higher education participates in those programs is of paramount importance for students. As noted in our prior submission, Opening Br. [Dkt. 19] at 5–6, for-profit institutions that receive Title IV funds are subject to additional standards and oversight that does not apply to nonprofit and public institutions. Accordingly, when an institution seeks to convert from a for-profit to a nonprofit, the Department's approval of that conversion is of consequence to student protections.

Here, the challenged decision reflects the Department's initial willingness to analyze the conversion under the statutory and regulatory standards. Unfortunately, however, initial decisions by the Department to scrutinize a conversion are not dispositive of the ultimate outcome. Thus, the Department's assertions that Student Defense should not be permitted to intervene because the Department "fully intends to defend the decision challenged" should not be blindly accepted. Dep't Opp. [Dkt. 24] at 3. Indeed, in two recent, high-profile attempts by large for-profit institutions to convert to

nonprofit status, mid-stream changes by the Department have been catastrophic for students.

First, and perhaps most presciently, in recent years the for-profit Center for Excellence in Higher Education ("CEHE"), the parent company of CollegeAmerica and Independence University, sought to become a nonprofit institution. The Department originally denied that request, as it did with GCU. Letter from Douglas Parrott, Division Director, U.S. Dep't of Educ., to Eric Juhlin, President, CEHE (Aug. 11, 2016), *available at:* https://www2.ed.gov/documents/press-releases/08112016-cio-decision.pdf. In so doing, as it did with GCU, the Department cited to a number of factors in determining that a significant portion of CEHE's revenue, like GCU's here, would benefit individual shareholders, primarily its Board Chairman Carl Barney. *Id.* In rejecting CEHE's proposed conversion, the Department noted that the change in ownership transaction would result in "an income stream of $400 million" that was intended to continue to a living trust designed to benefit Mr. Barney. *Id.*

CEHE—represented by the same counsel that represents GCU in this litigation—filed suit to challenge the Department's decision. Compl., Dkt. 2, *Ctr. for Excellence in Higher Educ. v. King*, No. 2:16-cv-00911-CW (D. Utah Aug. 30, 2016). Students did not intervene. But rather than fully defending its determination, the Department seemingly acquiesced while the litigation was pending, and the parties entered a settlement agreement, the terms of which were never made public. There was no party representing student interests to object and CEHE was allowed to participate as a Title IV nonprofit institution. And now, twenty-nine months after that resolution, CEHE's operations are in doubt, after it lost accreditation following a Colorado state court's decision finding that CEHE, CEHE's Chief Executive Officer Eric Juhlin, and Mr. Barney had defrauded students. *Colorado ex rel. Coffman v. Ctr. for Excellence in Higher Educ.*, No. 14-cv-

3

34530, slip. op. (Denv. Dist. Ct., Colo. Aug. 21, 2020). In recent weeks, following the removal of accreditation, the Department of Education suspended Mr. Juhlin from participating in federal government programs, citing the harm to students found in the Colorado decision and the action by its accreditor. Letter from Susan Crim, Notice Debarment and Suspension Official, U.S. Dep't of Educ. to Eric Juhlin, CEO, Ctr. for Excellence in Higher Educ. (Apr. 23, 2021), *available at:* https://bit.ly/2RJTyBO.

Results were similarly disastrous for students of the Dream Center-owned schools. Mentioned in our opening submission, Opening Br. [Dkt. 19] at 9 & Ex. B (Ament Decl.) ¶ 4, the Dream Center cases did involve—as GCU suggests—a situation where the institution hid its loss of accreditation following a change in ownership and attempted conversion. *See* GCU Opp. [Dkt. 25] at 6. Yet that is not the full story. Unmentioned by GCU, the Department also reversed course on its decision regarding the Dream Center's proposed conversion. In September and October 2017, the Department indicated that it was withholding judgment on the Dream Center's proposed nonprofit conversion until the institution complied with a series of requirements. *See generally* Compl., Dkt. 1, Exs. C & D, *Infusino v. DeVos*, No. 1:19-cv-03162 (D.D.C. Oct. 22, 2019). But instead, after the school lost accreditation and thus its eligibility to participate in the Title IV programs, and with the school's conversion application still pending, the Department reversed course and allowed the school to participate in Title IV by *retroactively* granting the school a "temporary interim" nonprofit status. *Id.* at Compl. Exs. A & B. Student Defense, on behalf of its clients, filed suit against the Department, spurring the Department to discharge nearly $11 million in debt, illegally issued and covered up by the Department.[1]

---

[1] The Department's decisions involving the Dream Center became the subject of a Congressional investigation, leading to a scathing report regarding the Department's

One year later, the Dream Center landed in a federal Receivership, and over $9 million in Title IV student aid living stipends was discovered to be missing from the company's Argosy University accounts.[2] Students then intervened in the Receivership proceeding and brought the issue squarely to the court's attention. After the information was raised to the court, the Department reversed back, issuing a letter denying approval for the change in ownership and nonprofit conversion, and terminating its participation in Title IV. This led to the abrupt closure of the institutions. Letter from Michael Frola, Dir., Multi-Reg'l & Foreign Schs. Participation Div., U.S. Dep't of Educ., to Mark Dottore, Pres. & CEO, Dottore Cos. & Randall Barton, Chairman of Bd., Dream Ctr. Educ. Holdings (Feb. 27, 2019), *available at:* https://studentaid.gov/sites/default/files/argosy-cio-denial-redacted.pdf. Meanwhile, the school's failure to disburse the stipend funds to Argosy students led individuals like Student Defense client Kendrick Harrison, an Iraq War veteran and father of six, to experience homelessness.[3]

Of course, each situation is different. But the point is simple: in recent years, the Department has disregarded students' interests when making and/or reversing decisions

---

retroactive approval of the school's nonprofit status. *See* H. Comm. on Educ. & Labor, Shattered Dreams: Examining the Education Department's Role in the Misconduct of Dream Center Education Holdings (2020), *available at:* https://edlabor.house.gov/imo/media/doc/Shattered%20Dreams%20Examining%20the%20Education%20Departments%20Role%20in%20the%20Misconduct%20of%20Dream%20Center%20Education%20Holdings1.pdf. *See also* Danielle Douglas-Gabriel, *DeVos cancels nearly $11 million in student loans that the Education Dept. sent to unaccredited for-profit colleges*, Wash. Post (Nov. 8, 2019), *available at:* https://www.washingtonpost.com/education/2019/11/08/devos-cancels-nearly-million-student-loans-that-education-dept-sent-unaccredited-for-profit-colleges/.

[2] Rachel Leingang, *Argosy University in Phoenix is withholding financial aid for students, who can't pay bills*, Republic (Feb. 8, 2019), *available at:* https://www.azcentral.com/story/news/local/arizona-education/2019/02/08/argosy-university-withholds-student-financial-aid-amid-accreditation-woes/2774210002/.

[3] Stacy Cowley and Erica L. Green, *Seeking $2.1 Million After College Chain's Collapse (to Repay its Guardian, Not Students)*, N.Y. Times (June 21, 2019), *available at:* https://www.nytimes.com/2019/06/21/business/dream-center-argosy-university-art-institutes.html.

around nonprofit conversions. *See also* U.S. Gov't Accountability Off., GAO-21-89, *Higher Education: IRS and Education Could Better Address Risk Associated with Some For-Profit College Conversions* 48–49 (2021). Student Defense fully understands that—as is typically the case in cases brought under the APA—neither discovery nor supplementation of the Administrative Record is likely to be appropriate. But, as a party, Student Defense can advocate as to why a complete Administrative Record supports the additional student protections attendant with for-profit status and explain how the economics of the underlying transaction and its effects will impact students.

Finally, the fact that this is an APA case is of no consequence to whether Student Defense should be granted intervention. Indeed, as recently as last year, the Department consented to an advocacy group's permissive intervention in an APA case to aid the Department's defense of a regulatory determination. Def.'s Resp. to Mot. to Intervene, Dkt. 48, *Pennsylvania v. DeVos*, No. 1:20-cv-1468 (D.D.C. July 1, 2020). In that case, a group of states filed suit against the Department to challenge, under the APA, the Department's issuance of regulations under Title IX of the Education Amendments of 1972. To aid the Department's defense, a group of advocacy organizations sought to intervene as of right, under Fed. R. Civ. P. 24(a) and, in the alternative, to permissively intervene under Rule 24(b). The Department took no position as to intervention as of right but consented to permissive intervention. *Id.* The District Court, over plaintiffs' opposition, granted the motion for permissive intervention. [Min. Order, *Pennsylvania v. DeVos*, No. 1:20-cv-1468 (D.D.C. July 6, 2020)].

**II. The Arguments Raised by GCU Are Red Herrings**

GCU has raised two additional arguments as to why intervention is inappropriate that misconstrue contentions made in Student Defense's original brief.

*First*, Student Defense is acutely aware that "the services agreement provides for the same revenue split regardless of whether GCU is recognized as a nonprofit" or for-profit institution. GCU Opp. [Dkt. 25] at 14–15. That lack of distinction is precisely why GCU cannot claim to be a nonprofit; a nonprofit institution would not and should not share fifty-nine percent of its revenue from students with a publicly-traded, for-profit entity, Grand Canyon Education ("GCE"). This is especially true when GCE will only incur twenty-eight percent of the operating expenses. Letter from Michael Frola, Dir., Multi-Reg'l & Foreign Schs. Participation Div., U.S. Dep't of Educ., to Brian Mueller, President, Grand Canyon Univ. 3, 6 (Nov. 6. 2019), *available at:* https://www.documentcloud.org/documents/6548148-Grand-Canyon-University-Decision-on-CIO-11-06-19.html. At a true nonprofit, that revenue would be reinvested into the school and its students. Student Defense adds key context on the effects such a revenue split has on the education and student experience.

*Second*, GCU argues that students would receive more Higher Education Emergency Relief Funds if GCU were a nonprofit. But that is, at best, misleading because GCU knows it will not receive more Coronavirus Response and Relief Supplemental Appropriations Act ("CRRSAA") or the American Rescue Plan Act ("ARPA") funds based on the outcome of this litigation (or the parallel lawsuit that GCU filed on this issue). The CRRSAA HEERF II funds have already been allocated and obligated. The Department also recently allocated $10.8 million in ARPA HEERF III funds to GCU, categorizing GCU as a for-profit for that purpose. U.S. Dep't of Educ., *HEERF III Allocations for Proprietary Institutions under ARP section 2003(a)(4)*, *available at:* https://www2.ed.gov/about/offices/list/ope/arpa4allocationtable.pdf. The Department does not have the flexibility under the statute to change GCU's award amount, nor does GCU have the flexibility to spend its entire allocation on anything other

than student aid. Even if the Department were to grant nonprofit status upon remand, the only remedy that GCU could plausibly seek is to allow it to spend the HEERF funds as a nonprofit: half on students and half on institutional expenses, which could include payments back to GCE. Thus, instead of the entire award going to emergency relief for students, GCU could raid the allocation and keep half for its own purposes.

GCU's attacks on Student Defense's explanation of HEERF reveals GCU's misunderstanding of a critical distinction between the CRRSAA and ARPA. Under section 314(d)(5) of the CRRSAA, nonprofit institutions "shall provide at least the same amount of funding in emergency financial aid grants to students" as they were required to spend *under the CARES Act*. CRRSAA, 2021, Pub. L. No. 116-260, 134 Stat. 1182 (referencing sections 18004(a)(1) and (c) of division B of the CARES Act). Therefore, had GCU been considered a nonprofit for CRRSAA purposes and received $55 million, it would only have been required to spend $11 million on students, *i.e.*, the amount it was required to provide as emergency financial aid grants to students under the CARES Act—**not** $27.5 million. Conversely, under section 2003(7) of the ARPA, nonprofit institutions must use at least half of their allocations on student aid grants. ARPA of 2021, Pub. L. 117-2, 135 Stat. 4.

As GCU knows, nonprofits are afforded more flexibility to spend their HEERF dollars, because the institutional portions that nonprofits receive are reinvested back into the school. However, fifty-nine percent of GCU's revenue goes to GCE and its shareholders. Compl. ¶ 102, 104. Students clearly would have benefited from GCU making the reforms necessary over the past years to participate in Title IV as a nonprofit, but GCU's argument here is a distraction. Had GCU changed its practices to conform to the standards governing nonprofit institutions, it would have been eligible for the additional funds. But now it is too late: funds have been allocated, and the only question

is whether GCU will distribute all of the money as emergency relief for students or seek a remedy that allows it to retain half for its own purposes.

### III. Participation as an Amicus Curiae Would Likely Prevent Students from Having a Full Voice.

Finally, although Student Defense would participate as an amicus, that sort of limited participation here is insufficient given the "magnitude of the case." *Kootenai Tribe*, 313 F.3d at 1111. But amicus participation is likely insufficient for a second, independent reason. As noted above, after the Department denied CEHE's attempt to convert to nonprofit status, CEHE filed suit under the APA. The parties then jointly moved to seal portions of the Administrative Record. [Joint Mot. to Seal, Dkt. 48, *Ctr. for Excellence in Higher Educ. v. King*, No. 2:16-cv-00911-CW (D. Utah Aug. 1, 2017)] Accordingly, certain key documents remained hidden from public view, and no non-party could view the entire record underlying the Department's decision. Even today, those documents remain under seal. Here, the same concerns are at issue. If GCU—represented by the same attorney that represented CEHE—takes the same approach and seeks to seal portions of the administrative record, Student Defense will be unable to fully participate as an amicus curiae. Access to such records is a right attendant to party status that it would not have as an amicus curiae.

Furthermore, "amic[i] status is insufficient to protect the [intervenor's] rights because such status . . . gives it no right of appeal." *United States v. City of Los Angeles*, 288 F.3d 391, 400 (9th Cir. 2002). As intervenors, Student Defense would also be able to appeal an adverse decision or to defend against an appeal by GCU in which the Department might otherwise acquiesce. Relegation of Student Defense to *amicus curiae* status could not provide a substitute for the key rights available to intervenors.

# CONCLUSION

For the foregoing reasons, Student Defense respectfully requests that this Court grant its motion for permissive intervention.

Dated this May 13, 2021.

        Respectfully submitted,

/s/ J. Henk Taylor
J. Henk Taylor, A.Z. Bar #016321
RYAN RAPP UNDERWOOD & PACHECO, P.L.C.
3200 N. Central Avenue, Suite 2250
Phoenix, Arizona 85012
Telephone: (602) 280-1000
Facsimile: (602) 265-1495
htaylor@rrulaw.com

Aaron S. Ament, D.C. Bar #1602164
    (admitted *pro hac vice*)
Daniel A. Zibel, D.C. Bar #491377
    (admitted *pro hac vice*)
Maya H. Weinstein*, N.C. Bar #56621
    (admitted *pro hac vice*)
NATIONAL STUDENT LEGAL DEFENSE NETWORK
1015 15th Street NW, Suite 600
Washington, D.C. 20005
(202) 734-7495
aaron@defendstudents.org
dan@defendstudents.org
maya@defendstudents.org

Brian Galle, N.Y. Bar #419154
    (admitted *pro hac vice*)
Georgetown University Law Center
600 New Jersey Avenue NW
Washington, D.C. 20001
(202) 662-4039
brian.galle@georgetown.edu

*Attorneys for Proposed Intervenor-Defendant Student Defense*

* Admitted to practice law only in North Carolina; Supervised by organizational principals while D.C. Bar application is pending.

**ORIGINAL** filed electronically via the Court's ECF system and **COPIES** mailed/emailed this 13the day of May, 2021 as follows:

Kevin E. O'Malley
Hannah H. Porter
Gallagher & Kennedy
2575 E. Camelback Road, Suite 100
Phoenix, Arizona 85016
Kevin.omalley@gknet.com
Hannah.porter@gknet.com

Steven M. Gombos
David A. Obuchowicz
Gombos Leyton, PC
11350 Random Hills Road #400
Fairfax, Virginia 22030
sgombos@glpclaw.com
dobuchowicz@glpclaw.com

*Counsel for Plaintiff*

James Bickford
U.S. Department of Justice
1100 L Street NW, Room 12304
Washington, D.C. 20005
James.bickford@usdoj.gov

*Counsel for Defendant*

*/s/ Lasya Androsiuk*_____
Lasya Androsiuk

11