# Exhibit A-3

Steven M. Gombos



703-934-9831 Direct
sgombos@glpclaw.com

# GOMBOS | LEYTON PC

ATTORNEYS

11350 Random Hills Road | Suite 400 | Fairfax, Virginia 22030
703.934.2660 Main | 703.934.9840 Fax | www.glpclaw.com

August 27, 2021

**By email only**

James Bickford
Trial Attorney, Federal Programs Branch
Civil Division, U.S. Department of Justice
1100 L Street, NW
Washington, DC 20530

Re:   *Grand Canyon University v. Cardona* – Plaintiff's Meet-and-Confer Letter about the Administrative Record

James:

I read your response to my August 4 letter and wish to provide a brief response in continuation of our efforts to meet and confer about the record. Several of the documents referenced below and attached to this letter contain confidential information, and we ask that you treat them as such.

1. **The whole record before the agency includes deliberative internal communications.**

According to your letter, the Department of Justice takes the view that deliberative documents do not constitute part of the agency record.

It will come as no surprise to you that we take a different view as to the APA's "whole record" requirement. Nowhere do the APA's provisions for judicial review exempt so-called deliberative documents from scrutiny and district courts within the Ninth Circuit have held that "[t]he whole record includes all materials, regardless of their deliberative nature, directly or indirectly considered by the decision-makers." *Kalispel Tribe of Indians & Spokane County v. U.S.* Dep't of Interior, 2018 U.S. Dist. LEXIS 229141, *5 (E.D. Wash. March 8, 2018). Contrary to your letter at pg. 2, "[t]he Ninth Circuit has indicated support for this approach to compiling an administrative record for APA review, finding it 'reasonable' to require a privilege log and assertion of privilege for assertedly deliberative materials." *WildEarth Guardians v. Bernhardt*, 507 F. Supp. 3d 1219 (C.D. Cal. Dec. 16, 2020).

The approach outlined in your letter—in which the government can withhold documents from the record without explanation—incentivizes concealment from the reviewing court and undermines any possibility of meaningful judicial review. *In Re Clean Water Act Rulemaking*, 2020

James Bickford
August 27, 2021
Page 2

U.S. Dist. LEXIS 211820 (N.D. Cal. Nov. 12, 2020). Indeed, courts within the Ninth Circuit have found that when the government compiles the record in the manner you have here, it overcomes the presumption the record has been properly designated. *See, e.g., Ctr. for Biological Diversity v. Bernhardt*, 2020 U.S. Dist. LEXIS 40646 (D. Mont. 2020) (overcoming the presumption of completeness is no "tall order where, as here, Federal Defendants all but concede that the administrative record is not complete by acknowledging that they have failed to include deliberative documents").

Leaving aside our legal disagreement about what the whole record comprises, which the Court ultimately will have to resolve, the penultimate paragraph in your letter is ambiguous. Because we intend to file a motion with the Court, I want to make sure I understand your position and take the Court to the crux of our disagreement. To that end, I am asking you to answer the following questions:

- Are there internal emails addressing GCU's nonprofit conversion that were excluded from the agency record?

- If internal emails were excluded from the record, did you separately evaluate the Department of Education's internal emails and other materials to determine whether they were predecisional?

- Or was a blanket determination made that all internal emails are predecisional and thus do not come within the record, without an individual review?

- Finally, I understand the last sentence in the penultimate paragraph to reflect your view that deliberative documents are not record materials at all but that, if the Court compelled a privilege log, you would withhold those same documents under the deliberative process privilege. Am I correct in my understanding of your position?

2. **The administrative record excludes materials related to the merits of the agency's action.**

Beyond the broad concerns about the administrative record detailed above, we have several specific concerns about the record. First, the record excludes several communications between Grand Canyon and the Department about GCU's nonprofit conversion. Second, the record is silent about several issues directly raised in GCU's complaint. Third, the record excludes evidence of the Department's bad faith. Finally, the record hides from view communications, memoranda, and emails critical to the Court's meaningful, in-depth review of the Department's decision-making process.



James Bickford
August 27, 2021
Page 3

**2.1  The record excludes the parties' communications about the nonprofit conversion.**

The purported agency record fails to include several communications between the Department and GCU about GCU's nonprofit conversion. Those communications were clearly before the agency and pertain to the merits of its decision. *See Portland Audobon Soc. v. Endangered Species Comm.*, 984 F.2d 1534, 1548 (9th Cir. 1993). Accordingly, the agency record is currently incomplete. We ask the Department to include the materials described below.

- **January 18, 2018 Preacquisition Review Request.** GCU filed an electronic application (E-App) with the Department on January 18, 2018. The application requested the Department's review of GCU's proposed transaction with GCE— what the Department refers to as preacquisition review. The preacquisition review application is the first interaction with the Department in most (if not all) transactions involving changes in ownership or control, as it is generally the only mechanism available to Title IV participants to receive guidance from the Department about the effects of any proposed changes before undertaking them. Given the centrality of the preacquisition review request and the inclusion of related documents in the administrative record—including, e.g., two other E-Apps as well as documents submitted with and attached to the Jan. 2018 E-App (*see* AR-J-0001)—we assume the Department inadvertently excluded the E-App submitted on January 18, 2018. *See* Attachment #1.

- **June 28, 2018 email string.** Section J of the administrative record includes email correspondence between the Department and GCU beginning at AR-J-0096. Not included in Section J is the attached email string dated June 28, 2018, between the Department's Donna Mangold and GCU's counsel Dennis Cariello, in which Dennis reiterated the need for the Department's guidance before GCU and GCE executed the transaction on July 1. *See* Attachment #2.

- **June 28-29, 2018 email string.** Section J also fails to include the attached June 28-29, 2018 email string between Chris Linderson and Shein Dossa, among others. Among other things, the email apprised the Department that GCU would be filing its change-in-ownership E-App on July 2, 2018. *See* Attachment #3.

- **July 2, 2018 E-App.** The record includes documentation provided with GCU's July 2, 2018 E-App, but not the E-App itself.  *See* AR-K-0528. Attached with this email is a copy of the July 2, 2018 E-APP, which should be added to the record. *See* Attachment #4.

- **December 16, 2019 power point presentation.** Several communications included in the record reference the December 16, 2019 power point presentation,



James Bickford
August 27, 2021
Page 4

> including the Department's August 28, 2020 letter, which plainly shows the Department's consideration of the power point presentation in the context of its review of GCU's nonprofit conversion. *See* AR-J-0349. While the record confirms the Department considered the presentation, it is unclear whether the Department retained a copy. *See* AR-J-0309 (referencing a USB drive with the presentation). Attached with this letter is a copy of the presentation. *See* Attachment #5.

- **August 14, 2020 letter to Secretary DeVos.** Our law firm sent two letters to the Department on August 14, 2020—one to Michael Frola, which is included in the record, and a second letter to Secretary DeVos, which the record does not include. If the Department intentionally excluded the letter to Secretary DeVos from the record, we ask that you provide the agency's rationale for doing so. Otherwise, we assume the Department inadvertently excluded the letter from the record. *See* Attachment #6.

- **December 31, 2015 E-App and Request for Preacquisition Review.** As detailed throughout the record, GCU began the process of converting to nonprofit status in 2015. *See, e.g.*, AR-J-0137 (discussing 2015 application for preacquisition review). That process included submission of an E-App and cover letter seeking preacquisition review from the Department. We believe the 2015 E-App and cover letter properly come within the whole record before the Department and, in any event, provide necessary context for the Court to understand the record. In other words, we believe the E-App and cover letter must be added to complete the record or alternatively that the record should be supplemented to ensure the Court has all information necessary to understand the record. *See* Attachment #7.

- **Communications about GCU's 2015 E-App.** In addition to the E-App and cover letter, GCU also had multiple conversations with the Department about its intent to convert back to its former nonprofit status. Among other things, GCU discussed with the Department existing service agreements between for-profit entities and non-profit universities, which were structurally similar to what GCU intended to put in place with GCE following the university's change in ownership. Those communications are attached to this letter. *See* Attachment #8.

In our view, the materials above are not controversial and should be included within the administrative record filed with the Court. With respect to the emails referenced above and attached to this letter, which our client forwarded to us, we would prefer to submit the original copies in the record, rather than the forwarded copies we have provided with this letter. The



James Bickford
August 27, 2021
Page 5

Department should have the original emails in its possession. If not, please let us know and we will provide original copies.

We are continuing our review of the record. To the extent practicable, we will notify you if we determine that the record excludes additional communications between GCU and the Department. As noted above, we want to approach the Court only with those issues that we truly cannot resolve.

### 2.2 The complaint puts at issue the Department's policy change and decisions regarding similar transactions.

Your letter questions why the Department's policy change or consideration of similar transactions would come within the record. The answer is twofold. First, GCU raised both issues in its complaint and in its correspondence with the Department. *See, e.g.*, Compl. ¶¶ 186-96 (policy change), 197-219 (disparate treatment); AR-J-0316-0323. Second, the APA requires the Department to acknowledge and explain its policy changes and to consistently implement its policies. *See, e.g., Guam Contrs. Assn. v. Sessions*, 2018 U.S. Dist. LEXIS 12343, *45 (D. Guam Jan. 24, 2018) ("[G]iven the near-universal understanding that an agency has some obligation to apply its positions and policies consistently across proceedings, the courts have been frequently willing to grant limited supplementation of documentation and evidence of any internal policy, guidance, or determination even indirectly related to the determinations made in a given proceeding.").

Given the APA's requirements, we ask that the Department clarify its position on the following:

- **(1) As to the Department's policy change regarding nonprofit conversion, please confirm whether:**
    - (a) the Department made a deliberate decision in 2016 to change its policy for nonprofit conversion, but objects to providing information regarding that decision here;
    - (b) the Department does not have any documents from 2016 related to its policy change; or
    - (c) the Department official who compiled the record does not know whether such information exists and did not look for it.
- **(2) As to the Department's consistent application of its policy, please confirm whether:**
    - (a) the Department considered the consistent application of its policy either directly or indirectly (e.g., by following procedures, guidelines, or discussions), but objects to providing that information here;



James Bickford
August 27, 2021
Page 6

- - o (b) the Department failed to consider whether it consistently applied its policy, even though it acknowledged similarities with the approved Kaplan-Purdue transaction and possessed information about similar service arrangements provided by GCU; or

  - o (c) the Department official who complied the record does not know whether such information exists and did not look for it.

I understand the Department of Justice may take a different view as to the APA's requirements. As detailed above, the Court will ultimately make those calls. We simply need clarification of your position so we can appropriately tailor our request to complete or supplement the record with known documents or seek to take discovery to determine whether the documents exist at all.

My August 4 letter also mentions correspondence from Congressional staff and outside third parties regarding the Department's conversion policy. Although your response mentions the Department's policy change generally, it is silent as to Congressional and third-party correspondence. Like the two related issues addressed immediately above, GCU's complaint alleges that the Department's policy change was the result of political pressure and has led to inconsistent treatment of similarly situated institutions. *See* Compl. ¶¶ 196(d), 198.

GCU specifically raised this issue to the Department in a letter dated August 14, 2020. *See* AR-J-0316-0323. Attached to that letter and included in the record is a letter from former Department Under Secretary Ted Mitchell to Congresswoman Rosa DeLauro addressing concerns about the Department's policy regarding nonprofit conversion. *See* AR-J-0344.

Beyond Mr. Mitchell's letter, there is additional congressional and third-party correspondence "that was before the agency pertaining to the merits of its decision." *See Portland Audubon Sec.*, 984 F.2d 1548. Since 2015, Democratic lawmakers have cajoled the Department to change its nonprofit conversion policies and deny nonprofit conversions—singling out Center for Excellence in Higher Education, Dream Center, and Grand Canyon University, which happen to be the only IRS approved 501(c)(3) schools the Department has required to participate in Title IV as proprietary institutions.[1] *See, e.g.*, Oct. 22, 2015 letter from Sen. Brown, et al., to Sec. Duncan (singling out CEHE which was then still under review) (Attachment #9); Jan. 11, 2018 letter from

---

[1] *See* Government Accountability Office, GAO-21-89, IRS and Education Could Better Address Risks Associated with Some For-Profit College Conversions at 40 (Dec. 2020) (providing statistical data about the Department's review of nonprofit conversions); *see also* Attachment #11 (noting that the Department denied nonprofit status to CEHE (later reversed), Dream Center, and Grand Canyon University).



James Bickford
August 27, 2021
Page 7

Sen. Warren, et al., to NACIQI Chairman Keiser (singling out GCU and Dream Center) (Attachment #10).

There is no doubt that the Department decisionmakers considered the congressional correspondence in their assessment of those nonprofit conversion. The attached briefing points we received from the Department through FOIA clearly show the Department considered that correspondence in relation to GCU's pending change-in-ownership application. See Attachment #11. Accordingly, the Department's communications with congressional offices about its nonprofit conversion practices generally and about GCU's change-in-ownership in particular constitute part of the whole record, including the attached letters and any similar correspondence.

The whole record includes correspondence with third parties for similar reasons. As detailed in the Oct. 22, 2015 letter from Senator Brown to former Education Secretary Duncan, congressmembers began raising concerns about the Department's nonprofit conversion process based on an article published by former Department Under Secretary Robert Shireman. The briefing points addressed above confirm the Department considered correspondence from such "left-center leaning groups" as the Century Foundation—Mr. Shireman's employer—in relation to GCU's pending change-in-ownership application.  Accordingly, the Department's communications with third parties about its conversion process generally and GCU's pending change-in-ownership application in particular constitute part of the whole record before the agency.

Finally, the congressional and third-party correspondence is necessary for the Court to meaningfully review the Department's purported change in policy regarding nonprofit conversion. Between its September 2015 letter to Congresswoman DeLauro and its recent involvement in the GAO's December 2020 Report on Nonprofit Conversion,[2] the Department drastically changed its conversion policy. In September 2015, the Department made clear that the IRS—not the Department—determines what arrangements are permissible under the nonprofit rules. See AR-J-0344. By August 2016, the Department denied nonprofit status to the Center for Excellence in Higher Education based on its independent assessment. In doing so, the Department did not acknowledge that it had departed from its longstanding practice or offer any justification for its change in policy. Instead, the Department first acknowledged and sought to explain its policy change only after CEHE sued the Department. See AR-J-0322, J-0333. The Department explained it changed its policy because the recently enacted gainful employment regulations

---

[2] See GAO-21-89 at 40 (describing discussions with agency officials about the Department's nonprofit conversion process).



James Bickford
August 27, 2021
Page 8

created "greater incentives to convert to a non-profit status that exempts degree programs from the gainful employment requirements." *See* AR-J-0333.

Agency justifications offered during active litigation suggests post hoc justifications. The Department's most recent comments confirm that inference is true here. Published in December 2020, the GAO's Report on Nonprofit Conversion quotes Department officials acknowledging the agency changed its conversion policies, not based on any concern CEHE sought to evade the GE regulations, but because CEHE's application "raised agency concerns about the risk of improper benefit." *See* GAO-21-89 at 40. In short, the Department's policy change, which led to its decision to deny GCU nonprofit status, was arbitrary and capricious. *See Regents of Univ. of California v. U.S. Dep't of Homeland Security*, 2017 U.S. Dist. LEXIS 171805, *14 (N.D. Cal. 2017) ("Reasoned agency decision-making ordinarily 'demands that the agency display awareness that it is changing position and show that there are good reasons for the new policy. Accordingly, the whole record would ordinarily contain materials giving a reasoned explanation . . . for disregarding the facts and circumstances that underlay or were engendered by the prior policy.").

### 2.3 The Department acted in bad faith by purposefully withholding its preacquisition review.

As detailed in GCU's August 14, 2020 letter to the Department and alleged in its complaint,[3] the Department has no substantive regulations or published guidance regarding nonprofit status that institutions can look to when structuring transactions or service arrangements. The Department's preacquisition review process provides the only meaningful opportunity for Title IV institutions to receive guidance from the Department.

The preacquisition review process rests on the presumption that the Department will engage in good faith with institutions. When that occurs, institutions receive valuable guidance from the Department, which, at the very least, includes any sure roadblocks to the Department's approval. The Department's 3-month preacquisition review of the Kaplan-Purdue transaction is a good example of this.

In contrast, the Department acted in bad faith with respect to GCU.[4] The Department ultimately had more than five months to review and provide guidance about GCU's transaction, as GCU

---

[3] *See* AR-J-0321-0322 (Aug. 14, 2020 letter to Michael Frola); *see also* Compl. ¶¶82, 199.

[4] See *Ctr. for Biological Diversity v. Bernhardt*, 2020 U.S. Dist. LEXIS 40646, *8-9 (D. Mont. 2020) ("Under some circumstances, predecisional deliberative documents may go to the heart of the question whether an agency action was arbitrary and capricious, an abuse of discretion or otherwise inconsistent with the law. For example . . . where a regional agency receives instruction from Washington to justify a decision that has already been made on policy grounds before a



James Bickford
August 27, 2021
Page 9

delayed its initial transaction date to give the Department more time. Although the Department knew that the GCU deal would close on July 1, 2018, and despite GCU's repeated requests for guidance, the Department withheld its review from GCU. On June 22—eight days before GCU's deal closed—the Department's Robin Minor wrote: "The team, along with OGC have completed the analysis of the GCU CIO that includes the conversion from for profit to nonprofit. They have concluded that for title IV purposes GCU would still be considered a for profit institution after the CIO." *See* Attachment #12.

Despite reaching that conclusion no less than 8 days before the transaction—note that Kathleen Smith responded to Robin Minor, "I thought this was old and done"—the Department informed counsel it could not provide directional guidance in response to repeated requests in the days leading up to the July 1 transaction date. *See, e.g.*, AR-J-0131 ("[E]ven hearing orally the direction the Department is headed would be . . . helpful.").

Moreover, the Department not only withheld from GCU that it had completed its analysis, but it also repeatedly construed the decision to close the deal without receiving the Department's preacquisition review against GCU. *See* AR-A-0001 ("Although the parties had requested the Department to conduct a pre-acquisition review, the Transaction closed on or about July 1, 2018, prior to completion of the Department's pre-acquisition review."); AR-J-0349 ("As you know, the parties to the GCU transaction closed the transaction without the benefit of a pre-acquisition review by the Department. That decision was certainly within the parties' rights to do so."); *See* July 9, 2018 Email from Todd May to Robin Minor re: TPS on CIO and conversion cases ("GCU entered into the nonprofit conversion CIO transaction without receiving a pre-acquisition review letter from FSA. Consequently the Department has open, unresolved issues with the CIO transaction.") (Attachment #20); *see also* May 29, 2019 Email from Donna Mangold to Rhonda Puffer re: Grand Canyon University ("We never issued a pre-acq letter, because they closed the deal before we could get it done.") (Attachment #13).

In addition to withholding information from GCU, the Department also materially misled the Government Accountability Office and thus Congress about its review of GCU's change-in-ownership application. Well after the Department concluded it would deny GCU nonprofit status following its change in ownership, the Department informed the GAO that the application remained pending and the Department's review ongoing—critically omitting that it had already concluded GCU would remain for-profit for Title IV purposes.[5] *See* July 9, 2019 Email from

---

meaningful review of a proposed action has taken place, evidence of such correspondence is equivalent to a 'smoking gun' because it indicates that a decision was improper.").
[5] *See Universal Health Servs. v. U.S. ex rel. Escobar*, 136 S.Ct. 1989, 2000 n.4 (2016) ("A statement that contains only favorable matters and omits all reference to unfavorable matters is as much a false representation as if all the facts stated were untrue.") (quotation omitted).



James Bickford
August 27, 2021
Page 10

Mackenzie Cooper to Paul DiManna re: GAO Engagement #103006 (indicating that GCU's application was still pending) (Attachment #14); July 15, 2019 Email from Michael Powers to Betty Coughlin, et al., re: GAO 103006 ("Grand Canyon University—correct, closed transaction without preacq.") (Attachment #15).

In our view, the Department engaged in bad faith acts. The Department decided to deny GCU nonprofit status before the nonprofit conversion even occurred, knowing that GCU pursued the transaction solely to convert to nonprofit status. Taken in context, the Department's actions raise the obvious concern that the Department intentionally withheld its decision from GCU to ensure the university completed the transaction—because it would lock GCU in as a nonprofit under state and federal law. Simply put, GCU would be bound by nonprofit laws restricting its operations even while the Department denied GCU nonprofit status for Title IV purposes. *See Niz-Chavez v. Garland,* 141 S.Ct. 1474, 1486 (2021) ("If men must turn square corners when they deal with the government, it cannot be too much to expect the government to turn square corners when it deals with them.").

We intend to ask the Court to order completion of the administrative record to include evidence of the Department's bad faith, including the emails referenced above and related materials. As noted in Robin Minor's June 22 email, the Department prepared a written analysis explaining its decision to treat GCU as a proprietary institution after the change-in-ownership transaction. That analysis, which reflects the Department's decision, must be included in the record. Put simply, the record is not complete so long as it excludes what constitutes the Department's actual decision. Moreover, we will be seeking discovery to determine the extent of the Department's bad faith, whether the process the Department followed itself was arbitrary and capricious, who participated in the Department's decision-making process during the 16-plus months between the preacquisition review and the November 6, 2019 decision letter, and who the Department communicated the results of the preacquisition review decision to, including any potential third-parties outside of the Department who may have been alerted to the decision prior to GCU having been made aware.

One last point on this topic. In the context of compiling the record, did you review Robin Minor's June 22, 2018 email and, if so, do you assert it is properly excluded from the record?

### 2.4 The record hides from view communications, memoranda, and emails critical to the Court's meaningful, in-depth review of the Department's decision-making process.

In addition to the emails referenced above, we received other internal communications through the Department's FOIA process. I do not intend to argue at length why the record includes those emails given your categorical position as to internal emails. But because we intend to ask the



James Bickford
August 27, 2021
Page 11


Court to order the Department to complete or supplement the record with the referenced emails and related materials, I want to provide a brief description of the materials we will be seeking.

- **Change-in-Ownership Working Group.** The Department established a change-in-ownership working group to develop expertise and ensure consistency in changes-in-ownership involving nonprofit conversion. *See* Attachment #16.[6] Given our stated concern above that the Department's approach to nonprofit conversion has been ad hoc and inconsistent, the working group is highly relevant. We will be asking the Court to include in the record agenda and minutes from working group meetings. *See, e.g.*, Attachment #17. We also believe the record should include emails, memoranda, policies, and practices shared among the working group. *See Id.*. It is likely we will also seek discovery as to the working group's role and practices.

- **Communications with outside contractors.** In addition to establishing the change-in-ownership working group, the Department also stepped up its reliance on outside contractors to analyze technical and financial matters involved in complex change-in-ownership transactions. *See* GAO-21-89 at 43. We know through FOIA that the Department solicited outside contractors to evaluate the Department's analysis of GCU's transaction. *See, e.g.*, Attachment #18. In our view the Department cannot withhold from the record expert analysis of its decision. We will be seeking discovery to determine whether the Department ultimately retained an outside contractor and will move to complete or supplement the record with any analysis prepared by an outside contractor.

- **Communications with the IRS.** We know through discovery in an unrelated case that the Department conferred with the IRS about past nonprofit conversions. Those documents are subject to a protective order limiting use of the documents to that matter. So I am not including the documents here. They are, however, in the Department of Justice's possession. The referenced documents are bates stamped USSHC_00029722 and USSHC_00030136. Please contact Jay Majors (jay.majors@usdoj.gov) for access to the emails. In addition, we discovered through FOIA that the Department referred the Center for Excellence in Higher Education to the IRS for reconsideration of its nonprofit status in 2015. *See* Attachment #19. That document was excluded from the administrative record

---

[6] Attachment #16 is a Department of Education Report on Proprietary Institution Conversions submitted to Congress on May 27, 2021. We pulled the report from the education blog, RepublicReport.org. If your client contests the legitimacy of the attached report, please let us know.

James Bickford
August 27, 2021
Page 12

> filed in the lawsuit CEHE brought against the Department of Education for denying its nonprofit status. Given that prior correspondence with the IRS, we think it is likely the Department communicated with the IRS about GCU's nonprofit conversion. We will be asking the Court for discovery to determine the extent to which the Department communicated with the IRS.
>
> - **Legal or financial publications the Department consulted.** With the exception of three documents, the agency record exclusively consists of documents GCU provided to the Department. The three exceptions to that otherwise categorical statement are guides the Department referenced in its Jan. 11, 2021 decision letter. *See* AR-C-0460 (OECD Transfer Guidelines); AR-C-0463 (OECD Revised Guidance); AR-C-0509 (Transfer Pricing, Corporate Financing & Accounting). Although we agree the record includes those documents, we think the reason those documents are properly included in the record requires additional materials that have likely been excluded. The three reference materials are properly included in the record because the Department considered them in the context of its decision on GCU's change in ownership—not because they were referenced in the decision letter. Otherwise, the Department could include in the record only those materials it concluded supported its decision while excluding materials which undermined it. Because the Department's analysis in both the Nov. 6 and Jan. 21 decision letters is based on nonprofit law established by the IRS, rather than the Department's own expertise, it is critical that the Court have before it all the materials the Department considered. Accordingly, we will be asking the Court to complete or supplement the record with all materials the Department considered in its analysis. To avoid unnecessarily burdening the Court, we ask that you clarify if your blanket refusal to include deliberative documents includes other statutes, regulations, guidance, law review articles, legal or financial guides or publications, and websites the Department consulted in its assessment of GCU's nonprofit status. Please confirm whether you will agree to supplement the record with such information.

*     *     *     *     *

It is my goal to resolve as many disputes about the record as possible without the Court's intervention. Given your categorical position on internal documents, I doubt that is possible with the exception of the documents identified in the first heading.

All the same, I would like to schedule a call at your earliest convenience. While I recognize you will likely want to put a response in writing, I am asking to schedule a call no later than September



James Bickford
August 27, 2021
Page 13


3, given the approaching deadline to file our motion to complete or supplement the record. If the call is subject to your written response, that is fine on our end.

Please let me know your availability as soon as practicable.

                                                            Respectfully,

                                                            P.P. *Jacob Shuster*

                                                            Steven M. Gombos

