# Exhibit C-5

*cc: Gwen Reck*
*Sandy Ludwig*
*12/10/10*

# SERVICES AND LICENSE AGREEMENT

This services and license Agreement ("Agreement") is entered into by and between Academic Partnerships, LLC ("AP") and Lamar State College Port Arthur ("LSCPA") as of October 1, 2010 (the "Effective Date"), for the purpose of assisting LSCPA to offer academic Programs leading to course credit and credentials. AP and LSCPA are sometimes referred to herein each as a "Party", and collectively as the "Parties".

I.  **Definitions**

   A.  **"Programs"** means educational Programs offered by LSCPA which utilize the Courses (defined below), the successful completion of which results in the award of LSCPA course credit and credentials.

   B.  **"Faculty"** means persons appointed by LSCPA as LSCPA faculty to teach the Courses as part of the Programs.

   C.  **"Student"** means a student enrolled in the Programs.

   D.  **"Revenue"** means tuition collected from Students.

   E.  **"Territory"** means the state of Texas and/or territories agreed upon mutually by LSCPA and AP.

   F.  **"AP Material"** means any material, including without limitation curriculum, assessment initiatives, lectures, documentation media, case studies, applications, activities, courseware, software, code and other material assets for Programs or other materials that are developed by or licensed to AP. AP Material specifically excludes AP/LSCPA Material defined below.

   G.  **"LSCPA Material"** means any material, including without limitation curriculum, assessments, lectures, documentation, media, case studies, applications, activities, courseware, software code, Programs, or other materials that are developed by LSCPA. For the purposes of this definition, LSCPA includes any LSCPA staff, including without limitation LSCPA Faculty. LSCPA Material specifically excludes AP/LSCPA Material defined below.

   H.  **"Intellectual Property"** means patents and inventions, copyrights, designs, formulas, material and other patentable) matters, whether or not a patent has been issued with respect to such matter, trademarks and service marks, whether or not registered; copyrights and any work of authorship in which a copyright may exist; technical data, know-how and other information that may be protected as a "trade secret" under the Uniform Trade Secrets Act and applications and registrations for, and claims with respect to, any of the foregoing.

   I.  **"AP/LSCPA Material"** means:
   i) Any jointly developed Courses;

   ii) Any jointly developed and produced documentation or other materials associated with the Courses; and

   iii) Any jointly developed and produced modifications, upgrades or updates made to the Courses.

J.  "**Courses**" means assessments, media, case studies, applications, activities, courseware, software, code and other material assets produced for Programs which are to be agreed upon by the Parties utilizing AP Material, LSCPA Material and AP/LSCPA Material.

II. **AP Obligations**
As part of assisting LSCPA in offering the Programs, AP agrees to fulfill the following services and obligations (collectively, the "AP Obligations"):

A.  **Distribution System.** AP will provide a system for distributing the Courses to Students as part of the Programs ("Distribution System"). As part of the Distribution System, AP will:

  i) Make available its Distributed Learning System for electronically distributing the Courses; and

B.  **Sales and Marketing.** AP will market the Programs including recruiting Students, such recruiting (including any related advertising and/or related costs) subject to the prior and periodic review and approval of LSCPA, such approval not to be unreasonably withheld or delayed.

  i) AP agrees that in the course of recruitment of Students for enrollment in the Programs it will not provide any commission, bonus or other incentive payments based directly or indirectly upon success in securing enrollments to any person or entity engaged in any student recruiting or admission activities, or any person directly supervising such person, except in accordance with the provisions of 34 C.F.R. 668.14(b)(22)(2003) and any subsequent amendment thereto, and/or any other requirement of the United States Department of Education, the Texas Higher Education Coordinating Board, or the Commission on Colleges of the Southern Association of Colleges and Schools (hereafter collectively the "Education Regulatory Authorities") hereafter in effect, and all such activities will be carried out in accordance with the requirements and standards of all applicable state, federal or private Education Regulatory and Accrediting Authorities.

  ii) AP agrees that, during the term of this agreement or any extension(s) hereof, neither AP nor its parent, affiliated, or subsidiary entities, their respective directors, officers, executives, managers, employees, attorneys, agents or assigns shall hire, employ, retain, engage or otherwise pay (whether as consultant(s), employees or otherwise) money in any amount or give anything of other than nominal value to any regent(s) or employee(s) of the Texas State University System or any of its component institutions, including LSCPA.

C.  **Protection of Student Information.** LSCPA has informed AP that student-specific information necessary for the performance of this Agreement may be protected from disclosure pursuant to the provisions of the Family Educational Rights and Privacy Act (FERPA), (20 U.S.C. § 1232g; 34 CFR Part 99). AP expressly agrees that to the extent it may have access to any such records it is solely for the purpose of assisting LSCPA in the offering of the Programs, it may not disclose any such information to any third parties, and it must take such measures as are reasonable and prudent to protect such information from inadvertent disclosure. Further, AP shall indemnify and otherwise hold harmless LSCPA for any unlawful disclosure by AP.

III. **LSCPA Obligations**

LSCPA and AP expressly acknowledge that nothing in this Agreement is intended to impair the authority of LSCPA respecting the academic standards and policies of the Programs, including the admission of Students to the Programs, limitations on enrollments, the delivery of the Programs, the evaluation of student performance and the decision to award course credit and academic credentials and to exercise customary oversight respecting Faculty engagement in their offering. LSCPA agrees to provide the following services and obligations (collectively, the "LSCPA Obligations"):

A. **Regulatory Approvals, Accreditations, and Licenses.** LSCPA will determine and obtain all necessary regulatory approvals and licenses for the Programs from such Education Regulatory and Accrediting Authorities as are applicable, with the assistance and support of AP when requested.

B. **Evaluation of Performance and Granting of Credentials.** LSCPA will evaluate the performance of Students enrolled in the Programs in such manner as it shall deem appropriate, and shall grant the applicable course credit and credentials to those Students it has deemed, in its sole discretion, to have met its standards for the award of such course credit and credentials.

C. **Faculty and coaches.** LSCPA will have and exercise overall academic supervision of all Faculty, whether regular LSCPA Faculty or adjunct Faculty, and coaches or teaching assistants engaged in the Programs. LSCPA may cause the removal of any Faculty, whether regular LSCPA Faculty or adjunct Faculty, or pursuant to Section II. D., any coach.

D. **Class Scheduling.** LSCPA will schedule and sequence classes for the Programs consistent with LSCPA's academic calendar.

E. **Course and Academic Oversight.** LSCPA will review the Courses in accordance with its customary academic procedures and shall, at its sole discretion, adopt the Courses for use in the Programs. LSCPA may require AP to make adjustments to the Courses to meet its academic standards prior to such adoption. LSCPA will direct any modifications and apprise AP in a timely manner. Failure or refusal of AP to amend the Courses as required by LSCPA is the basis for termination of this Agreement as provided in Section XII.C.

F. **Student Information Systems.** LSCPA will be responsible for maintaining, supporting and administering the Student Information Systems necessary to facilitate and process student enrollment, including but not limited to enabling student registration for Courses, providing transcripts, and enabling the entering of grades and the tracking of grades.

G. **Financial/Business Oversight.** LSCPA will oversee the financial management of the Programs. LSCPA will collect tuition and allocate this Revenue in accordance with Section VIII below, dividing it upon the completion of each course.

H. **Faculty Funding.** LSCPA will pay Faculty for teaching the Courses.

I. **Instructional Support.** LSCPA will be responsible for costs associated with instructional delivery.

IV. **Rights Granted By AP**

  A. AP grants LSCPA the right to use the jointly owned AP/LSCPA Material during the term of this Agreement, only for the specific and limited purpose of jointly-providing the Programs and only as approved by AP to reproduce and distribute the portion of the AP/LSCPA Material as necessary for LSCPA Faculty to provide the Programs to its Students, both off and on campus.

  B. The AP/LSCPA Material may only be distributed through the Distribution System or as otherwise agreed to in writing by both parties.

  C. AP grants LSCPA the rights to use such AP Material and trademarks, solely for the purpose of marketing the Programs. Usage of AP trademarks is contingent upon AP's prior written approval of each use. Appendix A lists the initial AP trademarks that may be used per this section.

V. **Rights Granted by LSCPA**

  A. LSCPA grants AP the right to use such LSCPA Material and trademarks, solely for the purpose of marketing the Programs. Usage of the LSCPA trademarks is contingent upon LSCPA's prior written approval of each use. Appendix B lists the initial LSCPA trademarks that may be used per this section.

  B. LSCPA grants AP a royalty-free, fully-paid-up, license to use and reproduce the LSCPA Material during performance of this Agreement, but exclusively for the Programs.

  C. LSCPA may request that AP modify, upgrade and/or update the AP/LSCPA Material using LSCPA Material. LSCPA must immediately notify AP in writing of any such requested modifications, upgrades, and/or updates.

  D. The AP/LSCPA Material may only be distributed through the Distribution System or as otherwise agreed to in writing by both parties.

VI. **Ownership and Restrictions**

  A. **Ownership of AP Intellectual Property.** AP retains all ownership and Intellectual Property rights to its Distribution System, including any modifications, upgrades, or updates thereto.

  B. **Ownership of LSCPA Intellectual Property**. LSCPA retains all ownership and Intellectual Property rights to its LSCPA Material including any modifications, upgrades, or updates.

  C. **Dispute Resolution.** In the case of materials/products produced by the AP/LSCPA partnership, LSCPA and AP will determine the equity position of each Party in Courses developed. Appropriate representatives appointed by Lamar State College Port Arthur and AP will establish the protocol to determine percentage of ownership in the Courses and/or related intellectual property developed during this Agreement on a case by case basis.

  D. **Compliance with Texas State University Rules and Regulations.** The Parties intend that this Agreement conform to Chapter III Sections 11 and 12 of the Texas State

University Rules and Regulations as amended in 2008 (the "Texas State University Copyright Policy" and "Patent Policy" respectively). Should any provision of this Agreement be determined to directly conflict with such provisions, the provisions of Chapter III, Sections 11 and 12 of the Texas State University Rules and Regulations shall override the conflicting provisions of this Agreement, and all other non-conflicting provisions of this Agreement shall remain in full force and effect. For purposes of clarity, the Parties have determined in Section XIII.A of this Agreement that AP is an independent contractor and not an "employee" for purposes of the application of the Texas State University Copyright Policy and Patent Policy.

## VII. Term

A. The Term of this Agreement commences on the Effective Date and ends on the seventh (7th) anniversary of the Effective Date, unless terminated under Section XII. (the "Term"). The Term shall automatically renew for a period of five (5) years, unless terminated by either party in writing ninety (90) days before the expiration of the then current Term. .

B. Both Parties may mutually agree in writing to terminate this Agreement.

## VIII. Payment and Taxes

A. LSCPA will collect all Revenue. All Revenue collected will be split between AP and LSCPA as follows:

i) Effective July 1, 2010, LSCPA will retain 50% of the total tuition and fees collected and AP will be entitled to 50% of the tuition and fees collected for all Students taking general education, Program prerequisite, or non-nursing courses. AP's portion of tuition will be remitted to AP ten (10) days after the start of each course less those amounts in VIII.B., as applicable.

ii) For courses offered on or after January 1, 2011, for all new and existing Students enrolled in registered nursing courses, LSCPA will retain 30% of the total tuition collected and AP will be entitled to 70% of the tuition collected. AP's portion of tuition will be remitted to AP ten (10) days after the start of each course less those amounts in VIII. B below, as applicable.

iii) LSCPA will retain 33 1/3% of the total tuition collected and AP will be entitled to 66 2/3% of the tuition collected for all out-of-state students in nursing courses. AP's portion of tuition will be remitted to AP ten (10) days after the census date of each course.

iv) Effective January 1, 2011, LSCPA will no longer withhold $1,500 from AP's portion of the tuition for reach course taught by LSCPA faculty.

B. Any expenditure paid by LSCPA on behalf of AP as authorized by AP, such as advertising, may be withheld from AP's portion of the Revenue.

C. LSCPA will be responsible for all instructional and instructional support costs.

D. Each party shall be responsible for its own taxes.

IX. **Indemnification**

    A. **Claims and Procedures.** AP will defend and indemnify LSCPA, to the extent permitted by Texas Law, against a claim that any AP Material furnished by AP infringes a United States copyright, provided that: (a) LSCPA notifies AP in writing within thirty (30) days of the claim; (b) AP has sole control of the defense and all related settlement negotiations; and (c) LSCPA provides AP with the assistance, information, and authority reasonably necessary to perform the above; reasonable out-of-pocket expenses incurred by LSCPA in providing such assistance will be reimbursed by AP.

    B. **Exceptions.** AP shall have no liability and LSCPA shall indemnify AP, to the extent permitted by Texas Law, for any claim of infringement resulting from: (a) modifications, upgrades or updates to the AP Material made by LSCPA; (b) any LSCPA Material; and (c) any combination of the AP Material with other material by LSCPA that, but for the combination, the AP Material would not be infringing.

    C. **Remedies.** In the event that some or all of the AP Material is held or is believed by AP to infringe, AP shall have the option, at its expense: (a) to modify the AP Material and/or the AP/LSCPA Material to be non-infringing; or (b) to obtain a license to continue using the AP Material and/or the AP/LSCPA Material. If it is not commercially feasible to perform either of the above options, then AP may require from LSCPA the return of the infringing AP Material or the Distribution System, and all rights thereto. Upon return of the infringing Programs to AP, LSCPA may terminate this Agreement with ten (10) days written notice. This Section IX states AP's entire liability and LSCPA's exclusive remedy for infringement claims or damages.

X. **LIMITATION OF LIABILITY**
NEITHER PARTY SHALL BE LIABLE FOR ANY INDIRECT, INCIDENTAL, SPECIAL, PUNITIVE, OR CONSEQUENTIAL DAMAGES.

XI. **Warranties**

    A. Each Party warrants that it has the authority to enter into the Agreement and to perform its obligations set forth herein.

    B. AP warrants that it is the sole and exclusive owner of all AP Material or has the license to use and sub-license any Intellectual Property owned by third parties and incorporated into the AP Materials and that, to the best of its knowledge, the AP Material does not infringe any third-party rights.

    C. LSCPA warrants that it is the sole and exclusive owner of all LSCPA Material and that, to the best of its knowledge, the LSCPA Material does not infringe any third-party rights.

XII. **Termination**

    A. If either Party breaches the terms of this Agreement and fails to correct the breach within 60 days after the non-breaching Party provides written notification, the non-breaching Party may terminate this Agreement.

    B. If either Party uses the material referenced in paragraphs I.F. and I.G. above in any manner other than that permitted under section II, the other Party may immediately terminate this Agreement with written notice.

C. If AP declines to amend the Course in a manner reasonably requested by LSCPA, LSCPA may terminate this Agreement with 90 days' prior written notice.

D. Upon termination for whatever reason, each Party must cease all use of the other Party's licensed or original material (AP Material or LSCPA Material) and return any such material in its possession to the other Party, provided that in the event of termination for whatever reason LSCPA shall have the right to continue to use the AP/LSCPA Material for the sole purpose of permitting Students then enrolled in the Programs to complete their program, whether offered at a distance or on campus. AP and LSCPA reserve the right to negotiate with each other for use of AP/LSCPA Materials developed jointly.

XIII. General

A. **Relationship Between the Parties**
Each Party is an independent contractor and will be solely responsible for payment of all compensation owed to its employees, as well as employment related taxes. Each Party will maintain appropriate worker's compensation for its employees as well as general liability insurance. The parties are and shall act as independent contractors and not as an agent or employee of the other Party. Neither this Agreement, nor any terms and conditions contained herein, shall be construed as creating a partnership, joint venture, agency or franchise relationship.

B. **Governing Law**
This Agreement, and all matters arising out of or relating to this Agreement, shall be governed by the laws of the State of Texas, United States of America (exclusive of its conflicts of law provisions). Nothing herein shall be construed as a waiver of either Party's constitutional, statutory, or common law causes, immunities, or defenses of the parties.

C. **Jurisdiction**
Any legal action or proceeding relating to this Agreement shall be instituted in any state or federal court in Jefferson County, Texas, United States of America. AP and LSCPA agree to submit to the jurisdiction of, and agree that venue is proper in, the aforesaid courts in any such legal action or proceeding.

D. **Notice**
All notices, including notices of address change, required to be sent hereunder shall be in writing and shall be deemed to have been given when mailed by first class mail to:

If to AP:

> Chief Financial Officer
> Academic Partnerships, LLC
> 160 Continental Ave.
> Dallas, TX 75207
> FAX: 214-210-3997

> With copy to:
> Academic Partnerships, LLC
> Attn: Legal Dept.
> 2200 Ross Ave., Suite 3800
> Dallas, TX 75201
> FAX No. 214-438-4133

If to LSCPA:

Lamar State College Port Arthur
P.O. Box 310
1500 Proctor Street
Port Arthur, TX  77640
FAX: 409-984-6000

The Parties agree that they each may treat documents faxed and/or email attachments and/or signature sent electronically by the other Party as original documents; nevertheless, either Party may require the other to exchange original signed documents.

E. **Severability**
In the event any provision of this Agreement is held to be invalid or unenforceable, the remaining provisions of this Agreement will remain in full force.

F. **Waiver**
The waiver by either Party of any default or breach of this Agreement shall not constitute a waiver of any other or subsequent default or breach. Except for actions for nonpayment or breach of either Party's intellectual property rights, no action, regardless of form, arising out of this Agreement may be brought by either Party more than two years after the cause of action has accrued.

G. **Headings**
The headings appearing in this Agreement are inserted for convenience only, and will not be used to define, limit or enlarge the scope of this Agreement or any of the obligations herein.

H. **Counterparts**
This Agreement may be executed in any number of counterparts, each of which will be an original, and such counterparts together will constitute one and the same instrument. Execution may be effected by delivery of facsimiles of signature pages (and the parties will follow such delivery by prompt delivery of originals of such pages).

I. **CONFIDENTIAL INFORMATION.** Each Party agrees that it shall not use or disclose to any third party, except for the purpose of performing this Agreement, any business and technical information of the other Party which, in the exercise of reasonable judgment, should be recognized by such Party as confidential ("Confidential Information"). The obligation of confidentiality shall not apply to information which: (a) is or becomes part of the public domain through no fault of the receiving Party; (b) is furnished by the disclosing Party to others without restrictions on use and disclosure; (c) becomes known or available to the receiving Party without restriction from a source other than the disclosing Party without breach of any Agreement with the disclosing Party; (d) is disclosed with prior written approval of the disclosing Party; (e) is independently developed by the receiving Party without the use of any Confidential Information; (f) is previously known to the receiving Party on a non-confidential basis; or (g) is required by court order or government agency to be disclosed, in which case, the receiving Party shall give the disclosing Party as much notice as is reasonably practical so that the disclosing Party may seek a protective order or other confidential protection as the disclosing Party, in its sole discretion, may elect and the receiving Party shall reasonably cooperate with the disclosing Party in disclosing Party's efforts to obtain such order or protection.

I. **Compliance with Law**
Each Party agrees to comply with all federal, state and local laws and regulations applicable to this Agreement. Each Party represents and warrants that it is qualified to do business in the geographies in which it will perform its obligations under this Agreement, and will obtain all necessary licenses and permits, and satisfy any other legal, regulatory and administrative requirements, necessary to its performance hereunder.

J. **Force Majeure**
Neither Party will be liable for delays or failure in its performance hereunder to the extent such delay or failure is caused by any act of God, war, natural disaster, strike, lockout, labor dispute, work stoppage, fire, third-Party criminal act, quarantine restriction or act of government, or any other event beyond the reasonable control of that Party (an "Excusable Delay"). This Agreement may be terminated with written notice by either Party under this section should the Excusable Delay of the non-performing Party continue for more than 30 days.

K. **Entire Agreement**
This Agreement and any exhibits and addenda hereto constitute the complete Agreement between the parties and supersede all previous and contemporaneous agreements, proposals, or representations, written or oral, concerning the subject matter of this Agreement. Neither this Agreement nor an exhibit or addendum may be modified or amended except in a writing and signed by a duly authorized representative of each Party; no other act, document, usage, or custom shall be deemed to amend or modify this Agreement or an exhibit or addendum.

L. **Successors and Assigns**
This Agreement will be binding upon, and will inure to the benefit of, the permitted successors and assigns of each Party hereto. LSCPA may not assign, delegate, transfer, or otherwise convey this Agreement or any of its rights hereunder, to any entity without the prior written consent of AP, and any attempted assignment or delegation without such consent shall be void.

If assignment occurs through sale, merger, or any other change in control of AP, the AP assignee shall assume all of the obligations of AP under this Agreement and notice of such change in control shall be given to LSCPA within 30 days from the date of such assignment. Should any regulatory approval be required, AP and LSCPA will work jointly to secure such approval. Should the Parties be unable to secure such regulatory approval, then LSCPA shall have the right to terminate the Agreement upon completion of the Programs underway at the time of AP's assignment.

M. **Survivability**
The following Sections shall survive the expiration and termination of this Agreement: **V.B, VI, IX, X, XIII.B., XIII.C**.

| Academic Partnerships, LLC | Lamar State College Port Arthur |
|---|---|
| Signature: *[signed]* | Signature: *Sam Monroe* |
| Name: Michael Briskey | Name: Sam Monroe |
| Title: CFO | Title: President |
| Date: 12/7/10 | Date: November 24, 2010 |

082809 Confidential

## APPENDIX A
(AP Trademarks, including those of its affiliates)

1. ACADEMIC PARTNERSHIPS, LLC
2. EPIC
3. EPIC LEARNING
4. EPIC LEARNING SYSTEM
5. AP
6. STATEU.COM
7. UNIVERSITY PARTNERS

## APPENDIX B
(LSCPA Trademarks)

1. LAMAR STATE COLLEGE PORT ARTHUR
2. LSCPA LOGO

082809 Confidential