# Exhibit C-17

# MASTER SERVICE AGREEMENT

This Master Service Agreement ("Agreement") is entered into by and between Academic Partnerships, LLC, a Delaware limited liability company ("AP"), and University of North Carolina Wilmington (the "University" or "UNCW") as of February 15, 2013 (the "Effective Date"). AP and the University are sometimes referred to in this Agreement each as a "Party", and collectively as the "Parties."

## Recitals

A. The University offers undergraduate, graduate, and post-graduate courses both (i) in traditional classroom settings ("Offline Educational Courses") and (ii) online ("Online Educational Courses").

B. AP will provide services to UNCW per RFP response number 72 PMEF11064 and Best and Final Offer 72 PMEF11064 C. Subject to the terms and conditions set forth herein, the University desires to engage AP to provide AP Resource Materials (defined herein) in connection with the(i) development, maintenance and marketing of Online Educational Courses for Programs the University places with AP; and (ii) the conversion of Offline Educational Classes to Online Educational Classes under this Agreement.

## I. Definitions

Capitalized terms used in this Agreement shall have the meanings described below or elsewhere in the Agreement.

A. **"AP Materials"** means (i) AP Resource Materials, (ii) Developed Materials created by AP, and (iii) any documentation or other materials associated with the foregoing.

B. **"AP Resource Materials"** means the materials, resources and services of AP made available to the University when (i) developing Online Educational Courses, (ii) marketing such Online Educational Courses, (iii) converting the University's Offline Educational Courses to Online Educational Courses, (iv) providing student retention support and (v) developing the best practices for online curriculum, instruction and assessment.

C. **"AP Revenue"** means the product of multiplying the AP Revenue Percentage times the Revenue.

D. **"AP Revenue Percentage"** means a percentage of the tuition for each Online Educational Course in which a Student is enrolled. For the first Program, and to the extent one or more new Programs are added during the Term of this Agreement, the Parties will enter into an Addendum to this Agreement, the purpose of which will be to set forth the AP Revenue Percentage for such new Program. Any such Addendum shall be in the form of **Exhibit A** attached hereto.

E.  **"Curriculum Materials"** means a group of related Online Educational Courses (along with instructional and assessment materials), the successful completion of which results in a degree or other credentialing.

F.  **"Developed Materials"** means any ideas, designs, development tools, know-how, concepts or written materials developed by either Party.

G.  **"Faculty"** means person(s) designated by the University to teach Online Educational Courses.

H.  **"Intellectual Property"** means any and all now known or hereafter existing rights associated with (i) works of authorship, including exclusive rights, copyrights, moral rights and mask works, (ii) trade secret rights, (iii) trademark and trade name rights; (iv) patents, designs and other industrial property rights, (v) other intellectual and proprietary rights of every kind and nature whether arising by operation of law, by contract or license or otherwise and (vi) all registrations, renewals, extensions, combinations, divisions, or reissues of any of the foregoing.

I.  **"Program(s)"** mean units of UNCW study in those academic programs placed under this Agreement by the University offered through Online Educational Courses that lead to a degree or other certification.

J.  **"Revenue"** means the tuition collected from Students for Online Educational Courses under this Agreement, including Revenue from all general, prerequisite or co-requisite Online Educational Courses in Programs placed under this Agreement by the University.

K.  **"Student(s)"** means an individual enrolled in one or more Online Educational Courses at the University.

L.  **"Termination for Convenience"** means mutually agreed upon termination by both parties without further recourse by either party.

M.  **"University Material"** means the (i) Curriculum Materials, (ii) lectures, documentation and other materials created by the University, including Developed Materials created by the University and (iii) Faculty or other university designated content providers.

II. **AP Obligations**

During the Term (defined herein) of this Agreement, AP shall have the following obligations:

A.  **Marketing.** AP will:

    (i)    be the exclusive marketer of the Online Programs listed in the Addendum and will market the University and its Programs using a variety of means as determined by AP including digital marketing; and

    (ii)    provide competitive research regarding other universities offering similar Programs.

    (iii)    Market the Programs to employers and other organizations using affiliate partnership representatives.

**B.** **Program Development, Support and Implementation.** AP's implementation team will work with the University to launch the University's Programs. AP's implementation support services will include:

    (i)    an integration team that works with the University's personnel (specific to each degree/certificate);

    (ii)    facilitation of Program planning sessions (faculty meetings, admission policies, course sequence and calendar);

    (iii)    facilitation of operational planning sessions with key University departments to review existing processes and recommend efficiencies;

    (iv)    development of a "Program Guidelines" document;

    (v)    facilitation of cross-functional meetings to manage implementation processes; and

    (vi)    project management services, including development of a detailed project plan (the "Plan") to drive program implementation activities, and weekly reporting of project progress against the Plan.

**C.** **Assistance with Student Information System ("SIS") and Learning Management System ("LMS").** The University will provide to AP, read-only access to records within its SIS and LMS that contain information about students enrolled in AP Programs, including any pre-requisite General Education courses. AP relies primarily on daily extracts from university systems, but will utilize essential data from these systems to (i) create Program prototypes, (ii) assist faculty with curriculum development, (iii) facilitate student matriculation, (iv) assist in improving student retention, (v) monitor Program success and (vi) assist with and facilitate the growth of the University's Online Educational Courses. Essential SIS data includes, but is not limited to, applicant, student, section and enrollment data. Essential LMS data includes, but is not limited to, course, section, student, grade and time-and-activity data critical to providing student retention.

D. **Curriculum Support Services.** AP will work with Faculty and the University with Program design, including but not limited to:

   (i) assisting with Program / course blueprinting and course conversion;

   (ii) assist University in structuring multiple start dates in a way that also assures financial aid eligibility; and

   (iii) introducing best practices for the delivery of an online Curriculum.

E. **Recruiting and Enrollment Specialist Representatives ("ESRs").** ESRs will serve as a primary point of contact for all prospective students for identified Programs. The ESRs will help educate students about the University's Programs. AP's responsibilities include:

   (i) staffing and equipping a call center for ESRs;

   (ii) providing a team of ESRs to contact potential students once a lead is received;

   (iii) providing a toll free number and website for prospective students;

   (iv) recruiting in compliance with the academic standards of the University and regulatory requirements; and

   (v) informing potential students of the Program characteristics and referring potential students to the University regarding financial aid and/or academic questions. In performing recruiting activities, ESR's shall use such marketing and promotional materials as are provided by or approved by the University in accordance with Section III and shall be entitled to rely on the accuracy of any such materials.

   AP agrees that in the course of recruitment of Students for enrollment in one or more Online Educational Courses it will not provide any commission, bonus or other incentive payments based directly or indirectly upon success in securing enrollments to any person or entity engaged in any student recruiting or admission activities, or any person directly supervising such person, except in accordance with the provisions of 34 C.F.R. 668.14(b)(22)(2003) and any subsequent amendment thereto, and/or any other requirement of the United States Department of Education or the University's regional accreditor.

F. **Application Support.** In addition to recruiting, ESRs will:

   (i) inform applicant of all University application requirements;

(ii) contact applicants regarding upcoming Program deadlines;

(iii) remind applicants to submit necessary paperwork (transcripts, etc.);

(iv) remind Students of the registration process, registration deadlines and payment deadlines once admitted to the University; and

(v) refer Students to appropriate University resources if there are further questions about the Program(s).

G. **Student Support Services.** ESRs will provide student support and retention services, including, but not limited to the following:

(i) following up with Students periodically to ensure satisfaction continuing through graduation;

(ii) referring Students to University resources if academic questions persist;

(iii) welcoming new Students and providing upcoming registration dates and/or deadlines;

(iv) re-engaging inactive Students; and

(v) reminding Students of upcoming start dates, registration deadlines and payment deadlines.

H. **Protection of Student Information.** The University has informed AP that Student specific information may be protected from disclosure pursuant to the provisions of the Family Educational Rights and Privacy Act (FERPA), (20 U.S.C.§ 123g; 34 CFR Part 99). AP expressly agrees that it shall (i) not disclose any such information to any third parties and (ii) take such measures as are reasonable and prudent to protect such information from inadvertent disclosure.

III. **University Obligations**

The University shall retain authority in the (i) appointment of Faculty, (ii) admission of Students, (iii) delivery of Programs, (iv) evaluation of Student performance, (v) decision to award course credit and/or academic credentialing, and (vi) decision to award scholarships or financial aid. During the Term of this Agreement, the University shall have the following obligations:

A. **Marketing Deliverables.**

(1) University has a duty to expressly approve or disapprove of marketing materials submitted to it by AP within 5 business days of receipt by University of the materials. If University does not respond to AP within the 5 day period, AP may assume that the marketing materials are approved;

(2) University will deliver to AP its branding and style guidelines;

(3) Subject to University discretion and provided the marketing does not create an unintended tax consequence, the University may allow AP to use the University web domain for marketing (i.e., http://online.universityname.edu or http://degree.universityname.edu) and host those subdomains for ease of maintenance and updates;

(4) University will allow AP to have access to alumni email lists for marketing purposes; and,

(5) University will determine enrollment goals for the Programs, in consultation with AP.

B. **Regulatory Approvals, Accreditations, and Licenses.** The University will determine and obtain all necessary regulatory approvals and licenses for the Programs, including without limitation any necessary state authorizations for distance learning programs.

C. **Financial/Business Oversight.** The University will oversee the financial management of the Programs.

D. **Intellectual Property.** The University will not remove, deface, or obscure any of AP's or its suppliers' copyright or trademark notices and/or legends or other proprietary notices associated with the AP Materials.

E. **Access to Data.** The University will provide access to Student information data and online delivery data in order for AP to fulfill its obligations under this Agreement.

F. **Assessment.** University and AP agree to meet no less frequently than annually to assess the success of the Programs, including review of the services provided hereunder.

IV. **License Grants by AP**

A. **AP Resource Materials.** During the Term of this Agreement, AP grants the University a limited, non-exclusive, license to use and modify the AP Resource Materials for the specific and limited purpose of developing Programs.

B. **Trademarks.** During the Term of this Agreement, AP grants the University a limited, nonexclusive license to use such AP trademarks, as are designated in writing by AP, for the specific and limited purpose of marketing the Programs. **Exhibit B** lists the initial AP trademarks that may be used per this Section.

V. **License Grants by the University**

    A. **University Materials.** During the Term of this Agreement, the University grants AP a limited, non-exclusive license to use and modify the University Materials for the specific and limited purpose of developing Programs.

    B. **Trademarks.** During the Term of this Agreement, the University grants AP a limited, non-exclusive license to such University trademarks, as designated in writing by the University, solely for the purpose of marketing the Programs. **Exhibit C** lists the initial University trademarks that may be used per this Section.

VI. **Ownership**

    A. **Ownership of AP Intellectual Property.** AP retains all ownership and Intellectual Property rights in the AP Materials.

    B. **Ownership of University Materials.** The University retains all ownership and Intellectual Property rights in the University Materials.

    C. **Ownership of Developed Materials.** Consistent with applicable University intellectual property policies, any right, title and interest in and to any Intellectual Property arising from or attributed to any of the work or activities undertaken as part of this Agreement shall belong to the Party that creates such Intellectual Property, unless mutually agreed otherwise in writing.

VII. **Term and Right of First Offer**

    A. **Term.** The term ("Original Term") of this Agreement commences on the Effective Date and ends on the tenth anniversary of the commencement date of the first Program ("Agreement Launch Date"). The term of an individual Program ("Program Term") starts on the date of first enrollment of an individual Program ("Program Launch Date") and ends 12 months later. At the end of each Program Term of 12 months, if mutually agreed in writing by the parties, the participating UNCW Program Launch Date shall be extended for a period of three (3) years..

VIII. **Payment and Taxes**

    A. **AP Revenue.** The University will collect all Revenue and will remit to AP the AP Revenue, which shall be due and payable to AP within thirty (30) days of the start of any Online Educational Course upon receipt of a proper invoice.

    B. **AP Revenue Percentage:** 55% of charged tuition for both in-state and out-of-state Students for 18 months, 50% at renewal. 50% for each succeeding degree program after the first degree program.

    C. **Taxes.** Each Party will be responsible for any and all taxes due on their portion of Revenues received.

    D.    **Acknowledgement by the University.** The University acknowledges that a significant portion of AP's cost is incurred before a Student enrolls, and that AP's only method of cost recovery is through the continuing payments as a Student progresses through the individual University Programs. Accordingly, for each Student AP has enrolled in a UNCW Program under this Agreement during the Term of this Agreement, the University will continue to remit payments to AP per Section VIII A above for so long as:

a) the Student continues to take On Line Educational Courses at the University in the Program (beyond termination date of this Agreement); and

b) limited to tracking a Student for no more than 150% of the Program's official time to completion based upon hypothetical pursuit of a Program degree. AP receives no payment in the event the Student withdraws from the Program's online educational courses at UNCW, or the Student takes longer to matriculate than the 150% time limit set forth above.

IX.    **Indemnification**

    A.    **AP.** AP will defend and indemnify the University for the acts or omissions of its officers, agents, and employees. AP shall further defend and indemnify the University against any claim(s) that any AP Materials furnished by AP infringes a third party's intellectual property, provided that: (a) the University notifies AP in writing within 30 days of the claim; and (b) the University provides AP with the assistance, information, and authority reasonably necessary to perform the above; reasonable out-of-pocket expenses incurred by the University in providing such assistance will be reimbursed by AP.

    B.    **University.** Subject to the NC Tort Claims statute and process, N.C.G.S. §143-291 et seq., and reserving its rights to and an assertion of sovereign immunity, the University will remain financially responsible for the acts and omissions of its officers and employees within the scope of their employment responsibilities, and defend AP against a claim that any University Materials furnished by the University infringes a third party's intellectual property, provided that: (a) AP notifies the University in writing within 30 days of the claim; and (b) AP provides the University with the assistance, information, and authority reasonably necessary to perform the above; reasonable out-of-pocket expenses incurred by AP in providing such assistance will be reimbursed by the University.

    C.    **Remedies.** In the event that some or all of the AP Materials is held or is believed by AP to infringe third party rights, AP shall have the option, at its expense to: (a) modify the AP Materials to be non-infringing; or (b) obtain a license from the third party to continue using that portion of the AP Materials that is infringing the rights of such third party. If it is not commercially feasible to perform either of the above options, then AP may require the University to return the infringing AP

Materials and all rights thereto. Upon return of the infringing AP Materials to AP, the University may terminate this Agreement with 10 days' written notice.

X.  **LIMITATION OF LIABILITY**

NEITHER PARTY SHALL BE LIABLE FOR ANY INDIRECT, INCIDENTAL, SPECIAL, PUNITIVE, OR CONSEQUENTIAL DAMAGES.

XI.  **Warranties**

   A.  **Authority.** Each Party warrants, to the best of its knowledge, that it has the authority to enter into the Agreement and to perform its obligations set forth herein.

   B.  **Ownership by AP.** AP warrants that it is the sole and exclusive owner of all AP Materials or has the license to use and sub-license any Intellectual Property owned by third parties and incorporated into such AP Materials, and that, to the best of its knowledge; such AP Materials does not infringe any third-party rights.

   C.  **Ownership by the University.** The University warrants that it is the sole and exclusive owner of all University Materials or has or will secure shop rights or licensed rights to use and/or sub-license any Intellectual Property owned by third parties and incorporated into the University Materials, and that, to the best of its knowledge, the University Materials does not infringe any third-party rights.

XII.  **Termination**

   A.  **Material Breach.** If either Party materially breaches the terms of this Agreement and fails to correct the breach within 60 days after the non-breaching Party provides written notification, the non-breaching Party may terminate this Agreement.

   B.  **University's Obligations.** Upon expiration or termination of this Agreement, University shall cease all use of AP Materials and return any such material in its possession to AP.

   C.  **AP's Obligations.** Upon expiration or termination of this Agreement, AP shall cease all distribution of University Materials and return any such material in its possession to the University, provided that AP shall have the right to continue to use the University Materials for the sole purpose of permitting Students then enrolled in a Program to complete such Program.

   D.  **Damages.** For any termination for cause, neither party shall be liable to the other for lost profits, incidental or consequential damages. In the event of any termination for cause, both parties acknowledge and expressly agree that regardless of the forum, claims, bases, or causes of action, the maximum damages either party may be entitled shall be $25,000.

D. **Termination for Convenience.** The parties may mutually agree to terminate the Agreement without further recourse to either party.

XIII. **General**

A. **Relationship Between the Parties.** Each Party is an independent contractor and will be solely responsible for payment of all compensation owed to its employees, as well as employment related taxes. Each Party will maintain appropriate worker's compensation for its employees as well as general liability insurance. Neither this Agreement, nor any terms and conditions contained herein, shall be construed as creating a partnership, joint venture, agency or franchise relationship.

B. **Notice.** All notices, including notices of address change, required to be sent hereunder shall be in writing and shall be deemed to have been given when mailed by certified mail to:

If to AP:

Academic Partnerships, LLC
Attention: Chief Financial Officer
600 North Pearl Street
Suite 900
Dallas, Texas 75201

With copy to:

Academic Partnerships, LLC
Attn: Legal Dept.
2200 Ross Ave., Suite 3800
Dallas, TX 75201
FAX No. 214-438-4133

If to the University:

Program and Contract Administration: Dr. Johnson Akinleye
Contract Language : Mary E. Forsythe
UNCW
601 S. College Rd
Wilmington, NC 28403

The Parties agree that they each may treat documents faxed and/or email attachments and/or a signature sent electronically by the other Party as original documents; nevertheless, either Party may require the other to exchange original signed documents.

D. **Severability.** In the event any provision of this Agreement is held to be invalid or unenforceable, the remaining provisions of this Agreement will remain in full force.

AP/UNCW Agreement – Page 10

E. **Waiver.** The waiver by either Party of any default or breach of this Agreement shall not constitute a waiver of any other or subsequent default or breach. Except for actions for nonpayment or breach of either Party's intellectual property rights, no action, regardless of form, arising out of this Agreement may be brought by either Party more than two years after the cause of action has accrued.

F. **Headings.** The headings appearing in this Agreement are inserted for convenience only, and will not be used to define, limit or enlarge the scope of this Agreement or any of the obligations herein.

G. **Counterparts.** This Agreement may be executed in any number of counterparts, each of which, when executed and delivered, shall be an original, and all the counterparts together shall constitute one and the same instrument.

H. **Confidential Information.** Subject to applicable NC law, each Party agrees that it shall not use or disclose to any third party, except for the purpose of performing this Agreement, any business and technical information of the other Party which, in the exercise of reasonable judgment, should be recognized by such Party as confidential ("Confidential Information"). The obligation of confidentiality shall not apply to information which: (a) is or becomes part of the public domain through no fault of the receiving Party; (b) is furnished by the disclosing Party to others without restrictions on use and disclosure; (c) becomes known or available to the receiving Party without restriction from a source other than the disclosing Party without breach of any Agreement with the disclosing Party; (d) is disclosed with prior written approval of the disclosing Party; (e) is independently developed by the receiving Party without the use of any Confidential Information; (f) is previously known to the receiving Party on a non-confidential basis; or (g) is required by court order or government agency to be disclosed, in which case, the receiving Party shall give the disclosing Party as much notice as is reasonably practical so that the disclosing Party may seek a protective order or other confidential protection as the disclosing Party, in its sole discretion, may elect and the receiving Party shall reasonably cooperate with the disclosing Party in disclosing Party's efforts to obtain such order or protection.

I. **Force Majeure.** Neither Party will be liable for delays or failure in its performance hereunder to the extent such delay or failure is caused by any act of God, war, natural disaster, strike, lockout, labor dispute, work stoppage, fire, third-Party criminal act or act of government, or any other event beyond the reasonable control of that Party (an "Excusable Delay"). This Agreement may be terminated with written notice by either Party under this section should the Excusable Delay of the non-performing Party continue for more than 30 days.

J. **Entire Agreement.** This Agreement with any documents referred to in it constitutes the entire agreement and understanding between the Parties and supersedes any previous agreement between them relating to the matters set forth herein.

K. **Successors and Assigns.** This Agreement will be binding upon, and will inure to the benefit of, the permitted successors and assigns of each Party hereto. The University may not assign, this Agreement or any of its rights hereunder without the prior written consent of AP, and any attempted assignment without such consent shall be void.

L. **Variation.** No variation of this Agreement or of any of the documents referred to in it shall be valid unless it is in writing and signed by or on behalf of each of the Parties.

M. **Survivability.** The following Sections shall survive the expiration and termination of this Agreement: III.C, VI, VIII, IX, X, XI, XII, and XIII.

N. **Jurisdiction and Venue.** This Agreement shall be construed and interpreted by the laws of the State of North Carolina; any dispute shall be properly heard in New Hanover County, North Carolina. The parties agree to the jurisdiction and venue as contained in this clause.

*[Signature     Page     Follows]*

| ACADEMIC PARTNERSHIPS, LLC | UNIVERSITY OF NORTH CAROLINA AT WILMINGTON |
|---|---|
| Signature: *[signed]* | Signature: *[signed]* |
| Name: Michael Briskey | Name: Dr. Denise Battles |
| Title: CFO | Title: Provost and VC for Academic Affairs |
| Date: 2/14/13 | Date: 2/8/2013 |

UNIVERSITY OF NORTH CAROLINA AT WILMINGTON

Signature: *[signed]*

Name: Charles Maimone

Title: Vice Chancellor for Business Affairs

Date: 2/11/13

# ADDENDUM I

This Addendum ("Addendum") dated as of February 15, 2013, is a supplement to that certain Master Service Agreement ("Agreement") dated as of February 15, 2013 between Academic Partnerships, LLC ("AP"), and University of North Carolina Wilmington (the "University") and is fully incorporated therein.

1. NAME OF PARTICIPATING SCHOOL OR COLLEGE:

College of Health and Human Services, School of Nursing

2. EFFECTIVE DATE OF PROGRAM:

July 2013

3. PROGRAMS AND/OR DEGREES:

Bachelor of Science Nursing RN-BS including general education courses

4. AP REVENUE PERCENTAGE: 55% of charged tuition for both in-state and out-of-state Students for 18 months, 50% at renewal.

**ACADEMIC PARTNERSHIPS, LLC**

Signature: _____
Name: Michael Briskey
Title: CFO
Date: 2/14/13

**UNIVERSITY OF NORTH CAROLINA AT WILMINGTON**

Signature: _____
Name: Dr. Denise Battles
Title: Provost and VC for Academic Affairs
Date: 2/8/2013

**UNIVERSITY OF NORTH CAROLINA AT WILMINGTON**

Signature: _____
Name: Charles Maimone
Title: Vice Chancellor for Business Affairs
Date: 2/11/13

## ADDENDUM II

This Addendum ("Addendum") dated as of ___Feb. 14, 2013___, is a supplement to that certain Master Service Agreement ("Agreement") dated as of February 15, 2013 between Academic Partnerships, LLC ("AP"), and University of North Carolina Wilmington (the "University") and is fully incorporated therein.

1. NAME OF PARTICIPATING SCHOOL OR COLLEGE:

Watson College of Education

2. EFFECTIVE DATE OF PROGRAM:

To be determined by Parties

3. PROGRAMS AND/OR DEGREES:

Master of Education in Elementary Education

4. AP REVENUE PERCENTAGE: 50% of charged tuition for both in-state and out-of-state students

**ACADEMIC PARTNERSHIPS, LLC**

Signature: _____
Name: Michael Briskey
Title: CFO
Date: 2/14/13

**UNIVERSITY OF NORTH CAROLINA AT WILMINGTON**

Signature: _Denise W Battles_
Name: Dr. Denise Battles
Title: Provost and VC for Academic Affairs
Date: 2/8/2013

**UNIVERSITY OF NORTH CAROLINA AT WILMINGTON**

Signature: _Charles Maimone_
Name: Charles Maimone
Title: Vice Chancellor for Business Affairs
Date: 2/11/13

# EXHIBIT B
(AP Trademarks, including those of its affiliates)

1. ACADEMIC PARTNERSHIPS, LLC
2. ACADEMIC PARTNERSHIPS
3. AP



