# Exhibit C-21

## SERVICE AGREEMENT

This Service Agreement (**Agreement**) is entered into by and between Academic Partnerships, LLC, a Delaware limited liability company (**AP**), and Lamar University (the **University**) as of August 1, 2014 (the **Effective Date**).  AP and the University are sometimes referred to in this Agreement each as a **Party**, and collectively as the **Parties**.

### Recitals Incorporated Into Agreement

A.     The University offers courses and degree programs at the undergraduate, graduate and post-graduate level as well as other courses and programs (any of which may include pre-requisite and co-requisite courses) ;

B.     AP provides services to universities to enable them to offer such courses, degree programs and other programs online;

C.     AP and the University entered into a Marketing and License Agreement as of July 1, 2012. As of the Effective Date, this Agreement fully amends and restates that is, this Agreement is a novation of the July 1, 2012 Marketing and License Agreement, which is replaced in its entirety by the Agreement.

D.     Subject to the terms and conditions set forth herein, the University desires to engage AP to provide such services with regard to the mutually agreed to courses, degree programs and other programs (as set forth in the attached Addendum[s]) (jointly called **AP Online Programs**)

### I.     AP Obligations

During the Term of this Agreement, AP shall have the following obligations, which it shall fulfill through its own efforts as well as through efforts of its agents and affiliates, each of whom shall be subject to the University's approval, which shall not be unreasonably withheld.  Further, AP shall remain contractually liable and legally bound to discharge fully the herein designated obligations in the event its agents and affiliates fail to perform AP-assigned obligations:

A.     **Marketing, Recruiting, and Promotion.** AP shall be the exclusive marketer of the AP Online Programs. AP shall market the University and its AP Online Programs at its own expense using a variety of means as determined by AP, in its reasonable discretion, including but not limited to:

(1)     digital marketing

(2)     establishing relationships with employers and other organizations using field sales representatives / affiliate partnerships, on behalf of the University and its AP Online Programs  using the University's intellectual property (including, specifically, its trademarks without necessarily referencing AP). (See Section IV).

**B.    Program Development, Support and Implementation.** AP's implementation team will work with the University to launch the University's AP Online Programs. At its own expense AP shall implement and provide the following support services:

(1)    an integration team that works with the University's personnel from key departments as coordinated by the University's Distance Education.

(2)    facilitation of various planning sessions for AP Online Programs to suggest new opportunities and enhancements to the existing programs;

(3)    facilitate the development of a "Program Guidelines" document;

(4)    provide at the University's discretion cross-functional project management services, including development of a project plan to drive program implementation activities.

**C.    Academic Support Services.** AP will work with faculty and the University on AP Online Programs' design, including but not limited to:

(1)    assisting with planning, blueprinting and course conversion of the University's into an electronic format;

(2)    assisting University in structuring multiple annual start dates; and

(3)    introducing best practices for the delivery of AP Online Programs.

**D.    Enrollment Specialist Representatives (ESRs).** ESRs will serve as a primary point of contact for all prospective students for the AP Online Programs. The ESRs will help educate students about the University's AP Online Programs. AP's responsibilities include:

(1)    staffing and equipping a call center for ESRs

(2)    providing a team of ESRs to contact potential students;
(3)    providing a toll free number and website for prospective students;

(4)    recruiting in compliance with the academic standards of the University and regulatory requirements; and

(5)    informing potential students of the Program characteristics and referring potential students to the University regarding financial aid and/or academic questions. In performing recruiting activities, ESRs shall use such marketing and promotional materials as deemed appropriate by AP; provided, the same are supplied by or otherwise approved by the University in advance and in accordance with this Agreement. AP is entitled to rely on the accuracy of any such materials supplied by the University.

AP agrees that in the course of recruitment of Students for enrollment in one or more AP Online Programs it will not provide any commission, bonus or other incentive payments based directly or indirectly upon success in securing enrollments to any person or entity directly engaged in any student recruiting or admission activities, or any person directly supervising such person, except as may be authorized by 34 C.F.R. 668.14(b)(22)(2003) and any subsequent amendment thereto, and/or any other requirement of the United States Department of Education or the University's regional accreditor.

E.    **Application Support.** In addition to recruiting, ESRs will:

(1)    inform applicants of University application requirements;

(2)    contact applicants regarding upcoming AP Online Programs' deadlines;

(3)    remind applicants to submit necessary paperwork (transcripts, etc.);

(4)    remind Students of the registration process, registration deadlines and payment deadlines once admitted to the University; and

(5)    refer Students to appropriate University resources if there are further questions about the Program(s).

F.    **Student Support Services.** ESRs will provide student support and retention services, including, but not limited to the following:

(1)    following up with Students periodically through graduation to give support, encouragement, and assistance.

(2)    referring Students to University resources if academic success is in jeopardy;

(3)    welcoming new Students and providing upcoming registration dates and/or deadlines;

(4)    re-engaging inactive Students; and

(5)    reminding Students of upcoming start dates, registration deadlines and payment deadlines.

G.    **Protection of Data.** AP shall use reasonable efforts to ensure the data shared is not re-disclosed or otherwise breached. For any data shared that is subject to the regulations of the Family Educational Rights and Privacy Act (FERPA), (34 CFR Part 99), AP shall comply with the requirements of FERPA. If AP's failure to use reasonable effort to directed above results in the disclosure of data in violation of FERPA, AP shall

be liable for all damage resulting from such disclosure and shall indemnify and hold harmless the University, its regents and employees in the event they sustain damage as a result of AP's actions or failures to act.

Notwithstanding the above, AP may utilize the information of denied applicants (**Non-Viable Prospects**) to contact them to provide information on other education opportunities at institutions that also allow their denied applicants to receive information on other educational opportunities.

## II.    University Obligations

The University shall maintain the sole authority in the (i) appointment of faculty, (ii) admission of students, (iii) delivery of AP Online Programs, (iv) evaluation of student performance, (v) decision to award course credit and/or academic credentialing, (vi) decision to award scholarships or financial aid, and collection of tuition, fees and other monies to be collected from students under this Agreement.  During the Term of this Agreement, the University has the following obligations:

### A.    Marketing Deliverables.

**Marketing, Recruiting, and Promotion.**

(1)    University shall expressly approve or disapprove of any proposed marketing materials, plans and proposals submitted to it by AP within 10 University business days of receipt.  If University does not respond to AP within the 10 University business day period, AP may assume that the marketing materials, plans, and proposals are approved;

(2)    University shall deliver to AP its branding and style guidelines that establish the parameters by which AP may utilize the University's intellectual property.  The University hereby grants the right to AP to use its intellectual property (including to represent the University in forming affiliate relationships and related promotions without necessarily referencing AP) representing Lamar University as referenced in Section IV and Exhibit C in performance of the AP Obligations only in accordance with those branding and style guidelines.  Any deviation from the branding and style guidelines must first be approved by the University;

(3)    University shall allow AP and/or its agents or affiliates to use the University web domain for marketing (i.e., http://online.universityname.edu or http://degree.universityname.edu) and host those subdomains for ease of maintenance and updates;

 Subject to FERPA and state privacy laws, the University shall allow AP to have access to appropriate and relevant current student and alumni email lists for marketing purposes; and

(4)    University shall ensure that AP is its exclusive marketer and promoter with regard to the AP Online Programs, as listed in Addendum A.

**B.    Regulatory Approvals, Accreditations, and Licenses.**  The Parties agree that AP is relying on the University's obligation to determine and obtain all necessary regulatory approvals and licenses for the AP Online Programs including as set forth below:

(1)    **Obtaining Regulatory Approvals.**  As it is required by law, the University shall fulfill its obligation to determine if it is required to obtain any type of approval, authorization, certificate, or license to deliver online instruction, market degree programs, or recruit students.  If the University determines that it or its agents are required to obtain any sort of approval, authorization, certificate, or license in a state, then the University shall work with AP in reasonable efforts to obtain all such necessary approvals and shall communicate them to AP in a timely manner.

(2)    **Informing AP of Obtained Approvals.**  The University shall inform AP as to which states' residents the University is legally authorized to enroll students, what types of marketing and recruitment activities it has obtained approval for, and in which locations such approvals have been obtained.

**C.    Financial/Business Oversight.**    The University will oversee the financial management of the AP Online Programs.

**D.    Intellectual Property.**  The University will not remove, deface, or obscure any of AP's or its agents or affiliates' copyright or trademark notices and/or legends or other proprietary notices associated with AP or its agents or affiliates.

**E.    Access to Data.** The University shall provide AP daily extracts from its Student Information System and Learning Management System that contain information about applicants and students enrolled in the AP Online Programs. Essential data includes, but is not limited to, applicant, student, section, course, and enrollment data. AP and its agents and/or affiliates may use the data in order for AP to fulfill its obligations and exercise its rights under this Agreement and to analyze and increase the effectiveness of the services it offers hereunder.

The University agrees that for the duration of this Agreement it will not offer the same programs online as the Online Programs that are represented by AP except for those in place at the time of this agreement.

**F.    Program Characteristics.**  The University will assure that:

(1)    its tuition for the AP Online Programs is no more than the campus-based tuition;

(2)     the AP Online Programs are in an accelerated format usually consisting of 5 or 8 week courses offered in sequence;

(3)     there shall be at least five (5) program starts per calendar year per Online Program with the exception of selected online Programs;

(4)     the University shall work in good faith with AP toward obtaining approval in as many jointly identified sister states-as soon as reasonably practicable;

(5)     the University shall work collaboratively with AP on marketing promotions including offering special promotions for affiliate partners; and

(6)     the University shall provide and maintain at least three high-demand AP Online Programs under this Agreement as mutually determined by AP and the University.

## II.     License Grants by AP

During the Term of this Agreement, AP grants the University a limited, nonexclusive license to use AP's intellectual property, including but not limited to its trademarks, logos, websites, marketing materials, and know-how, for the specific and limited purpose of marketing and promoting the AP Online Programs.  **Exhibit A** lists the initial AP trademarks that AP expects to be used under this Agreement.

## IV.     License Grants by the University

**A.     License.** During the Term of this Agreement, the University grants AP a limited, nonexclusive license to use the University's intellectual property, including but not limited to its trademarks, logos, websites, marketing materials, pictures (of faculty, the University, and its students and alumni) as approved by the university, and know-how, for the specific and limited purpose of marketing and promoting the AP Online Programs. **Exhibit B** lists the initial University trademarks that the University expects to be used under this Agreement.

**B.     Agents and/or Affiliates.** AP is hereby given the right to allow its agents and/or affiliates (e.g. specialized providers of niche services such as digital marketing and operational suppliers) to utilize the University materials where appropriate in AP's reasonable discretion to meet its obligations to the University and exercise its rights under this Agreement.

## V.     Ownership

**A.     Ownership of Contributed Materials.** AP and the University each retain all ownership and intellectual property rights in the material they each contributed.

**B.**    **Ownership of Developed Materials.**  Any right, title and interest in and to any intellectual property arising from or attributed to any of the work or activities undertaken as part of this Agreement shall belong to the Party that creates such intellectual property, unless mutually agreed to otherwise in writing.

## VI.    Term

The original term of this Agreement shall commence on the Effective Date and end on June 30, 2017, unless terminated earlier hereunder. The original term and any successor term shall automatically renew for three (3) year periods, unless either Party gives written notice to the other Party of its desire to terminate the Agreement at least 120 days before the expiration of the then current original term or successor term.  By mutual agreement and after approval of the University's Board of Regents, the Parties may extend the renewal term up to seven (7) years.  If the University and AP enter into an Addendum to this Agreement for a new program, such an Addendum must be approved by the Chancellor, and the term of such Addendum shall be for seven (7) years unless stated otherwise in the Addendum.

If, during the term of this Agreement, the University wishes to offer similar, additional programs online through another service provider, the University will first offer the right to exclusively negotiate an Addendum for the new Programs to AP.  If AP and the University negotiate in good faith but cannot reach an agreement within 60 days from the date of first offer, University is free to contract with another service provider for the online programs not listed in any executed Addendum.

## VII.    Payment and Taxes

**A.**    **AP Payment.**  The University will collect all **Revenue** (defined to mean tuition and related fees charged to students for the AP Online Programs) and will remit to AP an amount equal to the product of multiplying the applicable tuition revenue percentage [identified in each Addendum] times tuition revenue, which shall be due and payable to AP within thirty (30) University business days of the start of any AP Online Programs. In the event no percentage is noted in Addendum A to this Agreement, the default percentage shall be 50% for both in-state and out of state tuition.

**B.**    **Taxes.**  Each Party will be responsible for any and all taxes due on their portion of Revenues received.

**C.**    **Payment Upon Termination.**  The University acknowledges that a portion of AP's cost is incurred before a student enrolls, and that AP's only method of cost recover is through the continuing payments of students who remain in and progress through the Online Programs.  Therefore, in the event of termination of this agreement for any reason including expiration, the University shall continue to remit payments to AP for all students whose enrollment was secured by AP prior to termination of this Agreement for so long as those students continue to take courses in the Online Programs.

VIII.   **Indemnification**

   **A.**   **AP.** AP will defend and indemnify the University, to the extent permitted by Texas law, against any loss or damage caused by AP's actions hereunder provided that: (a) the University notifies AP in writing within 30 University business days of the claim; (b) AP has sole control of the defense and all related settlement negotiations; and (c) the University provides AP with the assistance, information, and authority reasonably necessary to perform the above; reasonable out-of-pocket expenses incurred by the University in providing such assistance will be reimbursed by AP.

   **B.**   **University.** The University will defend and indemnify AP, to the extent permitted by Texas law against any loss or damage caused by the University's actions hereunder provided that: (a) AP notifies the University in writing within 30 University business days of the claim; (b) the University has sole control of the defense and all related settlement negotiations; and (c) AP provides the University with the assistance, information, and authority reasonably necessary to perform the above; reasonable out-of-pocket expenses incurred by AP in providing such assistance will be reimbursed by the University.

IX.   **LIMITATION OF LIABILITY**

   **NEITHER PARTY SHALL BE LIABLE FOR ANY INDIRECT, INCIDENTAL, SPECIAL, PUNITIVE, OR CONSEQUENTIAL DAMAGES.**

X.   **Warranties**

   **A.**   **Authority.** Each Party warrants, to the best of its knowledge, that it has the authority to enter into the Agreement and to perform its obligations set forth herein.

   **B.**   **Ownership of Materials Provided.** Each Party warrants to the other that it is the sole and exclusive owner of the provided materials or has the license to use and sub-license any intellectual property owned by third parties and incorporated into such materials, and that, to the best of its knowledge; such materials do not infringe any third-party rights.

XI.   **Cure for Breach.**

   If either Party materially breaches the terms of this Agreement and fails to correct the breach within 90 days after the non-breaching Party provides written notification, the non-breaching Party shall follow the dispute resolution procedures contained herein under section XIII C.

XII.   **Obligations Upon Termination.**

   Upon expiration or termination of this Agreement, both parties shall cease all use of the other's provided materials and return any such material in its possession to other Party.

**XIII. General**

**A.    Relationship Between the Parties.**    Each Party is an independent contractor and will be solely responsible for payment of all compensation owed to its employees, as well as employment related taxes.  Each Party will maintain appropriate worker's compensation for its employees as well as general liability insurance.  Neither this Agreement, nor any terms and conditions contained herein, shall be construed as creating a partnership, joint venture, agency or franchise relationship.

**B.    Governing Law and Jurisdiction.**    This Agreement and any dispute or claim arising out of or in connection with it or its subject matter or formation (including non-contractual disputes or claims) shall be governed by and construed in accordance with Texas law.  Venue shall lie in Travis County, Texas.

**C.    Amendment.**  This Agreement may not be amended unless the amendment is in writing and has the approval of AP, the Chancellor and Board of Regents of the Texas State University System.  Notwithstanding the aforementioned, Addendums to this Agreement to add new programs that do not materially changed the duties or obligations of the parties or otherwise increase the University's financial obligations shall not require approval of the Board of Regents.

**D.    Disputes.**  In the event that some or all of the materials provided by either Party is held or is believed by the other Party to infringe third party rights, the alleged infringer shall have the option, at its expense to: (a) modify the materials to be non-infringing; or (b) obtain a license from the third party to continue using that portion of the materials that is infringing the rights of such third party.  If it is not commercially feasible to perform either of the above options, then that Party may require the other to return the infringing materials and all rights thereto.

If a Party breaches this Agreement and does not cure within the proper period then the Parties shall submit the matter to mediation under an agreed mediator within 90 days of the deadline for cure.  If settlement is not reached within 60 days after service of a written demand for mediation, any unresolved controversy or claim arising out of or relating to this Agreement shall referred to the Texas State Office of Administrative Hearings (SOAH) for resolution under Texas Government Code, chapter 2260.

**E.    Notice.**    All notices, including notices of address change, required to be sent hereunder shall be in writing and shall be deemed to have been given when mailed by certified mail or actually received to:

If to AP:

Academic Partnerships, LLC
Attention:  Chief Financial Officer
600 North Pearl Street
Suite 900

Dallas, Texas  75201

With copy to:

Academic Partnerships, LLC
Attn:  Legal Dept.
2200 Ross Ave., Suite 3800
Dallas, TX 75201
FAX No. 214-438-4133

If to the University:

Lamar University
VP Finance and Operations
P.O. Box 10051
Beaumont, TX 77710

The Parties agree that they each may treat documents faxed and/or email attachments and/or a signature sent electronically by the other Party as original documents; nevertheless, either Party may require the other to exchange original signed documents.

**F.     Severability.**  In the event any provision of this Agreement is held to be invalid or unenforceable, the remaining provisions of this Agreement will remain in full force.

**G.     Waiver and Retention of Rights.**  The waiver by either Party of any default or breach of this Agreement shall not constitute a waiver of any other or subsequent default or breach. Except for actions for nonpayment or breach of either Party's intellectual property rights, no action, regardless of form, arising out of this Agreement may be brought by either Party more than two years after the cause of action has occurred. Nothing in this Agreement shall be construed as a waiver of the constitutional, statutory, or common law rights, privileges, immunities, or defenses of the parties.

**H.     Counterparts.**  This Agreement may be executed in any number of counterparts, each of which, when executed and delivered, shall be an original, and all the counterparts together shall constitute one and the same instrument.

**I.     Confidential Information.**  Each Party agrees that it shall not use or disclose to any third party, except for the purpose of performing this Agreement, any business and technical information of the other Party which, in the exercise of reasonable judgment, should be recognized by such Party as confidential (**Confidential Information**).  The obligation of confidentiality shall not apply to information which: (a) is or becomes part of the public domain through no fault of the receiving Party; (b) is furnished by the disclosing Party to others without restrictions on use and disclosure; (c) becomes known or available to the receiving Party without restriction from a source other than the disclosing Party without breach of any Agreement with the disclosing Party; (d) is disclosed with prior written approval of the disclosing Party; (e) is independently developed by the receiving Party without the use of any Confidential Information; (f) is

previously known to the receiving Party on a non-confidential basis; or (g) is required by court order (other legal process) or government agency to be disclosed, in which case, the receiving Party shall give the disclosing Party as much notice as is reasonably practical so that the disclosing Party may seek a protective order or other confidential protection as the disclosing Party, in its sole discretion, may elect and the receiving Party shall reasonably cooperate with the disclosing Party in disclosing Party's efforts to obtain such order or protection.

**J.      Force Majeure.**  Neither Party will be liable for delays or failure in its performance hereunder to the extent such delay or failure is caused by any act of God, war, natural disaster, strike, lockout, labor dispute, work stoppage, fire, third-Party criminal act or act of government, or any other event beyond the reasonable control of that Party (an **Excusable Delay**).  This Agreement may be terminated with written notice by either Party under this section should the Excusable Delay of the non-performing Party continue for more than 30 University business days.

**K.      Entire Agreement.**  This Agreement with any documents referred to in it constitutes the entire agreement and understanding between the Parties and supersedes any previous agreement between them relating to the matters set forth herein.

**L.      Successors and Assigns.**  This Agreement will be binding upon, and will inure to the benefit of, the permitted successors and assigns of each Party hereto.  The University may not assign, this Agreement or any of its rights hereunder without the prior written consent of AP, and any attempted assignment without such consent shall be void.

**M.      Variation.**  No variation of this Agreement or of any of the documents referred to in it shall be valid unless it is in writing and signed by or on behalf of each of the Parties.

**N.      Survivability.**  The following Sections shall survive the expiration and termination of this Agreement:  I-H, V, VII, VIII, IX, X, XII, and XIII.

IN WITNESS WHEREOF, the parties hereto have caused this Amendment to be signed by their duly authorized officers, all done the day and year first above written.

ACADEMIC PARTNERSHIPS, LLC

By: _____         _____
    Wes Brazell                        Date

Title:  CFO

AP/Master Service Agreement – Page 11

TEXAS STATE UNIVERSITY SYSTEM

Examined and Recommended:

President Kenneth Evans, PhD                         Date  9/11/14
Lamar University

Brian McCall, PhD, Chancellor                        Date  9.22.14
9-16-14

APPROVED by the Board of Regents on  8/29/14  at  Board of Regents Meeting

The Honorable Donna N. Williams                     Date  10/6/14
Chairman of the Board

AP/Master Service Agreement – Page 12

## ADDENDUM A

This Addendum (**Addendum**) dated as of August 1, 2014 is a supplement to that certain Service Agreement (**Agreement**) dated as of August 1, 2014 between Academic Partnerships, LLC (**AP**), and Lamar University (the **University**) and is fully incorporated therein.

### I. SCHEDULE OF ONLINE PROGRAMS
The University agrees to pay AP a percentage of all tuition collected for the Online Programs according to the following schedule:

| Graduate Online Programs | AP Revenue Percentage |
|---|---|
| MS in Criminal Justice | 50% of tuition |
| M.Ed. in School Counseling | 50% of tuition |
| M.Ed. in Educational Administration | 50% of tuition |
| M.Ed. in Educational Technology Leadership | 50% of tuition |
| M.Ed. in Teacher Leadership | 50% of tuition |
| M.Ed. in Teacher Leadership: ESL Specialization | 50% of tuition |
| M.Ed. in Clinical Mental Health Counseling | 50% of tuition |
| M.Ed. in Special Education | 50% of tuition |
| M.Ed. in Curriculum and Instruction: Gifted Education Focus | 50% of tuition |
| MS in Nursing | 50% of tuition |
| Graduate Certificates in Education | 50% of tuition |
| **Undergraduate Online Programs** | **AP Revenue Percentage** |
| Undergraduate RN to BSN | 50% of tuition |
| Bachelor of Applied Arts and Sciences | 30% of tuition* |
| BBA in Entrepreneurship | 30% of tuition* |
| BBA in General Business | 30% of tuition* |
| BBA in Management | 30% of tuition* |
| Bachelor of General Studies | 30% of tuition* |
| BS in Communications | 30% of tuition* |
| BS in Criminal Justice | 30% of tuition* |
| BS in Sociology | 30% of tuition* |

\* WITHDRAWAL OF UNDERGRADUATE AP ONLINE PROGRAMS
The University may withdraw all Undergraduate AP Online Programs, with the exception of the Undergraduate RN to BSN, at any point after the summer terms of 2015 after providing 90 days advance written notice to AP. The University may not withdraw the Undergraduate RN to BSN program.

II.          *MODIFICATION* TO THE SCHEDULE OF AP ONLINE PROGRAMS
The University and AP may modify the Schedule of AP Online Programs by mutual agreement. For any added programs, AP revenues for all related undergraduate courses

with the exception of Nursing will be 30% of tuition;  AP revenues for all Nursing undergraduate courses and for all related graduate level courses will be 50% of tuition.

This addendum contains trade secrets and commercial and financial information that are confidential and therefore may not be disclosed to any third party.  If the University receives an open records request for this information, it shall follow the applicable provisions of its state's open records law in regards to notifying AP of the request and seeking a ruling by its state's Attorney General or other open records authority regarding its confidentiality.

IN WITNESS WHEREOF, the parties hereto have caused this Amendment to be signed by their duly authorized officers, all done the day and year first above written.

ACADEMIC PARTNERSHIPS, LLC

By: _____        9/7/14
       Wes Brazell                                              Date

Title: CFO _____

TEXAS STATE UNIVERSITY SYSTEM

Examined and Recommended:

_____        9/11/14
President Kenneth Evans, PhD                   Date
Lamar University

_____        9.22.14
Brian McCall, PhD, Chancellor                  Date
9-15-14

APPROVED by the Board of Regents on 8/29/14  at  Board of Regents Meeting

_____        10/6/14
The Honorable Donna N. Williams              Date
Chairman of the Board

AP/Master Service Agreement – Page 14

**EXHIBIT A**

(AP Trademarks, including those of its affiliates)

1.       ACADEMIC PARTNERSHIPS, LLC
2.       ACADEMIC PARTNERSHIPS
3.       AP





**EXHIBIT B**

(University Trademarks) **TBC later**

1. _____