# Exhibit C-25

## SERVICE AGREEMENT

This Service Agreement (**Agreement**) is entered into by and between Academic Partnerships, LLC, a Delaware limited liability company (**AP**), and the Eastern Michigan University Board of Regents (the **University**) as of September 1, 2016 (the **Effective Date**). AP and the University are sometimes referred to in this Agreement each as a **Party**, and collectively as the **Parties**.

### Recitals Incorporated Into Agreement

A. The University offers courses and degree programs at the undergraduate, graduate and post-graduate level as well as other courses and programs;

B. AP provides services to universities to enable them to offer such courses, degree programs and other programs online;

C. Subject to the terms and conditions set forth herein, the University desires to engage AP to provide such services with regard to the mutually agreed to courses, degree programs and other programs (as set forth in the attached Addendum[s]) (jointly called **Online Programs** and inclusive of all pre-requisite and co-requisite courses) (participants in Online Programs are **Students**).

I. **AP Obligations**
   AP shall have the following obligations, which it shall fulfill through its own efforts as well as through efforts of its agents and affiliates:
   A. **Marketing, Recruiting, and Promotion.** AP shall be the exclusive third-party marketer of the Online Programs and will market the University and its Online Programs using a variety of means as determined by AP. A marketing plan will be presented to the University at least annually, and the University shall review and approve said plan. AP will then operate under the approved marketing for the coming year. Quarterly, the Parties will update the marketing plan, as necessary;
   B. **Program Development, Support and Implementation.** AP's implementation team will work with the University to launch the University's Online Programs. AP's implementation support services will include:
      (1) an integration team that works with the University's personnel from key departments;
      (2) facilitation of various operational planning sessions for Online Programs;
      (3) development of a "Program Guidelines" document;
      (4) cross-functional project management services, including development of a project plan to drive program implementation activities.
   C. **Academic Support Services.** AP will work with faculty and the University on Online Programs' design, including but not limited to:
      (1) assistance with program-level planning, course mapping, and course conversion of Online Programs into an electronic format;
      (2) assisting University in structuring multiple annual start dates; and
      (3) introducing best practices for the delivery of Online Programs.
   D. **Enrollment Specialist Representatives (ESRs).** ESRs will serve as a primary point of contact for all prospective Students for the Online Programs. The ESRs will help educate Students about the Online Programs. AP's responsibilities include:
      (1) staffing and equipping a call center for ESRs;
      (2) providing a team of ESRs to contact potential Students;
      (3) providing a toll free number and website for prospective Students;

(4) recruiting in compliance with the academic standards of the University and regulatory requirements; and

(5) informing potential Students of the Program characteristics and referring potential Students to the University regarding financial aid and/or academic questions. In performing recruiting activities, ESRs shall use such marketing and promotional materials as deemed appropriate by AP and as are provided by or approved by the University in accordance with this Agreement, and AP is entitled to rely on the accuracy of any such materials.

AP agrees that in the course of recruitment of Students for enrollment in one or more Online Programs it will not provide any commission, bonus or other incentive payments based directly or indirectly upon success in securing enrollments to any person or entity directly engaged in any Student recruiting or admission activities, except in accordance with the provisions of 34 C.F.R. 668.14(b)(22)(2003) and any subsequent amendment thereto, and/or any other requirement of the United States Department of Education or the University's regional accreditor.

E. **Application Support.** In addition to recruiting, ESRs will:
   (1) inform applicants of University application requirements;
   (2) contact applicants regarding upcoming Online Programs' deadlines;
   (3) remind applicants to submit necessary paperwork (transcripts, etc.);
   (4) remind Students of the registration process, registration deadlines and payment deadlines once admitted to the University; and
   (5) refer Students to appropriate University resources if there are further questions about the Program(s).

F. **Student Support Services.** ESRs will provide Student support and retention services, including, but not limited to the following:
   (1) following up with Students periodically through graduation;
   (2) referring Students to University resources if academic questions persist;
   (3) welcoming new Students and providing upcoming registration dates and/or deadlines;
   (4) re-engaging inactive Students; and
   (5) reminding Students of upcoming start dates, registration deadlines and payment deadlines.

G. **INTENTIONALLY OMITTED**

H. **Data Protection.** AP shall use commercially reasonable efforts to ensure the data shared is not re-disclosed or otherwise breached. For any data shared that is subject to the regulations of the Family Educational Rights and Privacy Act (FERPA), (34 CFR Part 99), AP shall comply with the requirements of FERPA.

Notwithstanding the above, AP may utilize the information of denied applicants (**Denied Applicants**) to offer them information on other educational opportunities so long as AP obtains the Denied Applicants' consent. The University agrees to assist AP in this process by allowing AP to contact the Denied Applicants, under the University's name, to propose they further their education through other opportunities.

II. **University Obligations**

The University shall maintain the sole authority in the (i) appointment of faculty, (ii) admission of Students, (iii) delivery of Online Programs, (iv) evaluation of Student performance, (v) decision to award course credit and/or academic credentialing, and (vi) decision to award scholarships or financial aid. During the Term of this Agreement, the University has the following obligations:

A. **Marketing Deliverables.**
   (1) University shall deliver to AP its branding and style guidelines to be used by AP in marketing and recruiting associated with the Online Programs and hereby grants the right to AP to use its intellectual property (including to represent the University in forming affiliate relationships and related promotions without necessarily referencing AP) referenced in Section IV and Exhibit C in performance of the AP Obligations
   (2) University shall allow AP and/or its agents or affiliates to use the University web domain for marketing (i.e., http://online.universityname.edu or http://degree.universityname.edu) and host those subdomains for ease of maintenance and updates;
   (3) University shall allow AP to have access to current student and alumni email lists for marketing purposes; and
   (4) University shall ensure that AP is its exclusive marketer and promoter with regard to the Online Programs.

B. **Regulatory Approvals, Accreditations, and Licenses.** The Parties agree that AP is relying on the University's obligation to determine and obtain all necessary regulatory approvals and licenses for the Online Programs including as set forth below:
   (1) **Obtaining Regulatory Approvals.** As it is required by law, the University shall fulfill its obligation to determine if it is required to obtain any type of approval, authorization, certificate, or license to deliver online instruction, market degree programs, or recruit Students. If the University determines that it or its agents are required to obtain any sort of approval, authorization, certificate, or license in a state, then the University shall obtain all such necessary approvals and shall communicate them to AP in a timely manner.
   (2) **Informing AP of Obtained Approvals.** The University shall inform AP as to which states' residents the University is legally authorized to enroll Students, what types of marketing and recruitment activities it has obtained approval for, and in which locations such approvals have been obtained.

C. **Financial/Business Oversight.** The University will oversee the financial management of the Online Programs.

D. **Intellectual Property.** The University will not remove, deface, or obscure any of AP's or its agents or affiliates' copyright or trademark notices and/or legends or other proprietary notices associated with AP or its agents or affiliates.

E. **Access to Data.** The University shall provide AP daily extracts from its Student Information System and Learning Management System that contain information about applicants and Students enrolled in the Online Programs. Essential data includes, but is not limited to, applicant, Student, section, course, enrollment, grade, and time-activity data. AP and its agents and/or affiliates may use the data in order for AP to fulfill its obligations and exercise its rights under this Agreement and to analyze and increase the effectiveness of the services it offers hereunder. Additionally, AP may share such data with its strategic partners, specifically AspirEDU, Inc., Zoom Video Communications, Inc., and Instructional Connections, LLC, in order for AP to improve retention efforts and enhance AP's other services. All strategic partners receiving data from AP will be bound by same FERPA requirements as AP.

F. **Competing Programs.** The University agrees that for the duration of this Agreement it will not offer any similar and/or competing online program(s) to the Online Programs that are represented by AP.

G. **Program Characteristics.** The University will assure that:
   (1) its tuition and fees for the Online Programs is no more than the campus-based tuition and fees and are market –competitive, as defined by AP;
   (2) the Online Programs are in an accelerated format;

      (3)    there shall be at least six program starts per year per Online Program;

      (4)    the University shall work in good faith toward obtaining approval in as many jointly identified states with AP as soon as reasonably practicable;

      (5)    the University shall work collaboratively with AP and establish parameters in conjunction with the annual marketing plan to offer promotions, including offering special scholarships and discounts to affiliate partners; and

      (6)    the University shall provide and maintain at least three high-demand Online Programs under this Agreement, as defined by AP.

## III. License Grants by AP

During the Term of this Agreement, AP grants the University a limited, nonexclusive license to use AP's intellectual property, including but not limited to its trademarks, logos, websites, marketing materials, and know-how, for the specific and limited purpose of marketing and promoting the Online Programs. **Exhibit A** lists the initial AP trademarks that AP expects to be used under this Agreement.

## IV. License Grants by the University

**A. License.** During the Term of this Agreement, the University grants AP a limited, nonexclusive license to use the University's intellectual property, including but not limited to its trademarks, logos, websites, marketing materials, pictures (of faculty, the University, and its students and alumni), and know-how, for the specific and limited purpose of marketing and promoting the Online Programs. **Exhibit B** lists the initial University trademarks that the University expects to be used under this Agreement.

**B. Agents and/or Affiliates.** AP is hereby given the right to allow its agents and/or affiliates (e.g. specialized providers of niche services such as digital marketing and operational suppliers) to utilize the University materials where appropriate in AP's reasonable discretion to meet its obligations to the University and exercise its rights under this Agreement.

## V. Ownership

**A. Ownership of Contributed Materials.** AP and the University each retain all ownership and intellectual property rights in the material they each contributed.

**B. Ownership of Developed Materials.** Any right, title and interest in and to any intellectual property arising from or attributed to any of the work or activities undertaken as part of this Agreement shall belong to the Party that creates such intellectual property, unless mutually agreed to otherwise in writing.

## VI. Term and Right of First Offer

**A. Term.** The original term of this Agreement shall commence on the Effective Date and end on the fifth (5th) anniversary of the first Launch Date of an Online Program (**Launch Date** is defined as the first day instruction begins for Students enrolled in an Online Program), unless terminated earlier hereunder. The original term and any successor term shall automatically renew for two (2) year periods, unless either Party gives written notice to the other Party of its desire to terminate the Agreement at least 270 days before the expiration of the then current original term or successor term. To the extent that one or more Addendum(s) to this Agreement is entered into for a new Program, the term of each Addendum shall also be for a period of five (5) years (**Addendum Term**) beginning on the first Launch Date of an Online Program identified in the Addendum notwithstanding the fact that the Addendum Term could exceed the period of the original term or the successor term. Each Addendum Term automatically renews for periods of two (2) years unless terminated by either party in writing 180 days before the expiration of the then current Addendum Term. In the event of an Addendum Term, all provisions of this Agreement shall remain in full force and effect for the

duration of the Addendum Term with regard to the new Online Programs and any renewals of such thereafter.

    B. **Right of First Offer.** During the term of this Agreement, if the University decides to use a third-party service provider to provide services similar to those in this Agreement for online programs other than those listed in any executed Addendum, the University will first offer the right to exclusively negotiate an Addendum for the new Programs to AP. If AP and University negotiate in good faith but cannot reach an agreement within 60 days from the date of the first offer, University is free to contract with another service provider solely for online programs not listed in any executed Addendum.

## VII.   Payment and Taxes

    A. **AP Payment.** The University will collect all **Revenue** (defined to mean all tuition and related fees charged to Students for the Online Programs) and will remit to AP an amount equal to the product of multiplying the applicable AP Revenue Percentage [identified in each Addendum] times Revenue, which shall be due and payable to AP within thirty (30) days of the start of any Online Programs. In the event no percentage is noted in an Addendum the default percentage shall be 50% of Revenue.

    B. **Taxes.** Each Party will be responsible for any and all taxes due on their portion of Revenues received.

    C. **Final Service Payment.** The University acknowledges that a significant portion of AP's cost is incurred before a student enrolls, and that AP's only method of cost recovery is through the continuing payments as a student progresses through the Online Programs. Additionally, University recognizes that the nature of this Agreement and its payment schedule necessitates that a portion of the amount owed to AP be remitted after termination or expiration of the Agreement. Therefore, for each Student who AP secures the enrollment of during the Term of this Agreement, the University shall continue to remit payments to AP for so long as the Student continues to take courses in the Online Programs at the University, even if beyond the termination or expiration date of this Agreement

## VIII.   Indemnification

    A. **AP.** AP will defend and indemnify the University, to the extent permitted by applicable law, against any loss or damage caused by AP's actions hereunder provided that: (a) the University notifies AP in writing within 30 days of the claim; (b) AP has sole control of the defense and all related settlement negotiations; and (c) the University provides AP with the assistance, information, and authority reasonably necessary to perform the above; reasonable out-of-pocket expenses incurred by the University in providing such assistance will be reimbursed by AP.

    B. **University.** The University will defend and indemnify AP, to the extent permitted by applicable law against any loss or damage caused by the University's actions hereunder provided that: (a) AP notifies the University in writing within 30 days of the claim; (b) the University has sole control of the defense and all related settlement negotiations; and (c) AP provides the University with the assistance, information, and authority reasonably necessary to perform the above; reasonable out-of-pocket expenses incurred by AP in providing such assistance will be reimbursed by the University.

## IX.   LIMITATION OF LIABILITY
NEITHER PARTY SHALL BE LIABLE FOR ANY INDIRECT, INCIDENTAL, SPECIAL, PUNITIVE, OR CONSEQUENTIAL DAMAGES EXCEPT AS OTHERWISE CONTEMPLATED IN THIS AGREEMENT.

## X.   Warranties

    A. **Authority.** Each Party warrants, to the best of its knowledge, that it has the authority to enter into the Agreement and to perform its obligations set forth herein.
    B. **Ownership of Materials Provided.** Each Party warrants to the other that it is the sole and exclusive owner of the provided materials or has the license to use and sub-license any intellectual property owned by third parties and incorporated into such materials, and that, to the best of its knowledge; such materials do not infringe any third-party rights.

## XI. Cure for Breach.

If either Party materially breaches the terms of this Agreement and fails to correct the breach within 60 days after the non-breaching Party provides written notification, the non-breaching Party shall follow the dispute resolution procedures contained herein under Section XIV C.

## XII. Additional Obligations Upon Termination.

In addition to any other obligations identified in this Agreement which extend beyond, or begin at, expiration or termination of this Agreement, both parties shall cease all use of the other's provided materials and return any such material in its possession to other Party.

## XII. General

    A. **Relationship Between the Parties.** Each Party is an independent contractor and will be solely responsible for payment of all compensation owed to its employees, as well as employment related taxes. Each Party will maintain appropriate worker's compensation for its employees as well as general liability insurance. Neither this Agreement, nor any terms and conditions contained herein, shall be construed as creating a partnership, joint venture, agency or franchise relationship.
    B. **Mutual Non-Disparagement.** The University and AP agree to make no statement, whether written or oral, about the other Party which could reasonably be expected to adversely affect the other Party's perception or reputation.
    C. **Governing Law and Jurisdiction.** This Agreement and any dispute or claim arising out of or in connection with it or its subject matter or formation (including non-contractual disputes or claims) shall be governed by and construed in accordance with Texas law.
    D. **Dispute.** In the event that some or all of the materials provided by either Party is held or is believed by the other Party to infringe third party rights, the alleged infringer shall have the option, at its expense to: (a) modify the materials to be non-infringing; or (b) obtain a license from the third party to continue using that portion of the materials that is infringing the rights of such third party. If it is not commercially feasible to perform either of the above options, then that Party may require the other to return the infringing materials and all rights thereto.

    If a Party breaches this Agreement and does not cure within the proper period then the Parties shall submit the matter to mediation under an agreed mediator within 60 days of the deadline for cure. If settlement is not reached within 60 days after service of a written demand for mediation, any unresolved controversy or claim arising out of or relating to this Agreement shall be settled by binding arbitration under an agreed arbitrator. The successful participant in any such arbitration shall be entitled to recovery of all of its legal costs and fees.

    E. **Notice.** All notices, including notices of address change, required to be sent hereunder shall be in writing and shall be deemed to have been given when mailed by certified mail or actually received to:
        If to AP:

        Academic Partnerships, LLC
        Attention: Finance Department
        600 North Pearl Street

>
> Suite 900
> Dallas, Texas 75201
> With copy to:
>
> Academic Partnerships, LLC
> Attn: Legal Dept.
> 2200 Ross Avenue
> Suite 3800
> Dallas, Texas 75201
>
> If to the University:
>
> Eastern Michigan University
> Director of Purchasing
> 204 Pierce Hall
> Ypsilanti, Michigan 48315

The Parties agree that they each may treat documents faxed and/or email attachments and/or a signature sent electronically by the other Party as original documents; nevertheless, either Party may require the other to exchange original signed documents.

F. **Severability.** In the event any provision of this Agreement is held to be invalid or unenforceable, the remaining provisions of this Agreement will remain in full force.

G. **Waiver.** The waiver by either Party of any default or breach of this Agreement shall not constitute a waiver of any other or subsequent default or breach. Except for actions for nonpayment or breach of either Party's intellectual property rights, no action, regardless of form, arising out of this Agreement may be brought by either Party more than two years after the cause of action has occurred.

H. **Counterparts.** This Agreement may be executed in any number of counterparts, each of which, when executed and delivered, shall be an original, and all the counterparts together shall constitute one and the same instrument.

I. **Confidential Information.** Each Party agrees that it shall not use or disclose to any third party, except for the purpose of performing this Agreement, any business and technical information of the other Party which, in the exercise of reasonable judgment, should be recognized by such Party as confidential (**Confidential Information**). The obligation of confidentiality shall not apply to information which: (a) is or becomes part of the public domain through no fault of the receiving Party; (b) is furnished by the disclosing Party to others without restrictions on use and disclosure; (c) becomes known or available to the receiving Party without restriction from a source other than the disclosing Party without breach of any Agreement with the disclosing Party; (d) is disclosed with prior written approval of the disclosing Party; (e) is independently developed by the receiving Party without the use of any Confidential Information; (f) is previously known to the receiving Party on a non-confidential basis; or (g) is required by court order, statute, other legal process, or government agency to be disclosed, in which case, the receiving Party shall give the disclosing Party as much notice as is reasonably practical so that the disclosing Party may seek a protective order or other confidential protection as the disclosing Party, in its sole discretion, may elect and the receiving Party shall reasonably cooperate with the disclosing Party in disclosing Party's efforts to obtain such order or protection.

J. **Force Majeure.** Neither Party will be liable for delays or failure in its performance hereunder to the extent such delay or failure is caused by any act of God, war, natural disaster, strike, lockout, labor dispute, work stoppage, fire, third-Party criminal act or act of government, or any other event beyond the reasonable control of that Party (an **Excusable Delay**). This Agreement

may be terminated with written notice by either Party under this section should the Excusable Delay of the non-performing Party continue for more than 30 days.
K. **Entire Agreement.** This Agreement with any documents referred to in it constitutes the entire agreement and understanding between the Parties and supersedes any previous agreement between them relating to the matters set forth herein.
L. **Successors and Assigns.** This Agreement will be binding upon, and will inure to the benefit of, the permitted successors and assigns of each Party hereto. Either Party may assign this Agreement upon providing written notice to the other Party.
M. **Variation.** No variation of this Agreement or of any of the documents referred to in it shall be valid unless it is in writing and signed by or on behalf of each of the Parties.
N. **Survivability.** The following Sections shall survive the expiration and termination of this Agreement: I-H, V, VII, VIII, IX, X, XII, XIII.

**ACADEMIC PARTNERSHIPS, LLC**

Signature: _____

Name: JEFF DAWSON

Title: CFO

Date: 11/28/2016

**EASTERN MICHIGAN UNIVERSITY BOARD OF REGENTS**

Signature: _____

Name: James M. Smith

Title: President

Date: _____

Received
NOV 2 2 2016
EMU
Office of the President

## ADDENDUM A

This Addendum A (**Addendum**) dated as of September 1, 2016, is a supplement to that certain Service Agreement (**Agreement**) dated as of September 1, 2016, between Academic Partnerships, LLC (**AP**), and Eastern Michigan University (the **University**) and is fully incorporated therein.

### A. Addition of Online Programs

The following programs and/or degrees are designated as "Online Programs" in accordance with the Agreement. All projected launch dates are estimates for Launch Dates of the particular Online Program. The Parties acknowledge that the actual Launch Date may vary slightly from the projection due to varying implementation requirements.

| PROGRAM AND/OR DEGREE (ONLINE PROGRAMS) | PROJECTED LAUNCH DATE | AP REVENUE PERCENTAGE |
|---|---|---|
| **Nursing Programs** | | |
| RN-BSN* | Summer 1 2017* | 47%* |
| MSN Educator | Fall 1 2017 | 50% |
| RN-MSN Educator | Summer 1 2017 | 50% |
| **Education Programs** | | |
| M.Ed. Leadership* | Summer 1 2017* | 50%* |
| M.Ed. C&I | Summer 1 2017 | 50% |
| **Business Programs** | | |
| MBA- General | Fall 1 2017 | 50% |
| MBA -Marketing | Fall 1 2017 | 50% |
| MBA -International Business | Fall 1 2017 | 50% |
| MBA -Supply Chain Management | Fall 1 2017 | 50% |
| **Bachelor Programs** | | |
| Bachelor of General Studies | Fall 2 2017 | 50% |
| Bachelor of General Studies – Criminology | Fall 2 2017 | 50% |
| Bachelor of General Studies – Applied Communication | Fall 2 2017 | 50% |
| Bachelor of General Studies – Foundations of Psychology | Fall 2 2017 | 50% |
| Bachelor of General Studies – Marketing Principles | Fall 2 2017 | 50% |

*The University has existing enrollments in the RN-BSN and M.Ed. Leadership Online Programs as of the Effective Date of this Addendum (the **Existing Enrollments**). The University wishes to service those Existing Enrollments outside of the Agreement. As such, AP will not provide services to the Existing Enrollments, and AP will not receive any compensation for the Existing Enrollments. Additionally, for clarity, the University will ensure that Existing Enrollments will not appear on any student rosters or other data files sent to AP.

This addendum contains trade secrets and commercial and financial information that are confidential and therefore may not be disclosed to any third party. If the University receives an open records request for this information, it shall follow the applicable provisions of its state's open records law in regards to notifying AP of the request and seeking a ruling by its state's Attorney General or other open records authority regarding its confidentiality.

<u>**MASTER SERVICE AGREEMENT**</u> – Addendum A
*Eastern Michighan University*

*[signature page follows]*

| ACADEMIC PARTNERSHIPS, LLC | EASTERN MICHIGAN UNIVERSITY BOARD OF REGENTS |
|---|---|
| Signature: *[signed]* | Signature: *[signed]* |
| Name: JEFF DAWSON | Name: JAMES M. Smith |
| Title: CFO | Title: President |
| Date: 11/28/2016 | Date: |

Received
NOV 2 2 2016
EMU
Office of the President

**EXHIBIT A**
(AP Trademarks, including those of its affiliates)

1. ACADEMIC PARTNERSHIPS, LLC
2. ACADEMIC PARTNERSHIPS
3. AP





**MASTER SERVICE AGREEMENT** – Exhibit A
*University Name*

# EXHIBIT B

(University Trademarks)

1. _____