# Exhibit D-2

# Report on Proprietary Institution Conversions

## U.S. Department of Education

## May 27, 2021

**Introduction**

In its Explanatory Statement for the Further Consolidated Appropriations Act, 2020, Congress directed the Department to issue a report outlining the process through which it approves or disapproves of a for-profit institution's conversion to not-for-profit status and a list of any staff involved in such decisions. Congress also directed the Department to include in the report all institutions of higher education that have changed their for-profit status in the past three fiscal years and any action the Department has made with respect to those institutions. This report was prepared in accordance with directions provided by Congress. We do note for awareness that this report refers to "nonprofit" status instead of "not-for-profit" status for consistency with the Higher Education Act of 1965 (the HEA) and the U.S. Department of Education's (the Department's) regulations. Likewise, the report refers to "proprietary" instead of "for-profit."

**Background**

The Department's Federal Student Aid office (FSA) administers the student financial assistance programs authorized by Title IV of the HEA, as amended (Title IV, HEA programs), and the Health Education Assistance Loan (HEAL) program transferred to the Department from the U.S. Department of Health and Human Services under Public Law 113-76.

FSA's Office of Partner Participation and Oversight (PPO) is responsible for activities that support and monitor FSA program participants and enforce compliance with laws and regulations governing student financial assistance programs. The activities within PPO cover the entire lifecycle of program participants. The Partner Eligibility and Oversight Services Directorate (PEOSD) within PPO is responsible for providing services and support related to the performance of the Title IV portfolio and administering a program of monitoring and oversight of the institutions (i.e., schools, guaranty agencies, lenders, and servicers) participating in the Department of Education's Federal Student Aid programs. The School Eligibility and Oversight Service Group (SEOSG) within PEOSD is the group responsible for administering a program of eligibility, certification, financial analysis, and oversight of schools participating in the Title IV, HEA programs. This compliance program, which also includes audit resolution, is administered in accordance with policies and procedures established by PPO's Performance Management Group (PMG) and utilizes the automated systems and facilities developed and maintained by PPO's Program Management and Support Services Directorate.

To accomplish this mission, SEOSG is divided into eight School Participation Divisions (SPDs) that specialize in the business processes necessary for managing accountability in campus administration of Title IV, HEA programs. There are seven SPDs for domestic schools and one SPD (the Multi-Regional and Foreign Schools Participation Division) that focuses on both domestic and foreign schools' responsibilities. The Multi-Regional and Foreign Schools

2

Participation Division (MRFSPD) is responsible for distinct functions of a group of staff responsible for the oversight and management of the evaluation and certification of publicly traded corporations and large school groups and foreign schools that apply to participate in the Title IV, HEA programs.

Each of the SPDs has responsibility for the oversight and management improvement services of a specific set of schools. Among the many responsibilities performed by SPDs are examining, analyzing, and making determinations on eligibility applications submitted by schools for participation in the Federal Student Aid programs.[1]

### The Department's Review of Proprietary Institution Conversion Requests

#### Statutory and Regulatory Definitions

The HEA has long provided different definitions for an "institution of higher education," a "proprietary institution of higher education," and "nonprofit." The Department's regulations reflect the distinctions that the statute makes for these terms.

#### Statutory Definitions

"Institution of higher education" and "postsecondary vocational institution" mean, in pertinent part, an educational institution in any State that "is a public or other nonprofit institution."  *See* 20 U.S.C. §§ 1001(a)(4); 1002(c)(1)(B).

"Nonprofit" means a school, agency, organization, or institution owned and operated by one or more nonprofit corporations or associations, no part of the net earnings of which inures, or may lawfully inure, to the benefit of any private shareholder or individual. *See* 20 U.S.C. § 1003(13).

The definition of a "proprietary institution of higher education" is an institution of higher education that is not a public or a nonprofit institution. *See* 20 U.S.C. § 1002(b).

#### The Department's Definitions and Regulations

"Institution of higher education," "proprietary institution of higher education," and "postsecondary vocational institution" are defined in the Department's regulations at 34 C.F.R. §§ 600.4, 600.5, and 600.6, respectively. The Department's definitions of an "institution of

---

[1] *See* U.S. Department of Education Principal Office Functional Statements
https://www2.ed.gov/about/offices/or/fs/fsa/intro.html and
https://www2.ed.gov/about/offices/or/fs/fsa/partners.html

higher education" and a "postsecondary vocational institution" include a requirement for the institution to be a public or private nonprofit educational institution.

"Public," when applied to an institution, means that the institution is under the administrative supervision or control of a government other than the Federal Government. "Private" means that the institution is not under Federal or public supervision or control. *See* 34 C.F.R. § 77.1(b).

"Nonprofit institution," means, for a domestic institution, an institution that—

- Is owned and operated by one or more nonprofit corporations or associations, no part of the net earnings of which benefits any private shareholder or individual;

- Is legally authorized to operate as a nonprofit organization by each State in which it is physically located; and

- Is determined by the U.S. Internal Revenue Service to be an organization to which contributions are tax-deductible in accordance with section 501(c)(3) of the Internal Revenue Code (26 U.S.C. 501(c)(3)). *See* 34 C.F.R. § 600.2.

### Overview of the Department's Proprietary Institution Conversion Review Process

Since 2016, we have significantly increased the rigor, thoroughness, and scope of our reviews. This includes requesting a wider range of documents and a much closer look at finances. We believe this results in a process that is more sophisticated, comprehensive, and better suited to identifying concerns that a surface-level review would not catch.

The Department's review of a proprietary institution's conversion request typically occurs in three phases: 1) a pre-acquisition review if requested by the school; 2) a post-closing review within the 60 days immediately following the closing of the transaction to ensure compliance with the regulatory requirements (34 C.F.R. § 600.20(g) and (h)) to continue participation while the change in ownership is under review; and 3) a final review and decision.[2] This is the same process followed for the review of all changes in control and ownership. Conversions to nonprofit status and most other changes of ownership are reviewed by the national change in ownership working group (CIO Working Group), which is described in more detail below.

An institution's request to convert from proprietary status to nonprofit status typically occurs through a transaction that transfers ownership or control of a proprietary institution either through a sale of assets, stock, or membership interests to a nonprofit entity, and results in a

---

[2] This overview is discussed in terms of a proprietary institution's conversion to a private nonprofit institution type. A proprietary institution may also convert to a public institution type. The Department's review process for evaluating a proprietary institution's conversion to a public institution is like the process described here, with some analytical variations stemming from definitional differences between a nonprofit institution and a public institution. In other cases, a conversion may occur through a school of one ownership type acquiring a main or additional location of an institution of another ownership type.

change in ownership and change in control. For purposes of the Title IV, HEA programs, an institution that undergoes a change in ownership that results in a change in control ceases to qualify as an eligible institution upon the change in ownership and control. The Secretary may continue the institution's participation in the Title IV, HEA programs on a temporary, provisional basis if the institution submits a timely and materially complete application and otherwise qualifies for the extension.

The Department conducts both pre-acquisition and post-acquisition reviews of changes of ownership and requested conversions to nonprofit status. These review processes are outlined below. The Department has significantly enhanced both its pre- and post-acquisition review process for all changes of ownership, including requested conversions to nonprofit status since 2016. As part of those improvements, the Department currently requests approximately 30 categories of documents and information relating to a nonprofit conversion for both a comprehensive pre-acquisition review (described below) and a post-acquisition review. Responsive documentation is typically voluminous, and often involves follow-up requests for additional documents or information.

The Department's review of a requested conversion to nonprofit status focuses on whether following the transaction the institution would meet the statutory and regulatory definitions of a nonprofit institution. In addition to determining whether the institution meets the basic requirements of being owned by a nonprofit entity and having IRS 501(c)(3) tax-exempt status, the Department conducts its own independent analysis of the operational and financial terms of the transaction. To assess whether any part of the institution's net earnings benefits any private shareholder or individual, the Department focuses on whether any other party reaps financial benefits from the institution's operations. For example, the Department evaluates whether there will be ongoing servicing agreements or leases with the institution's for-profit former owner (or a related party) and the post-transaction institution, as well as the terms of any financing, including whether the prior owner is providing financing by way of a promissory note or some other method. The Department also examines whether common executive or board memberships exist between the former proprietary owner and the post transaction institution or its proposed new nonprofit owner, along with a review of the institution's and the nonprofit entity's governance structures, and other forms of control.

The Department reviews draft and final transaction agreements, proposed pre- and post-transaction ownership and governance structures, the identity of the officials of the institution, the sales price, any contracts or agreements that will be in place after the transaction is consummated (including, for example, leases and service contracts), financing for the transaction, valuations of the transaction or transferred assets, and financial statements of the nonprofit or public entity that may acquire the proprietary institution. When it needs additional information, the Department also conducts independent research on the parties to the transaction.

**Pre-Acquisition Review:** The Department's pre-acquisition review is a voluntary review requested by an institution prior to a change in control or ownership. The Department offers parties to a change of ownership transaction either a comprehensive pre-acquisition review or an abbreviated pre-acquisition review. Typically, when an institution requests a pre-acquisition review of a conversion to nonprofit status, it requests a comprehensive review to obtain the Department's preliminary determination as to whether the Department sees any impediment to the requested conversion to nonprofit status, to the extent any concerns can be identified from the available information. The review process also identifies potential additional requirements the Department may impose if the anticipated proprietary to nonprofit conversion transaction is executed, such as extended 90-10 compliance requirements or an irrevocable letter of credit. Given the complexity of proprietary to nonprofit conversion transactions, the Department may spend several months in its review. Sometimes after the Department has already begun its in-depth review, the Department receives additional or updated transaction documents, necessitating additional time for the review process. In addition, the Department's written response also recites standard requirements, such as the requirement for an institution to provide an audited same-day balance sheet, and State and accrediting agency approvals within specified timeframes following the date of the change in ownership and request for a proprietary to nonprofit conversion transaction.

Additionally, the Department offers institutions an abbreviated (and therefore expedited) pre-acquisition review of the proposed change in ownership. It is up to each institution whether to accept the Department's offer of such an abbreviated review. In those cases where an institution agrees to proceed with an abbreviated pre-acquisition review, the Department will provide an abbreviated pre-acquisition review response letter, which is limited to addressing whether the institution would be required to post an irrevocable letter of credit in lieu of the new owner providing two years of financial statements as is required for a materially complete application under the regulations (for example, if the new owner is a newly-created entity without the required two complete years of financial statements). Such response letters do not identify any other areas of concerns or obstacles. Nor do they involve the rigorous analysis the Department performs in a comprehensive pre-acquisition review relating to the request to convert to nonprofit status. The narrow scope of the abbreviated pre-acquisition review is made clear to institutions when such a review is offered.

Whenever the Department receives a pre-acquisition review application involving a proprietary institution's request for recognition as a nonprofit institution, or if the Department learns that such a transaction has closed without a pre-acquisition review, the Department notifies the institution that it may not identify itself as a "nonprofit institution" in any advertising, publications, or other notifications, unless and until the Department approves the institution's status as a nonprofit for HEA purposes. The Department's notice explains that the use of the term "nonprofit" may be potentially confusing to students and the public, who may interpret the use of "nonprofit" to mean that the Department has granted the institution nonprofit status under

its regulations. The Department does not take a position regarding statements that the institution's new owner may make about its status as a 501(c)(3) tax exempt organization(s) as designated by the Internal Revenue Service or its status as a nonprofit under state law.

**Immediate Post-Transaction Review:** An institution is required to report and seek approval of continued participation following a change in ownership (including a request to change status from proprietary to nonprofit) no later than 10 business days following the closing of the transaction. At this stage, the Department reviews the materials provided by the institution in response to the requirements set forth in 34 C.F.R. § 600.20(g) and (h) to determine whether the institution satisfies the conditions to receive a temporary provisional extension of its Program Participation Agreement. If the institution has not qualified for a temporary extension, the Department acts to implement the institution's loss of eligibility. If the institution qualifies for a temporary provisional extension of its participation, it continues to participate on a month-to-month status under the conditions of its pre-CIO proprietary status until a final decision has been rendered.

**Final Review and Decision:** Following the closing of the transaction, the Department analyzes the final transaction documents and other required submissions and determines whether the institution's request to convert to nonprofit status can be approved. Even if a pre-acquisition review was performed, the Department requires the submission of updated documents because the actual transaction may differ from the prospective transaction presented by the institution during the pre-acquisition review. If following the review of the post-acquisition documents the Department is satisfied that the institution meets all eligibility requirements as well as the statutory and regulatory definitions of a nonprofit institution, the Department approves the change in ownership with approval for conversion to nonprofit status. Alternatively, the Department may approve a change in ownership while disapproving the requested conversion to nonprofit status, thus allowing the institution to continue participation in HEA programs as a proprietary institution under new ownership. In some circumstances, if the Department has information from which to conclude that changes have occurred following the closing of the transaction (*e.g.,* significant restructuring or forgiveness of related party loans), it might approve the change of ownership and defer its decision on the requested conversion to nonprofit status until further updated information can be submitted and reviewed. Another possibility is that the Department may disapprove the change in ownership and act to end the institution's participation in the Title IV, HEA programs.

**Post-Approval Monitoring:**  In response to a recent U.S. Government Accountability Office (GAO) recommendation, the Department agreed that additional monitoring procedures should be developed and implemented for staff to review the audited financial statements of all institutions

following the Department's approval of nonprofit status for the risk of improper benefit. The Department has begun developing and implementing modifications to existing decision letter templates to include additional reporting requirements for newly converted nonprofit institutions (e.g., reporting of any Internal Revenue Service (IRS) issues impacting the nonprofit status of the institution or IRS actions with related parties that involve the conversion, any changes in status with the institution's accrediting or state licensing agencies, and changes to existing agreements (e.g., loan and servicing), if any, between insiders and the institutions). Additionally, institutions will be required to report promptly any new or amended servicing or contracting agreements, and when another entity assumes any of the responsibilities associated with the functional components of the institutions (in addition to the regulations requiring an institution to report changes related to third-party servicers). As appropriate, the decision letters may also direct the schools to provide additional financial reporting, including projected cash flow statements, which include information about their current operations and future plans, as well as enrollment monitoring reporting. Requirements for additional reporting will also be included as a condition in the Provisional Program Participation Agreement for Department review during the provisional period. The Department anticipates the need for closely monitoring newly converted nonprofit institutions for the risk of improper benefit until the school receives its first recertification after the change of ownership with nonprofit conversion.

The Department will also develop new financial analysis procedures to ensure that all conversions are reviewed after the change in ownership by monitoring the additional reporting and subsequent financial statement submissions.

## List of Staff Involved

As noted in Part 1, eight SPDs within FSA's SEOSG share responsibility for the oversight and management improvement services of specific schools assigned to them. The SPDs are responsible for processing institutional eligibility applications, including proprietary institution conversions, for institutions within their geographic region. The SPDs use a holistic case management approach (as prescribed by PMG procedures) in assessing an institution's Title IV, HEA program eligibility and compliance. SPD staff-involved in processing a proprietary to nonprofit conversion would typically include the SPD's Division Chief, a Branch Chief, an Eligibility Analyst, and a Financial Analyst, and in the case of the MRFSPD, the Case Manager for the institution.

### National Change in Ownership Workgroup

Since 2016, the Department has enhanced its review of nonprofit conversions, as well as other changes in ownership. In September 2018, the Department organized a new national change in ownership workgroup (CIO Workgroup) which is comprised of both FSA and Office of the General Counsel (OGC) personnel.

The initial purpose of the CIO Workgroup was to develop expertise throughout the SPDs to ensure consistent, detail-driven review of change in ownership applications and requests to covert to nonprofit status, no matter which regional SPD receives the application. Due to the complexity of the conversion transactions, the review process has evolved over time, and recently the Department has given the CIO Workgroup primary responsibility for evaluating change in ownership transactions, including proprietary institution conversions to nonprofit status. The CIO Workgroup consists of staff and managers from throughout the country, as well as OGC attorneys from the Division of Postsecondary Education. The CIO Workgroup meets as a team for 90 minutes twice monthly, and as needed on individual cases. On most days, CIO Workgroup members have several hours of additional calls to work together on individual cases. Each conversion case involves a substantial and time-consuming review.

The CIO Workgroup has developed templates for the letters used by the CIO Workgroup and SPDs to communicate with the institutions. The letters are used to request documents as well as to notify the parties to the transactions of the determinations made by the Department regarding the change in ownership and conversion. As described above, the CIO Workgroup has a standard set of documents that it requests for nonprofit conversions (approximately 30 different categories), although the templates are customized to cover the specific aspects of each case. These templates were developed with substantial input from OGC and are regularly reviewed and updated. The CIO Workgroup assigns members of the group to review and analyze the application and documents in coordination with the SPD, and individual cases are regularly brought to the full CIO Working Group for discussion.

The following list identifies the composition of the CIO Workgroup as of April 20, 2021.

- Two Case Managers from the MRFSPD (one of whom is the chair of the CIO Workgroup)
- Division Chief, MRFSPD
- Branch Chief (Supervisory Accountant) from the Atlanta School Participation and Financial Analysis Division
- Three Senior Institutional Review Specialists
- Three Institutional Review Specialists
- One Case Specialist from the MRFSPD
- Two Financial Analysts
- One Specialist from the Administrative Appeals and Actions Service Group in FSA
- Two OGC Attorneys

Please note that the staff who are members of the CIO Workgroup are also assigned to other teams in FSA and in the Department, and they have other organizational roles and responsibilities. Very few staff are currently assigned to the CIO Workgroup to review change in ownership applications on a full-time basis. The Department is considering the need to allocate additional resources to the CIO Workgroup due to the increasing complexity of change in

ownership and proprietary conversion applications which require a high level of specialized analytical skills.

### Decisions Made During the Three Most Recent Fiscal Years

The table on pages 10 through 13 lists all institutions of higher education that have changed their proprietary status in the past three fiscal years and any action the Department has made with respect to those institutions. The table identifies proprietary institution conversion requests that the Department has approved or disapproved during this time period.

| OPE ID Number | Institution Name | Type of Conversion (proprietary to nonprofit, proprietary to public) | Department's Decision | Decision Date |
|---|---|---|---|---|
| 00162800 | American Academy of Art College | Proprietary to nonprofit institution | Approved continued Title IV participation after Change in Ownership (CIO) but denied nonprofit recognition.<br><br>Institution has sought reconsideration, which is currently pending. | 1/5/2021 |

| OPE ID Number | Institution Name | Type of Conversion (proprietary to nonprofit, proprietary to public) | Department's Decision | Decision Date |
|---|---|---|---|---|
| 00107400 | Grand Canyon University | Proprietary to nonprofit institution | Approved CIO but denied conversion to nonprofit status. Denial affirmed 1/12/2021 following review of reconsideration request<br><br>GCU has sued the Department over this decision | 11/6/2019 |
| 02179900 | Argosy University | Proprietary to nonprofit institution | Denied CIO and denied conversion to nonprofit recognition | 2/27/2019 |
| 02110800 | California College San Diego | Proprietary to nonprofit institution | Approved nonprofit recognition following initial denial (August 2016) and denial of reconsideration (December 2016). Approval granted as a result of changes to the relationship between the institution and its former proprietary owner (who was both lender and landlord) | 12/17/2018 |

11

| OPE ID Number | Institution Name | Type of Conversion (proprietary to nonprofit, proprietary to public) | Department's Decision | Decision Date |
|---|---|---|---|---|
| 03120300 | CollegeAmerica Arizona | Proprietary to nonprofit institution | Approved nonprofit recognition (same school group as California College San Diego) | 12/17/2018 |
| 02594300 | CollegeAmerica Denver | Proprietary to nonprofit institution | Approved nonprofit recognition (same school group as California College San Diego) | 12/17/2018 |
| 00367400 | Stevens-Henager College | Proprietary to nonprofit institution | Approved nonprofit recognition (same school group as California College San Diego) | 12/17/2018 |
| 00170300 | Kendall College | Proprietary to additional location of nonprofit institution | Approved as additional location of nonprofit institution (National Louis University) | 9/20/2018 |
| 00458600 | Kaplan University (now known as Purdue University Global) | Proprietary to affiliate of public institution | Approved as affiliate of public institution (Purdue University) | 8/2/2018 |
| 04195600 | Tribeca Flashpoint College | Proprietary to additional location of nonprofit institution | Approved as additional location of nonprofit institution (Columbia College Hollywood) | 6/11/2018 |

| OPE ID Number | Institution Name | Type of Conversion (proprietary to nonprofit, proprietary to public) | Department's Decision | Decision Date |
|---|---|---|---|---|
| 00962100 | Herzing University | Proprietary to nonprofit institution | Approved CIO and conversion to nonprofit recognition | 2/1/2018 |
| 00743700 | Pittsburgh Technical Institute | Proprietary to nonprofit institution | Approved CIO and conversion to nonprofit recognition | 9/13/2017 |
| 02524000 | Sunstate Academy – Clearwater | Proprietary to nonprofit institution | Approved CIO and conversion to nonprofit recognition | 9/6/2017 |
| 02326900 | Sunstate Academy - Ft. Myers | Proprietary to nonprofit institution | Approved CIO and conversion to nonprofit recognition | 9/6/2017 |