Kevin E. O'Malley (006420)
Hannah H. Porter (029842)
Gallagher & Kennedy
2575 E. Camelback Road, Suite 1100
Phoenix, Arizona 85016
Telephone: 602.530.8000
Facsimile: 602.530.8500
Email: kevin.omalley@gknet.com
Email: hannah.porter@gknet.com

Steven M. Gombos (*pro hac vice*)
Virginia State Bar No. 30788
David A. Obuchowicz (*pro hac vice*)
Virginia State Bar No. 82483
Gombos Leyton, PC
11350 Random Hills Road #400
Fairfax, Virginia 22030
Telephone: 703.934.2660
Facsimile: 703.934.9840
Email: sgombos@glpclaw.com
Email: dobuchowicz@glpclaw.com
*Attorneys for Plaintiff*

**United States District Court**
**District of Arizona**

| | |
|---|---|
| Grand Canyon University,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>Miguel Cardona, in his official capacity as Secretary of Education, *et al.*<br><br>　　　　　　Defendants. | No. CV-21-00177-PHX-SRB<br><br>**Declaration of Brian Roberts in Support of Plaintiff's Motion to Complete the Administrative Record and Take Limited Discovery** |

I, Brian Roberts, hereby declare as follows:

1. I am over eighteen years of age and reside in Arizona. I am the Chief Administrative Officer, General Counsel, and Secretary of Grand Canyon University (GCU or the university). I previously served as General Counsel and Secretary of Grand Canyon

1

Education, Inc. (GCE), which formerly owned and operated Grand Canyon University, from 2012 through 2018.

2. This declaration is offered in support of GCU's Motion to Complete the Administrative Record and Take Limited Discovery (ECF No. 38).

3. I have direct personal knowledge of the facts presented in this declaration based on my participation in, involvement with, or awareness of the related events and occurrences, or I have conducted sufficient inquiry to determine the balance of the facts presented in this declaration. If called as a witness, I could competently testify to these facts.

4. GCU is a private Christian university in Phoenix, Arizona. From its founding in 1949 through 2004, GCU operated as an Arizona nonprofit institution, which best reflects GCU's approach. But when the university faced stark financial challenges in the early 2000s, GCU's trustees approved the sale of the university to a for-profit company, Grand Canyon Education (GCE), which could leverage capital markets and raise money to keep the university operating.

5. Under new leadership and with increased access to capital, GCU improved its financial condition and rebounded. On sound financial footing, and after establishing a strong educational model, GCU's Board of Trustees began exploring the possibility of returning the university to its historical nonprofit status as early as 2011.

6. The Board ultimately concluded that reverting to nonprofit status would best align GCU with its Christian mission. So, in 2014, the university announced publicly that it intended to convert to nonprofit status.

7. Not long thereafter, the university's representatives reached out to the Department of Education to seek its input. Between September 2014 and May 2015, I personally discussed the university's decision to convert to nonprofit status with the

then Under Secretary Ted Mitchell and Deputy Under Secretary Jeff Appel on multiple occasions, sharing with them details of the proposed conversion to nonprofit status.

8. As described to the Department, the university intended to accomplish the nonprofit conversion by forming a not-for-profit entity to purchase the real property comprising the university's campus as well as academic-related assets, including the GCU name, from Grand Canyon Education, Inc., a publicly traded company. After the transaction, GCE would provide certain services to GCU as detailed in a Master Services Agreement. Under the MSA, GCU would compensate GCE for its services by paying a share of its revenue, similar to other revenue sharing agreements among institutions of higher education.

9. In December 2015, the university submitted an initial application to the Department requesting its pre-acquisition review of the planned transaction before it was executed on or about April 1, 2016. The university later withdrew its application and tabled the transaction for approximately two years based on unrelated events described in GCU's complaint at paragraphs 46-58.

10. By August 2017, the university sought to renew the transaction. And in January 2018, the university again submitted a proposed change-in-ownership application with the Department, requesting its preacquisition review.

11. In the months that followed, counsel for both GCU and GCE contacted Department officials seeking substantive feedback. They were told the review was ongoing but not completed, so the planned transaction date was rescheduled from March to July, 2018.

12. Counsel for the parties communicated the July 1, 2018 transaction date to the Department. And as that date moved closer, counsel continued contacting Department officials, seeking feedback so that they could address any possible concerns before the transaction date. Those requests were met with a consistent answer from the

Department—it could not provide guidance yet, its review was ongoing, and it could not commit to completing its review before the transaction date.

13. Without any indication when the Department would issue a preacquisition review letter and at the risk of having to reapply for approval with its accreditor if it waited longer, GCU completed the transaction on July 1, 2018. In doing so, GCU relied on the widespread use of revenue sharing or shared services agreements between nonprofit institutions and for-profit service providers similar to the MSA.

14. Sixteen months later the Department notified GCU that it would continue to treat the university as a for-profit institution notwithstanding the change in ownership from GCE, a publicly traded company, to GCU, an IRS-approved 501(c)(3) tax-exempt, nonprofit entity. In doing so, the Department noted: "Although the parties had requested the Department to conduct a pre-acquisition review, the Transaction closed on or about July 1, 2018, prior to completion of the Department's pre-acquisition review."

15. Shortly after the Department's decision, current counsel for GCU submitted Freedom of Information Act requests to the Department seeking information related to its change-in-ownership review. The email attached as Exhibit B1 to GCU's Motion to Complete the Administrative Record and Take Limited Discovery was received in response to one such request.

16. That email, dated June 22, 2018, or eight days before GCU's transaction, reads, in pertinent part: "The team, along with OGC have completed the analysis of the GCU CIO that includes the conversion from for profit to nonprofit. They have concluded that for title IV purposes GCU would still be considered a for profit institution after the CIO."

17. Although the email indicates the Department's team completed its analysis at least 8 days before the transaction, it may have been considerably earlier. In response

to Robin Minor's initial email, Kathleen Smith responded: "I thought this was old and done."

18.     At no point during its preacquisition review did the Department indicate (verbally or in writing) that it had concerns with the planned transaction, to say nothing of having made the decision to deny GCU nonprofit status after the CIO, before the transaction even occurred.

19.     GCU made every attempt to work with the Department—communicating with the Department about its intent to convert to nonprofit status beginning in fall 2014, explaining transaction details, and being as open as possible with the Department. The university pursued the Department's preacquisition review in good faith and in the belief the Department would deal openly and fairly with the university.

20.     Had GCU known that the Department concluded, before the transaction even occurred, that it would deny GCU nonprofit status, I believe that GCU's Board would have conferred with counsel and met to discuss that fact. I further believe GCU would not have executed the transaction or, at the minimum, it would have postponed the transaction in an attempt to address the Department's concerns. The only reason GCU pursued the transaction was to convert the university to nonprofit status, which the Department itself well understood.

21.     When I first reviewed the Department's June 22, 2018 email, I was shocked. GCU sought direction and advice from the Department about the nonprofit conversion in good faith and in the hopes of working with the agency to address any possible concerns, as it previously had with the Internal Revenue Service and its accreditor the Higher Learning Commission. When it applied for preacquisition review, GCU fully expected the Department to review the transaction in a good-faith manner and not to withhold from GCU information material to the university, its faculty and staff, and student body. The Department's disregard of its preacquisition process, its failure to

provide input, and its concealment, are indicative that the agency would never approve GCU's nonprofit status. Indeed, the costly process the Department followed after it had already reached its conclusion during the preacquisition review process, including the Department's requests for additional documentation from GCU and specifically requesting GCU undertake additional valuation reports that the Department later ignored, further demonstrate bad faith.

22. I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Dated this October 18, 2021.

*/s/ Brian Roberts*
Brian Roberts

## Certificate of Service

I certify I electronically filed this Declaration of Brian Roberts using the Court's CM/ECF system, which will provide notice to all counsel

/s/ David A. Obuchowicz