BRIAN M. BOYNTON
Acting Assistant Attorney General

MARCIA BERMAN
Assistant Director, Federal Programs Branch

JAMES BICKFORD
Trial Attorney (N.Y. Bar No. 5163498)
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20530
James.Bickford@usdoj.gov
Telephone: (202) 305-7632
Facsimile: (202) 616-8470

*Counsel for Defendants*

## UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| Grand Canyon University,<br><br>　　　　　　　　　Plaintiff,<br><br>　v.<br><br>Miguel Cardona, in his official capacity as Secretary of Education, *et al.*,<br><br>　　　　　　　　　Defendants. | Case No. 2:21-cv-177-SRB<br><br>**OPPOSITION TO PLAINTIFF'S MOTION REGARDING DISCOVERY AND THE ADMINISTRATIVE RECORD** |

**INTRODUCTION**

In July 2018, Grand Canyon University was sold by its for-profit owner to a recently created non-profit entity.[1] As part of that sale, the non-profit buyer agreed to pay approximately 60% of Grand Canyon's adjusted gross revenue to the for-profit seller on an ongoing basis. Grand Canyon asked the U.S. Department of Education to review the transaction before it was completed, but the parties closed the deal before the Department issued any results from that preacquisition review. The new owner then applied to continue Grand Canyon's participation in Title IV programs, and to change the school's status from a proprietary to a non-profit institution. The Department approved the continued participation but denied the change in status; Grand Canyon has sued to challenge that denial under the Administrative Procedure Act. Such claims are heard on the basis of the administrative record certified by the agency. But rather than proceeding to the merits of its claims, Grand Canyon suggests that this is the extraordinary case in which the administrative record should be expanded and discovery authorized.

The Court should deny Grand Canyon's motion, which turns on two principal arguments. Grand Canyon first contends that, contrary to a recent opinion in this district, deliberative communications internal to the Department of Education should be part of the administrative record, and must either be produced or else logged and withheld under claim of privilege. *Contra Save the Colorado v. U.S. Dep't of the Interior*, 517 F. Supp. 3d 890, 897 (D. Ariz. 2021) ("The Court agrees with the Department that these deliberative documents were properly excluded [from] the administrative record."). But as the D.C. Circuit has explained, "predecisional documents are irrelevant and therefore . . . they are

---

[1] For purposes of clarity, the Department of Education refers to the school that participates in Title IV programs as "Grand Canyon University" or simply "Grand Canyon." It refers to the corporations involved in the 2018 transaction at issue here by their roles in that sale, rather than their proper names, which are confusingly similar. The seller is known as "Grand Canyon Education." The buyer, like the school it owns, is now also known as "Grand Canyon University" (formerly "Gazelle University").

not required to be placed on a privilege log." *Oceana, Inc. v. Ross*, 920 F.3d 855, 865 (D.C. Cir. 2019). And Grand Canyon has not shown that any identifiable documents were improperly excluded from the administrative record.

Grand Canyon's second argument turns on a chain of agency emails dated Friday, June 22 through Sunday, June 24 of 2018. These emails plainly show that the Department was working diligently and outside of normal business hours to bring its preacquisition review of the proposed transaction to a close—a far cry from the bad faith that Grand Canyon alleges. The June 22 email requests a meeting so that senior agency leadership could be briefed on an analysis of the transaction that had been performed at the staff level. As the email makes clear, the staff analysis was still under consideration within the agency. But Grand Canyon insists that it was the Department's final word, and that any delay in responding to school's request for preacquisition review must therefore show bad faith. Grand Canyon's allegations are utterly unsupported, and cannot justify discovery nor an expansion of the administrative record.

This Court should deny the school's motion to expand the administrative record and take discovery, and set a schedule for the briefing of its claims on their merits.

## BACKGROUND

A.  **Title IV Eligibility and Participation**

Under Title IV of the Higher Education Act, "Congress provides billions of dollars through loan and grant programs to help students pay tuition for their postsecondary education." *Ass'n of Private Sector Colleges & Univs. v. Duncan*, 681 F.3d 427, 433 (D.C. Cir. 2012). "To participate in Title IV programs—*i.e.*, to be able to accept federal funds—a postsecondary institution . . . must satisfy several . . . requirements." *Id.* at 433–34. The U.S. Department of Education enforces these statutory and regulatory requirements for Title IV eligibility and participation.

To begin with, each school must be an "institution of higher education" under the Higher Education Act. Section 101 provides the principal definition of that term, which it

limits to "public or other nonprofit institutions." 20 U.S.C. § 1001(a)(4). "Proprietary institutions" and "postsecondary vocational institutions," *id.* § 1002(b) & (c), may also participate in Title IV programs (on different terms), but are not eligible for most other programs authorized by the Higher Education Act. *See Ass'n of Private Sector Colleges & Univs. v. Duncan*, 870 F. Supp. 2d 133, 138–41 (D.D.C. 2012) (discussing the evolution of these definitions through amendments to the HEA).

To participate in Title IV programs, each school must also demonstrate its "financial responsibility." 20 U.S.C. § 1099c(a). The school must be able "to meet all of its financial obligations, including (but not limited to) . . . repayments to the Secretary for liabilities and debts incurred in programs administered by the Secretary." *Id.* § 1099c(c)(1)(C). The Secretary has promulgated "[g]eneral standards of financial responsibility," 34 C.F.R. § 668.171(b)(1), which look to the financial health of the institution and its owner, *see id.* § 668.172; an institution that fails to meet those standards must find another means by which to "provide the Secretary with satisfactory evidence of its financial responsibility," 20 U.S.C. § 1099c(c)(2), for instance by submitting "third-party financial guarantees that the Secretary determines are reasonable," *id.* § 1099c(c)(3)(A). Finally, an otherwise eligible school may generally "participate in . . . Title IV, HEA program[s] . . . only if the institution enters into a written program participation agreement with the Secretary." 34 C.F.R. § 668.14(a)(1).

A school that has been participating in Title IV programs "ceases to qualify as an eligible institution" when it "undergoes a change in ownership that results in a change in control"; the school must submit a new application to the Department if it wishes to renew its participation. 34 C.F.R. § 600.31(a)(1); *see id.* § 668.14(g)(1) (automatic termination of participation agreement). But if the school's "new ownership submits a 'materially complete application' . . . no later than 10 business days after the day the change [in ownership] occurs," then "the Secretary may continue the institution's participation in [Title IV] programs on a provisional basis" while evaluating the application. *Id.*

3

§ 600.20(g)(1); *see id.* § 600.20(h). In order to "[r]eestablish [its Title IV] eligibility and certification as a private nonprofit, private for-profit, or public institution following a change in ownership that results in a change in control," *id.* § 600.31(b)(2)(i)(B), or "after the institution changes its status as a proprietary, nonprofit, or public institution," *id.* § 600.31(b)(2)(i)(C), the school must demonstrate "to the Secretary . . . that the institution continues to meet the [relevant] requirements," *id.* § 600.31(b)(2)(i).

Potential buyers often wish to know whether a school is expected to be eligible for Title IV participation after the change in ownership. The Department of Education has therefore created a system of "preacquisition review." This is an entirely voluntary process, which does not result in a final agency decision. Only after the transaction occurs does the Department evaluate and make a final decision on the Title IV application. According to the Federal Student Aid Handbook for 2017–2018, which was current when Grand Canyon submitted the request for preacquisition review that is substantially the subject of this motion, "[t]he purpose of [a preacquisistion] review is to determine whether the school has answered all the questions completely and accurately"—*i.e.*, whether its application would be considered materially complete.[2] The handbook explained that "the school will not be given a decision whether or not its application would be approved as a result of this preacquisition review." 2017–2018 Handbook at 2-121.

In practice, however, the Department often provided schools with rather detailed guidance about issues that would be likely to arise in approving their participation in Title IV programs after the completion of the proposed transaction. Frola Decl. ¶ 11. The current handbook now offers the option of a "comprehensive" preacquisition review, which "identifies any impediments to the approval of the CIO [change in ownership] and the conditions the Department is likely to impose if it approves the school's eligibility under

---

[2] U.S. Department of Education, 2017–2018 Federal Student Aid Handbook ("2017–2018 Handbook"), vol. 2, ch. 5, at 2-121 (June 15, 2017), *available at* https://fsapartners.ed.gov/knowledge-center/fsa-handbook/pdf/2017-2018.

4

the new ownership or structure."[3]  Such a review "takes a considerable amount of time to process"; "[a] large or complex transaction typically can take months to review."[4]  2021–2022 Handbook at 2-139.  "Although the Department will issue a response letter following its pre-acquisition review, that letter does not tell the school the Department's decision on whether the CIO application will be approved."  2021–2022 Handbook at 2-138.  The current handbook makes clear that "any guidance or indications of the Department's position in the response are preliminary and subject to final determination when the Department conducts its review following the closing of the CIO transaction."  *Id.*

**B.     Grand Canyon University**

Grand Canyon University was founded in 1949, and sold to a for-profit corporation in 2004.  *See* Compl. ¶ 1.  Since that time, it has participated in Title IV funding programs as a proprietary institution, as defined in Section 102(b) of the Higher Education Act, 20 U.S.C. § 1002(b).  In 2018, Grand Canyon was sold again—to a recently created charitable organization, for approximately $853 million.  AR-A-0002.  As part of that sale, the non-profit buyer agreed to pay approximately 60% of Grand Canyon's adjusted gross revenue to the for-profit seller on an ongoing basis, for the provision of various services.  AR-A-0003.

Earlier that year, Grand Canyon had sought preacquistion review of the potential transaction.  AR-A-0001.  On July 1, without having received any substantive response, the buyer and seller completed the sale.  *Id.*  Within ten days, Grand Canyon submitted a materially complete application to continue its participation in Title IV programs, and sought a change in status to a non-profit institution under Section 101 of the Higher

---

[3] U.S. Department of Education, 2021–2022 Federal Student Aid Handbook ("2021–2022 Handbook"), vol. 2, ch. 5, at 2-139 (Nov. 4, 2021), *available at* https://fsapartners.ed.gov/sites/default/files/2021-11/2122FSAHbkVol2Ch5.pdf.

[4] The current handbook notes that "[t]he Department is . . . unable to prioritize its reviews based on the near-daily requests of schools and their counsel to 'expedite because the parties want to close.'"  2021–2022 Handbook at 2-139.

Education Act. *Id.* In accordance with the its regulatory authority at 34 C.F.R. § 600.20(h)(3), the Department continued Grand Canyon's Title IV participation while the agency evaluated that application. AR-A-0002.

In November 2019, the Department approved Grand Canyon's ongoing Title IV participation as a proprietary institution, but denied its application to convert its status to a nonprofit institution of higher education. AR-A-0016–17. The Department offered two reasons for the denial. First, the Department examined the services agreement that was part of the change-in-ownership transaction, and concluded that it would cause a substantial portion of Grand Canyon's net earnings to benefit the for-profit seller on an ongoing basis. AR-A-0015. And second, the Department concluded that overlap between the management of the for-profit seller and the non-profit buyer—notably including the fact that the seller's CEO would serve as the buyer's President—indicated that Grand Canyon would still be effectively operated for the benefit of the for-profit seller. AR-A-0015–16. Grand Canyon sought reconsideration, and the Department affirmed its denial. AR-A-0019.

Grand Canyon brought this suit to challenge the denial. The Department designated and certified the administrative record, and served it on Grand Canyon. After the parties met and conferred, the Department agreed to add several inadvertently omitted documents to the record. This motion followed.

# ARGUMENT

### A. Grand Canyon's motion to supplement the administrative record should be denied.

The U.S. Department of Education has designated the administrative record in this case, and "like other official agency actions, an agency's statement of what is in the record is subject to a presumption of regularity." *Goffney v. Becerra*, 995 F.3d 737, 748 (9th Cir. 2021). The Court "must therefore presume that an 'agency properly designated the Administrative Record absent clear evidence to the contrary.'" *Id.* (quoting *Bar MK Ranches v. Yuetter*, 994 F.2d 735, 740 (10th Cir. 1993)). Such "clear evidence" must show that "(1) supplementation is necessary to determine if the agency has considered all factors and explained its decision; (2) the agency relied on documents not in the record; (3) supplementation is needed to explain technical terms or complex subjects; or (4) . . . bad faith on the part of the agency." *Fence Creek Cattle Co. v. U.S. Forest Serv.*, 602 F.3d 1125, 1131 (9th Cir. 2010); *id.* (describing this showing as a "heavy burden").

Grand Canyon notes that "[w]ith the exception of perhaps 10 documents, the agency record is comprised exclusively of GCU's documents." Mot. at 1; ECF No. 38 at 2. This should not come as a surprise and certainly does not prove that documents were improperly excluded. The decision at issue in this case was an analysis of a particular transaction between a buyer and seller, to which the Department was not a party. Of course the bulk of the the record would be documents related to that transaction, or communications with the Department.

#### i. Grand Canyon has failed to show that the Department relied on documents not in the record, or that supplementation is necessary to determine if the Department considered all relevant factors.

The administrative record certified by the Department does not include emails between agency staff, drafts of decision documents, or similarly deliberative material. Grand Canyon argues that such documents must exist, and should have been included in the record or logged and withheld under claim of privilege.

7

Judicial review under the Administrative Procedure Act is based on "the whole record," 5 U.S.C. § 706, which "includes everything that was before the agency pertaining to the merits of its decision." *Portland Audubon Soc'y v. Endangered Species Comm.*, 984 F.2d 1534, 1548 (9th Cir. 1993); *see Thompson v. U.S. Dep't of Labor*, 885 F.2d 551, 555–56 (9th Cir. 1989) ("The 'whole' administrative record . . . consists of all documents and materials directly or indirectly considered by agency decision-makers and includes evidence contrary to the agency's position." (emphasis and quotation omitted)). It is not at all clear why the Department's own drafts and communications would be "before the agency," *Portland Audubon*, 984 F.2d at 1548, or would be documents on which the agency "relied," *Fence Creek*, 602 F.3d at 1131. But Grand Canyon nonetheless argues that that such documents, to the extent that they exist, must be added to the record or logged and withheld (presumably so that the school can then file a motion challenging the Department's claims of privilege).

The only federal court of appeals to decide this issue has held that there is no such obligation. *Oceana, Inc. v. Ross*, 920 F.3d 855, 865 (D.C. Cir. 2019). In brief, the D.C. Circuit reasoned that "[a] privilege log is required only when 'a party withholds information otherwise discoverable by claiming that the information is privileged,' Fed. R. Civ. P. 26(b)(5), and since predecisional documents are irrelevant and therefore not 'otherwise discoverable,' they are not required to be placed on a privilege log." *Id.* "The fact that the agency could also assert the deliberative process privilege over such predecisional documents does not change the analysis," because "[t]he federal rules do not require parties to provide logs of all documents that were not produced because they were deemed immaterial or irrelevant." *Id.*

A recent, well-reasoned opinion from this district adopted the view of the D.C. Circuit. *Save the Colorado v. U.S. Dep't of the Interior*, 517 F. Supp. 3d 890 (D. Ariz. 2021). As that court noted, "[t]he Ninth Circuit has not squarely resolved whether deliberative documents must be part of the administrative record." *Id.* at 896. The Ninth

8

Circuit discussed that issue in an order several years ago. *See In re United States*, 875 F.3d 1200 (9th Cir. 2017). In a case challenging the termination of the Deferred Action for Childhood Arrivals ("DACA") policy, the government certified an administrative record of "fourteen documents comprising a mere 256 pages, all of which are publicly available on the internet." *Id.* at 1206. "Nearly 200 pages consist[ed] of published opinions from various federal courts." *In re United States*, 138 S. Ct. 443, 444 (2017) (per curiam). "Faced with this sparse record, . . . the district court ordered the government to complete the record to include, among other things, all DACA-related materials considered by subordinates or other government personnel who then provided written or verbal input directly to [the] Acting Secretary." *In re United States*, 875 F.3d at 1206.

The government sought mandamus relief from the Ninth Circuit, *id.* at 1204, which found that the district court's ruling was not clearly erroneous as a matter of law, *id.* at 1205. As the Ninth Circuit explained, the "presumption of completeness" accorded to the record as certified by the agency was rebutted because "the notion that the head of a United States agency would decide to terminate a program giving legal protections to roughly 800,000 people based solely on 256 pages of publicly available documents is not credible, as the district court concluded." *Id.* at 1206 (footnotes omitted). On these facts and in a mandamus posture, "[t]he two-judge majority in *In re United States* did not answer whether the government may exclude deliberative documents from the administrative record, but held that the district court's decision to require a privilege log and evaluate claims of privilege before including deliberative documents 'in the record was not clearly erroneous as a matter of law.'" *Save the Colorado*, 517 F. Supp. 3d at 896 (quoting 875 F.3d at 1210). The Supreme Court vacated the Ninth Circuit's order, on the grounds that before addressing any issues with the administrative record, the district court should have resolved certain threshold arguments which, "if accepted, likely would eliminate the need for the District Court to examine a complete administrative record." *In re United States*, 138 S. Ct. at 445.

As explained in *Save the Colorado*, a reviewing court's "task is to assess the lawfulness of the agency's action based on the reasons offered by the agency, not to 'probe the mental processes' of agency decision-makers." *Id.* at 897 (citation omitted) (quoting *Morgan v. United States*, 304 U.S. 1, 18 (1938)). *See Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 50 (1983). For that reason, the "[d]istrict courts in this circuit" which hold "that because deliberative documents are [not] limited to the agency's stated reasons and probe the mental processes of agency decision-makers, these materials are irrelevant and impermissible," have the better view. *Save the Colorado*, 517 F. Supp. 3d at 896 (collecting cases); *Blue Mountains Biodiversity Project v. Jefferies*, 2021 WL 3683879, at *4 (D. Or. Aug. 19, 2021) ("The Court concludes that deliberative materials are not properly part of the administrative record and so declines to order the Forest Service to supplement the administrative record with those materials."); *see Ctr. for Biological Diversity v. Wolf*, 447 F. Supp. 3d 965, 976 (D. Ariz. 2020) ("To the extent any requested documents in the possession of Defendants are predecisional and deliberative, they need not be disclosed . . . ."). District courts in other circuits have similarly agreed with the holding of the D.C. Circuit. *E.g.*, *South Carolina Coastal Conservation League v. U.S. Army Corps of Eng'rs*, 2020 WL 858599, at *4 (D.S.C. Feb. 21, 2020) ("[T]he Court finds that Plaintiff has not satisfactorily demonstrated that the administrative record is generally incomplete due to the alleged exclusion of an unspecified set of internal, predecisional materials and the motion to compel on this basis is denied."); *Friends of Animals v. U.S. Fish & Wildlife Serv.*, 2019 WL 8137578, at *3 (D. Utah Dec. 27, 2019) ("An agency is not required to assert a privilege or produce a privilege log in order to withhold pre-decisional, deliberative materials from the record.").

The fact that an administrative record does not contain any emails between agency staff, drafts of decision documents, or similarly deliberative material "does not overcome the presumption of regularity" accorded to the Department's certification of the administrative record. *Save the Colorado*, 517 F. Supp. 3d at 898. By merely noting the

presumptive existence of such documents, Grand Canyon has not met its "heavy burden" of showing that "the agency relied on documents not in the record." *Fence Creek*, 602 F.3d at 1131.

Grand Canyon's arguments about the absence of particular documents from the record fare no better. Although an internal email (discussed at greater length below, *see infra at* 13–14) refers to an "analysis" prepared by agency staff and being reviewed by agency leadership, that is classically predecisional, deliberative material that would be privileged even if it were part of the record—which, for the reasons explained above, it is not. The Department properly withheld this analysis from the record, and Grand Canyon offers no argument to the contrary. The Department published two detailed explanations of its reasoning here: this is not a case in which a court must turn to deliberative agency documents to understand the basis for the challenged action.

Grand Canyon also points to emails that indicate the Department was considering whether to seek assistance, from an outside contractor, with its analysis of the transaction at issue here. *See* Mot. at 9; ECF No. 38 at 10. (These emails, dated July 2019, are in considerable tension with Grand Canyon's argument, addressed below, that the Department had completed its analysis of the transaction by June 2018.) As Grand Canyon acknowledges, these emails do not indicate that "the Department ultimately retained any outside contractor." *Id.* If a contractor had been retained, then any of its work that the Department considered (or on which it relied) would have been included in the record. But a discussion about soliciting contractors is not evidence—much less clear evidence—of an incomplete record.

Grand Canyon's argument that the Department omitted documents from a "change-in-ownership working group" is based on pure speculation that the Department must have considered or relied upon advice from that group in making the decision challenged here. Mot. at 11; ECF No. 38 at 12. Two letters from members of Congress—one of which long pre-dates Grand Canyon's request for preacquisition review, and the other of which was

directed to the Department's National Advisory Committee on Institutional Quality and Integrity, which plays no role in change-in-ownership reviews—also fail to provide any basis for supplementation. *Id.* (discussing Exhs. B-13 & B-14). Nor does a briefing paper that simply indicates that Grand Canyon's application was then pending. *Id.* (citing Exh. B-8).

Finally, Grand Canyon concedes that the Department included in the record the spreadsheet that the school submitted to the agency with information about service agreements used by other colleges. It nonetheless complains that the Department did not include the service agreements and related documents "accessible through embedded links in the spreadsheet." Mot. at 12; ECF No. 38 at 13. Grand Canyon has no evidence that the Department in fact accessed those documents through the links, let alone that it considered or relied on them in making the challenged decision. It candidly admits that it seeks supplementation of the record because some of the links are no longer active and so it needs the Department to supplement the record "[t]o prevent any additional loss of information," *id*., but that of course does not meet the standard for supplementation set out above. Nor does Grand Canyon need the service agreements of other schools to make the argument that the challenged decision was arbitrary and capricious because the Department failed to consider those allegedly similar agreements, as it can argue that from the very absence of those agreements from the record. *See* Mot. at 16; ECF No. 38 at 17 ("[T]here is no indication in the record that the Department considered the widespread use of similar service arrangements at all.").

In sum, Grand Canyon has not met its heavy burden to show that the agency relied on documents not in the record.

### ii. Grand Canyon has failed to show that the Department acted in bad faith.

Grand Canyon also argues that clear evidence of bad faith on the part of the agency justifies the supplementation of the administrative record. Mot. at 13–15; ECF No. 38 at 14–16. Grand Canyon's argument for bad faith rests on a single email chain that it obtained through a Freedom of Information Act request. *See* Mot., Exh. B-1, ECF No. 38-6 at 2. The first message was sent on June 22, 2018 by Robin Minor—at the time, the chief compliance officer within the Department's office of Federal Student Aid—to recipients including Kathleen Smith, who was deputy chief operating officer. Frola Decl. ¶ 5. The entire text of the email—subject line "Grand Canyon University"—is printed below:

> The team, along with OGC have completed the analysis of the GCU CIO that includes the conversion from for profit to nonprofit. They have concluded that for title IV purposes GCU would still be considered a for profit institution after the CIO. I have attached a document which provides the results of the analysis. However I felt it would be easier to have a meeting so that they could explain the transaction and address any questions you have. I am copying Linda to see if that can be scheduled on next Wednesday upon Kathleen's return. Dennis Cariello had originally indicated that they would complete the CIO transaction July 1st, however, did not pressure Donna Mangold too much last week when she told him that she did not have an ETA on issuance of the letter yet.

Mot., Exh. B-1, ECF No. 38-6 at 2. On the night of Saturday, June 23, Kathleen Smith replies "Hi. Can you walk me through this on mo day [sic]. I thought this was old and done. Thanks." *Id.* Robin Minor responds to her on Sunday: "Yes, just let me know when you're free." *Id.* Kathleen Smith responds that she is free to speak then or on Monday morning. *Id.* That is the entirety of the exchange.

The email indicates that, as of June 22, 2018, Department staff ("[t]he team") and lawyers from the Office of General Counsel ("OGC") had completed an analysis of the proposed Grand Canyon change-in-ownership transaction ("GCU CIO"). The staff analysis concluded that Grand Canyon would still be considered a proprietary institution after the sale. But the email indicates that Robin Minor wanted "to have a meeting" so that

13

"they" (presumably "[t]he team" and "OGC") could "explain the transaction and address any questions you have." Ms. Minor was aware that the transaction was scheduled to close on July 1, but did not understand that deadline to be firm, because Dennis Cariello (a lawyer representing Grand Canyon) "did not pressure Donna Mangold [an OGC lawyer] too much last week when she told him that she did not have an" estimated time for the "issuance of the letter" containing the results of the Department's preacquisition review.

The email from Robin Minor indicates that, as July 1 approached, the Department was working to brief the leadership of its office of Federal Student Aid on the staff analysis of the proposed sale of Grand Canyon University. *See* Frola Decl. ¶¶ 7–8. Before the issuance of a formal response letter, the Department will sometimes provide an institution with an oral indication of what the letter is likely to say. *Id.* ¶ 9. But the Department would not provide even such an informal indication while the staff analysis was still under internal review, as it was here. *Id.*

Grand Canyon had been told that the Department had no estimate of when it would respond to the request for a preacquisition review. The then-current Federal Student Aid Handbook said that a school would "not be given a decision whether or not its application would be approved as a result of this preacquisition review." 2017–2018 Handbook at 2-121. Although they were free to await a response from the Department, the parties voluntarily completed the transaction on July 1. Once the sale was final, the request for preacquisition review became moot.

Grand Canyon argues that this fact pattern provides such clear evidence of bad faith that this Court should expand the administrative record, but its argument badly overreads the single email chain on which it relies. Grand Canyon has no evidence, much less clear evidence, for its theory that the Department of Education was intentionally withholding the results of the preacquisition review—which would not have been a final decision in any event.

Nor does Grand Canyon's argument make sense on its own terms. The Department never promised that Grand Canyon would receive the results of the preacquisition review by any particular date. No statute or regulation imposed a deadline. Grand Canyon's own evidence shows that the Department was working diligently—nights and weekends—to respond to the request for preacquisition review. Yet Grand Canyon alleges bad faith. What could the Department have been hoping to achieve by intentionally delaying its response to the preacquisition review? Grand Canyon says that the Department meant to induce the sale of the school to a buyer who would be disappointed that it was not treated as a non-profit institution of higher education, but to what conceivable end? The Department acted in good faith throughout this process, and Grand Canyon has shown nothing to the contrary. Its motion to expand the administrative record should be denied.

**B.     The Court should not order discovery in this APA case.**

Grand Canyon also seeks to take discovery, but "judicial review of agency action is limited to review of the administrative record" unless a plaintiff can show that supplementation is warranted. *Animal Defense Council v. Hodel*, 840 F.2d 1432, 1436 (9th Cir. 1988). Grand Canyon again bears a "heavy burden" on this request. *See Fence Creek*, 602 F.3d at 1131.

The school's chief argument in favor of discovery relies on the same June 22 email discussed above, in which Robin Minor circulated a staff analysis of the contemplated change-in-ownership transaction and attempted to schedule a meeting to discuss that analysis with senior agency officials. Grand Canyon is simply wrong to read that email as evidence that the Department's decision had already been made. Rather than constituting evidence of bad faith, this email shows the Department hard at work to respond to Grand Canyon; it offers no basis to order discovery here.

Nor do Grand Canyon's assertions of disparate treatment. The school argues that when the Department affirmed its decision to consider Grand Canyon a proprietary institution after the change in ownership, it failed to adequately address servicing

agreements entered into by other schools. Mot. at 15–16; ECF No. 38 at 16–17. As noted above, the school can make that argument now, on the present record. To the extent Grand Canyon argues that the Department failed to consider other relevant evidence or departed from past practice, it can also make those arguments based on what the administrative record *does* contain, as plaintiffs in APA cases do all the time.

Grand Canyon's motion to take discovery largely repeats its arguments in support of expanding the administrative record, and the motion should be denied on similar grounds. Its "limited" discovery would encompass interrogatories, depositions of agency officials, and wide-ranging document requests, none of which is justified by any argument presented here.

## CONCLUSION

For the reasons set forth above, Grand Canyon has fallen far short of the strong showing required to supplement the administrative record or authorize discovery in an APA case. Its motion should therefore be denied.

Date: November 15, 2021

Respectfully submitted,

BRIAN M. BOYNTON
Acting Assistant Attorney General

MARCIA BERMAN
Assistant Director, Federal Programs Branch

*/s/ James Bickford*
JAMES BICKFORD
Trial Attorney (N.Y. Bar No. 5163498)
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20530
James.Bickford@usdoj.gov
Telephone: (202) 305-7632
Facsimile: (202) 616-8470

*Counsel for Defendants*