**NOT FOR PUBLICATION**

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Grand Canyon University, | No. CV-21-00177-PHX-SRB |
| Plaintiff, | **ORDER** |
| v. | |
| Miguel Cardona, et al., | |
| Defendants. | |

The Court now considers Plaintiff Grand Canyon University's ("GCU") Motion to Complete the Administrative Record and Take Limited Discovery ("Motion"). (Doc. 38, ("Mot.").) For the following reasons, the Court grants the Motion in part and denies it in part.

I.    **BACKGROUND**

This case arises out of Defendant United States Department of Education's ("Department") denial of nonprofit status to GCU under Title IV of the Higher Education Act of 1965, 20 U.S.C. § 1001 *et seq.*, ("Title IV").[1] (*See* Doc. 1, Compl.)

Under Title IV, "Congress provides billions of dollars through loan and grant programs to help students pay tuition for their postsecondary education." *Ass'n of Priv. Sector Colls. & Univs. v. Duncan*, 681 F.3d 427, 433 (D.C. Cir. 2012).  To participate in these programs, schools must not only meet certain eligibility requirements, but they must

---

[1] The Higher Education Act classifies institutions of higher education into three categories: (1) "public or other nonprofit institution[s]"; (2) "proprietary institution[s]"; and (3) "postsecondary vocational institution[s.]" 20 U.S.C. §§ 1001(a)(4), 1002(b), 1002(c).

also "enter[] into a written program participation agreement with the Secretary [of Education.]" 34 C.F.R. § 668.14(a)(1). If a participating school "undergoes a change in ownership that results in a change in control," it "ceases to qualify as an eligible institution" and must "reestablish eligibility" with the Secretary in order to resume participation in Title IV programs. *Id.* § 600.31(a)(1), (3). It is this kind of change in ownership and subsequent application to reestablish eligibility that forms the basis of GCU's Complaint. (*See* Compl.)

### A.   Factual Background

### 1.   GCU's Change in Ownership

GCU is a private Christian university in Phoenix, Arizona that operated as a nonprofit institution from its founding in 1949 until 2004, when it was sold to for-profit Grand Canyon Education, Inc. ("GCE") amid financial difficulties. (*See id.* ¶¶ 1, 22–25.) Beginning in 2011, GCU began considering reverting to nonprofit status, and GCU formally announced its intent to pursue nonprofit status in 2014. (*Id.* ¶¶ 36, 39; Doc. 38-8, Ex. B-3, E-mail from Ted Mitchell to Brian Roberts (Oct. 29, 2014 7:17 EST); Doc. 38-9, Ex. B-4, Ltr. from Brian Mueller to Ed. Sec'y Arne Duncan (Dec. 17, 2014).)

In order to facilitate GCU's conversion, GCU's Board of Trustees formed a new Arizona nonprofit entity, Gazelle University ("Gazelle"), to purchase all GCU-related "real property. . . as well as tangible and intangible academic-related assets. . . from GCE" for approximately $853 million.[2] (Compl. ¶¶ 39, 114; Mot. at 2**;** Doc. 48, Joint App'x ("JA") at 2.) The Internal Revenue Service ("IRS") approved Gazelle's 501(c)(3) nonprofit status on November 9, 2015. (JA at 46–47.) In addition to the purchase price, GCE and Gazelle agreed that GCE would continue to provide "technological, marketing, promotional, financial aid, and other support services" to Gazelle in exchange for a fixed share of revenue pursuant to a Master Services Agreement ("MSA"). (*See* Compl. ¶ 39, JA at 3, 48–49.) GCE and Gazelle allegedly drafted the MSA based on similar service agreements between other Title IV participating nonprofit universities and their for-profit service providers. (*See* JA at 38–45, 49, 53.)

---

[2] Gazelle later changed its name to Grand Canyon University. (Compl. ¶ 39 n.2.) For ease of reference, the Court only uses Gazelle when describing the sale of GCU in 2018.

After preliminarily agreeing upon these terms of purchase, GCU submitted a request for preacquisition review to the Department on January 18, 2018. (*See id.* at 48–55.) Preacquisition review permitted the Department to give informal, yet "detailed guidance about issues that would be likely to arise in approving [GCU's] participation in Title IV programs after the completion of the proposed transaction." (Opp'n at 4.) Although GCU submitted its request months prior to the sale's closing date—July 1, 2018—and made repeated requests for guidance from the Department as the closing date neared, the Department provided no indication of how it viewed GCU's proposed conversion. (*See* JA at 48–55, 61–66.) GCE and Gazelle completed the sale on July 1, 2018 as planned. (*See id.* at 1.)

Following the sale, GCU "timely submitted a materially complete application and other documentation," seeking "approval of its change in ownership and request to convert to nonprofit status for purposes of its participation in Title IV, HEA programs." (*Id.*)

## 2.    The Department's Initial Decision & Reconsideration

On November 6, 2019, the Department made its decision. Although the Department approved GCU's change in ownership from for-profit GCE to nonprofit Gazelle, it denied GCU's request to transition from a "proprietary institution" to a "nonprofit institution" for Title IV funding purposes. (JA at 1–18.) The Department determined that GCU could only meet two of the three regulatory requirements for attaining nonprofit status under Title IV, and therefore could not be designated as a nonprofit institution.[3] (*Id.* at 9–18.) Specifically, the Department concluded that GCU did not meet the first requirement for nonprofit status because GCE continued to be the actual operator of GCU post-sale—as confirmed by GCE's significant financial stake in GCU's operation and the substantial overlap in leadership of the two entities. (*Id.* at 16.)

GCU requested the Department conduct a reconsideration review of its denial and

---

[3] Those requirements are that the institution: (1) "[i]s owned and operated by one or more nonprofit corporations or associations" and "no part of the net earnings of which benefits any private shareholder or individual"; (2) "[i]s legally authorized to operate as a nonprofit organization by each State in which it is physically located"; and (3) "[i]s determined by the [IRS] to be an organization to which contributions are tax deductible under 26 U.S.C. § 501(c)(3) of the Internal Revenue Code." 34 C.F.R. § 600.2

provided the Department with, *inter alia*, a revised MSA and additional financial reports analyzing the impact of the revised MSA. (*See id.* at 19–35.) On January 12, 2021, the Department sent a letter to GCU upholding its original decision to deny nonprofit status. (*Id.* at 19–37.)

### B.    Procedural Background

Following the Department's decision to affirm the denial of nonprofit status, GCU filed its Complaint on February 2, 2021, alleging two violations of the Administrative Procedure Act ("APA") and one violation of the First Amendment.[4] (Compl. ¶¶ 329–55.)

Per the Court's June 3, 2021 Case Management Order, the Department was to "designate and serve the administrative record no later than July 27, 2021." (Doc. 31, 06/03/21 Order.) The Department timely designated, certified, and served the administrative record on GCU.[5] (Mot. at 6; Opp'n at 6.) GCU disputed the adequacy of the assembled record and the parties met and conferred about the dispute. (*See* Doc. 38-1, Ex. A-1, Ltr. from Steven M. Gombos to James Bickford (Aug. 4, 2021).) The Department agreed to add six documents that it had previously "inadvertently omitted" from the record, but otherwise remained steadfast in its belief that the record was complete. (*See* Doc. 38-5, Ex. A-5, E-mail from James Bickford to Jacob Shorter (Sept. 20, 2021, 01:54 EST).)

On October 18, 2021, GCU filed the instant Motion. According to GCU, the record is incomplete because it omits documents that were before the Department when it denied GCU nonprofit status. (Mot. at 7–12.) Specifically, GCU argues that the Department's "categorical bar to the inclusion of internal materials in the agency record" is in conflict with the Ninth Circuit's tacit support for the position that "assertedly deliberative documents be logged and examined." (Mot. at 8 (quoting *In re United States*, 875 F.3d 1200, 1210 (9th Cir. 2017), *vacated on other grounds*, 1138 S. Ct. 443 (2017)).) GCU believes these materials should be added to the record, including 14 specific documents attached to the Motion as Exhibits B-1 through B-14. GCU further contends that the record

---

[4] GCU also sued the Acting Secretary of Education, Phil Rosenfelt, in his official capacity. (*See* Compl.)
[5] The administrative record has not been filed with the Court.

1    omits materials submitted to the Department during preacquisition review—namely dozens

2    of other service agreements and related documents that were "accessible through embedded

3    links." (*Id.* at 12.) Lastly, GCU seeks limited discovery, including depositions and

4    interrogatories, after the Department has completed the record. (*Id.* at 12–17.)

5          The Department filed its Opposition on November 15, 2021. Relying on the

6    reasoning outlined in *Oceana v. Ross*, 920 F.3d 855 (D.C. Cir. 2019) and *Save the Colorado*

7    *v. U.S. Dep't of Interior*, 517 F. Supp. 3d 890 (D. Ariz. 2021), the Department argues that

8    no additional documents must be added to the record because deliberative documents are

9    not part of the administrative record. (Opp'n at 8–11.)  As to the other agreements and

10   related documents that GCU attempts to include in the record, the Department argues that

11   there is no evidence in the record that it relied on these documents in making its decision,

12   and the documents were not provided in the application. (*Id.* at 12.) Finally, the Department

13   argues discovery is not warranted because GCU "is simply wrong" that a single email

14   obtained via a FOIA request sufficiently demonstrates the Department's bad faith in

15   determining GCU's Title IV status. (*Id.* at 15.)

16         GCU filed its Reply in Support of the Motion on November 30, 2021, and the Court

17   heard oral argument on January 13, 2022. (Doc. 46, Reply in Supp't of Mot. ("Reply");

18   Doc. 51, Min. Entry.)

19   **II.    LEGAL STANDARDS**

20         **A.    Completing the Administrative Record**

21         When reviewing agency action under the APA, courts must "hold unlawful and set

22   aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse

23   of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A). The APA

24   explicitly requires courts reviewing agency action "to review the whole record or those

25   parts of it cited by a party." *Id.* § 706. But courts are not to substitute their own judgment

26   for that of the agency, *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto.*

27   *Ins.*, 463 U.S. 29, 43 (1983), and should only consider "the administrative record already

28   in existence, not some new record made initially in the reviewing court." *Camp v. Pitts*,

411 U.S. 138, 142 (1973); *see also Fence Creek Cattle Co. v. U.S. Forest Serv.*, 602 F.3d 1125, 1131 (9th Cir. 2010) ("Generally, judicial review of an agency decision is limited to the administrative record on which the agency based the challenged decision."). The Ninth Circuit has described the "whole record" to "consist[] of all documents and materials directly or indirectly considered by agency decision-makers and includes evidence contrary to the agency's position." *Thompson v. U.S. Dep't of Labor*, 885 F.2d 551, 555 (9th Cir. 1989) (citation omitted); *see also Portland Audubon Soc'y v. Endangered Species Comm.*, 984 F.2d 1534, 1548 (9th Cir. 1993).

Once an agency designates the administrative record in a case, that designation "is entitled to a presumption of completeness which may be rebutted by clear evidence to the contrary."[6] *In re United States*, 875 F.3d at 1206 (citing *Bar MK Ranches v. Yuetter*, 994 F.2d 735, 740 (10th Cir. 1993)). The burden is therefore on plaintiffs to show by clear evidence that the assembled record is incomplete. *Ctr. for Native Ecosystems v. Salazar*, 711 F. Supp. 2d 1267, 1275 (D. Colo. 2010). To meet that burden as to specific documents, plaintiffs "must identify reasonable, non-speculative grounds for [their] belief that the documents were considered by the agency and not included in the record."[7] *Pinnacle*

---

[6] This has also been called the "presumption of regularity." *See, e.g.*, *Goffney v. Becerra*, 995 F.3d 737, 748 (9th Cir. 2021) (citing *Angov v. Lynch*, 788 F.3d 893, 905 (9th Cir. 2015)).

[7] The Department addresses GCU's Motion as one to "supplement" the record. (Resp. at 7 ("[GCU]'s motion to *supplement* the administrative record should be denied." (emphasis added)).) However, GCU's Motion, in both title and substance, is one primarily requesting the Court to "complete" the administrative record, not "supplement" it. (*See* Mot. at 7–12.) This distinction is important. "'[C]ompleting the record' refers to including 'materials which were actually considered by the agency, yet omitted from the administrative record,' whereas 'supplementing the record' refers to including 'materials which were not considered by the agency, but which are necessary for the court to conduct a substantial inquiry.'" *Bruce v. Azar*, 389 F. Supp. 3d 716, 724 n.5 (N.D. Cal. 2019) (quoting *Salazar*, 711 F. Supp. 2d at 1274); *see also Nw. Env't Advocs. v. U.S. Fish & Wildlife Serv.*, No. 3:18-CV-01420-AC, 2019 WL 6977406, at *4–11 (D. Or. Dec. 20, 2019) (addressing both the "completion theory" and the "supplementation theory" on combined request). Because GCU argues that these materials were actually "considered" by the Department in its decision, the Court examines the majority of GCU's Motion for "clear evidence" that the Department considered the documents GCU identifies, not whether GCU has met the requirements for the "narrowly construed" exceptions permitting supplementation, or in other words "expansion[,] of the administrative record." *See Fence Creek Cattle Co.*, 602 F.3d at 1131 (citing *Lands Council v. Powell*, 395 F.3d 1019, 1030 (9th Cir. 2005)).

Even if the Court were to construe GCU's Motion as one to supplement the record, the only narrowly construed exception GCU addresses is bad faith. (*See* Mot. at 9–10.) As explained in detail later in this Order, the single e-mail chain GCU relies upon does not

1    *Armor, Inc. v. United States*, 923 F. Supp. 2d 1226, 1239 (E.D. Cal. 2013) (quoting *Sara*

2    *Lee Corp. v. Am. Bakers Ass'n*, 252 F.R.D. 31, 34 (D.D.C. 2008)).

3        **B.    Discovery in APA Cases**

4        Although courts ordinarily base their decisions in APA cases on the administrative

5    record alone, under "limited circumstances that are narrowly construed and applied," they

6    "may justify expanding review beyond the record or permitting discovery." *Goffney*, 995

7    F.3d at 747; *Animal Def. Council v. Hodel*, 840 F.2d 1432, 1436 (9th Cir. 1988). There are

8    four exceptions to the general rule limiting APA review to the administrative record: "(1)

9    if necessary to determine whether the agency has considered all relevant factors and has

10   explained its decision"; "(2) when the agency has relied on documents not in the record";

11   "(3) when supplementing the record is necessary to explain technical terms or complex

12   subject matter"; or "(4) when plaintiffs make a showing of agency bad faith." *Ctr. for*

13   *Biological Diversity v. U.S. Fish & Wildlife Serv.*, 450 F.3d 930, 943 (9th Cir. 2005)

14   (citation omitted); *Lands Council*, 395 F.3d at 1030 (citation omitted). These exceptions

15   are narrowly construed so that they do not undermine the general rule that agency action is

16   to be reviewed based on the administrative record alone. *See Lands Council*, 395 F.3d at

17   1030. The party seeking discovery "initially bears the burden of demonstrating that a

18   relevant exception applies." *See San Luis & Delta-Medota Water Auth. v. Locke*, 776 F.3d

19   971, 992–93 (9th Cir. 2014) (citing *Fence Creek Cattle Co.*, 602 F.3d at 1131).

20   **III.    ANALYSIS**

21       **A.    Completing the Administrative Record**

22       GCU's argument to complete the administrative record can be broken down into

23   two points. First, GCU argues that the Department has wrongly excluded all internal

24   documents from the assembled record on the basis that they are "deliberative." (Mot. at 8–

25   12.) GCU requests that the Department either place these documents in the administrative

26   record or that the documents be logged and withheld under a claim of privilege, including

27   the documents provided in Exhibits B-1 through B-14. (*Id.* at 11–12.) (*Id.*) Second, GCU

28   convince this Court that supplementation would be justified on that basis. *See infra* Section
     III.B.

contends that the documents in Exhibits C-1 through C-45, "accessible through embedded links" in a document already in the record, should be added "[t]o prevent any additional loss of information" because some of those links "are no longer active." (*Id.* at 12.) The Court addresses each argument in turn.

### 1.      Deliberative Documents

The first argument concerns an unanswered question in the Ninth Circuit: are assertedly deliberative documents part of the administrative record? *See In re United States*, 875 F.3d at 1210 (acknowledging the Ninth Circuit has not resolved the question). If they are part of the record, GCU contends they must either be produced or logged and examined for compliance with the deliberative process privilege. If they are not part of the record, the Department contends they need not be produced.

The Supreme Court has defined deliberative documents to include "documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions are made." *U.S. Fish & Wildlife Serv. v. Sierra Club*, 141 S. Ct. 777, 785 (2021) (quoting *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150 (1975)). In other words, deliberative documents "reflect[] the give-and-take of the consultative process" and include "recommendations, draft documents, proposals, suggestions, and other subjective documents that reflect the personal opinion of the writer, rather than the policy of the agency." *Blue Mountains Biodiversity Project v. Jefferies*, No. 2:20-cv-02158-SU, 2021 WL 3683879, at *4 (D. Or. Aug. 19, 2021) (citing *Nat'l Wildlife Fed. v. U.S. Forest Serv.*, 861 F.2d 1114, 1118–19 (9th Cir. 1988)). In the absence of controlling precedent, district courts in the Ninth Circuit have been divided on whether deliberative documents are part of the administrative record. *Compare, e.g.*, *Ctr. for Env't Health v. Perdue*, No. 18-cv-01763-RS, 2019 WL 3852493, at *2–3 (N.D. Cal. May 6, 2019) (included) *with Save the Colorado*, 517 F. Supp. 3d at 896–98 (excluded). The question even divides judges within this district. *Save the Colorado*, 517 F. Supp. 3d at 896–98 (finding deliberative documents to not be part of administrative record); *Nat'l Tr. for Hist. Pres. v. Bernhardt*, No. CV 19-05008-PHX-MHB, 2020 WL 5221647, at *4 (D.

Ariz. Aug. 5, 2020) ("The greater weight of authority supports a finding that deliberative documents are not discoverable, and not a part of the administrative record."); *W. Watersheds Project v. Feldhausen*, No. CV-20-00149-TUC-JGZ, 2021 WL 5771153, at *4–5 (D. Ariz. Dec. 6, 2021) ("[T]his Court is persuaded that in camera review of allegedly deliberative documents is appropriate in the circumstances presented in this case."); *Lower San Pedro Watershed All. v. Barta*, No. CV-19-00048-TUC-RCC, 2020 WL 8020085, at *3 (D. Ariz. Nov. 30, 2020) (rejecting a categorical bar to the inclusion of deliberative materials).

Some courts—particularly in the Northern District of California—have reasoned that because the Ninth Circuit has broadly defined the "whole record" to include all documents and materials both directly and indirectly considered by the agency, then deliberative documents must be part of the administrative record. *See, e.g.*, *Perdue*, 2019 WL 3852491 at *2 (citations and quotation marks omitted); *Wildearth Guardians v. Bernhardt*, 507 F. Supp. 3d 1219, 1223–26 (C.D. Cal. 2020). Others have found that because arbitrary and capricious review under the APA is limited to the agency's stated reasons, deliberative documents are immaterial to that inquiry and correctly excluded from the administrative record. *See, e.g.*, *Yellowstone to Uintas Connection v. Bolling*, No.4:20-cv-00192-DCN, 2021 WL 5702158, at *5–6 (D. Idaho Dec. 1, 2021); *Save the Colorado*, 517 F. Supp. 3d at 896–98. After careful review of the parties' cited caselaw, the Court finds the latter reasoning more persuasive.

As an initial matter, the Court finds GCU's reliance on *In re United States* misplaced. In essence, GCU contends that the Ninth Circuit has endorsed the view that deliberative documents must be included in the record or logged and examined, and therefore this Court should follow suit. (*See* Mot. at 8–9.) GCU overreads *In re United States*. On review of the denial of a writ of mandamus, the panel's majority merely found that the district court's decision to require the logging of deliberative documents to not be clear error, given that other district courts adhered to the practice and there was a complete "absence of controlling precedent" in the Ninth Circuit. 875 F.3d at 1210. But declining to

1    find error in the absence of any guiding precedent does not provide the sort of endorsement

2    GCU suggests. Instead, the case only reaffirms the lack of clarity in the Ninth Circuit

3    regarding the correct approach to deliberative documents, as evidenced by the continued

4    division amongst district courts post-*In re United States*.

5          By contrast, the D.C. Circuit Court of Appeals has definitively found that "on

6    arbitrary and capricious review, absent a showing of bad faith or improper behavior,

7    'agency deliberations not part of the record are deemed immaterial'" and may be excluded

8    from the record. *Oceana, Inc.*, 920 F.3d at 865 (quoting *In re Subpoena Duces Tecum*, 156

9    F.3d 1279, 1279, 1280 (D.C. Cir. 1998)).

10         Ultimately, the Court concurs with the reasoning outlined by Judge Liburdi in *Save*

11   *the Colorado*:

12             The Court's task is to assess the lawfulness of the agency's action based on
              the reasons offered by the agency, not to probe the mental processes of
13             agency decision-makers. Moreover, the Ninth Circuit has cautioned that
              forced disclosure of predecisional deliberative communications can have an
14             adverse impact on government decision-making. Indeed, requiring
              disclosure of deliberative materials would chill the frank discussions and
15             debates that are necessary to craft well-considered policy.

16   517 F. Supp. 3d at 897 (internal quotation marks and citations omitted). In conducting

17   review under the APA, it is not this Court's place to inquire as to the internal mental

18   processes of the Department, but rather to review the Department's denial of nonprofit

19   status based on the reasons it offered in its November 6, 2019 initial decision and

20   subsequent denial on reconsideration. The nonbinding district court cases GCU cites in its

21   Motion do not convince this Court that deliberative documents are a part of that inquiry,

22   and the Department may exclude them from the administrative record.

23         Having decided that deliberative documents are generally not part of the

24   administrative record, the Court turns to the specific documents GCU requests be added.[8]

25   ───────────────────
     [8] The Court summarily denies GCU's request to add the internal e-mails listed in Exhibits
26   B-6 and B-7 to the administrative record. The Department confirmed during oral argument
     that it did not retain any outside financial experts to analyze the transaction between GCE
27   and Gazelle, and this internal deliberation as to whether to obtain such an analysis is the
     kind that comprises "part of a process by which governmental decisions are made." (*See*
28   Doc. 53, Hr'ing Tr. at 15:21–16:5); *U.S. Fish & Wildlife Serv.*, 421 U.S. at 785.
           The Court also denies GCU's request to add Exhibit B-5 to the record. B-5 appears
     to be internal e-mails from 2016 discussing the first time the Department denied nonprofit

Exhibits B-8, B-9, B-10, B-11, and B-12—consisting of internal e-mails and summaries addressing the Department's denial of GCU's application, as well as a "Detailed Issue Briefing" on for-profit to nonprofit conversions generally—are deliberative and will not be added to the record based on the Court's preceding analysis. (*See* Docs. 38-13, 38-14, 38-15, 38-16, 38-17.)

However, the Court finds that the documents in Exhibits B-2, B-3, B-4, B-13, and B-14 should be added to the record because they are not deliberative in nature and were at least "indirectly considered" by the Department in reaching its decision. *See Pinnacle Armor, Inc.*, 923 F. Supp. 2d at 1239. Exhibits B-2, B-3, and B-4 are communications, with accompanying attachments, between GCU and the Department concerning its transition to nonprofit status. (Docs. 38-7, 38-8, 38-9.) Although these communications predate GCU's formal application, they mark the beginning of GCU's engagement with the Department over its transition and are unquestionably not deliberative. *See U.S. Fish & Wildlife Serv.*, 141 S. Ct. at 785. Exhibits B-13 and B-14 contain letters from United States Senators to the Department expressing concern over for-profit education companies converting to nonprofit status and either explicitly or implicitly reference GCU. (Docs. 38-18, 38-19.) Given that each letter seemingly targets GCU's transition efforts, the Court finds these letters were at least indirectly considered by the Department in reaching its decision and should also be added to the record.

Lastly, the Court will add Exhibit B-1 to the administrative record. Exhibit B-1 consists of four e-mails exchanged by Department employees Robin Minor and Kathleen Smith between June 22, 2018 and June 24, 2018—a little over a week prior to GCE and Gazelle finalizing the sale of GCU. (*See* Doc. 38-6, Ex. B-1.) Ms. Minor, the Chief

---

status to an IRS recognized 501(c)(3) nonprofit. (*See* Doc. 38-10, Ex. 5.) The Court sees no reason why this document, concerning a different institution's attempted conversion, was even indirectly considered by the Department in denying GCU's application.

Lastly, the Court denies GCU's request to complete the record with any documents produced by a "change-in-ownership" working group set up by the Department. (*See* Mot. at 11.) Beyond claiming that "it strains credulity" that no such documents would be in the record, GCU offers no "non-speculative grounds" for its belief that such documents even exist, let alone that they were considered by the Department. (*Id.*); *see Pinnacle Armor, Inc.*, 923 F. Supp. 2d at 1239.

Compliance Officer at the Department's office of Federal Student Aid ("FSA"), relayed to Ms. Smith, the Deputy Chief Operating Officer at FSA, on June 22 that "[t]he team" and the Office of General Counsel had "completed the analysis of the GCU" request for preacquisition review and determined that GCU would remain a for-profit institution for Title IV purposes after the acquisition by Gazelle. (*Id.*, E-mail from Robin Minor to Kathleen Smith (June 22, 2018, 01:25 PM EST) ("Minor E-mail"); Doc. 43-1, Decl. of Michael J. Frola ¶ 5.) Ms. Minor's e-mail also included an attached "document" that provided the "results of the analysis," but that document is not included in Exhibit B-1. The Court finds these e-mails are not "deliberative" in nature as their primary purpose was to set up a meeting between the "team" and Ms. Smith to discuss the team's analysis, and they do not constitute "advisory opinions, recommendations, [or] deliberations." *U.S. Fish & Wildlife Serv.*, 141 S. Ct. at 785.

GCU's request to have this Court order the Department to produce the attached analysis, however, is denied. The Court agrees with the Department that this document is "classically predecisional, deliberative material" and need not be produced. (*See* Opp'n at 11); *See U.S. Fish & Wildlife Serv.*, 141 S. Ct. at 785 (deliberative documents include "recommendations" for agency action). Contrary to GCU's assertions, the record before this Court does not reflect that this attached "analysis" constituted the final decision of the Department on GCU's application. (*See* Reply at 10.) On their face, the e-mails in Exhibit B-1 show that agency leadership was still discussing the response to GCU's request for preacquisition review. (*See* Minor E-mail (proposing to "have a meeting so that [the team] could explain the transaction and address any questions you have")).) Although Ms. Minor may have had the authority to issue a formal response to GCU's request for preacquisition review, it was the Department's "practice" to have those with such authority consult with the whole of FSA leadership prior to issuing a decision. (*See* Decl. of Michael J. Frola ¶¶ 7–8.) Underscoring that this consultation was ongoing, the Department told GCU that its transaction was still under review by Department leadership as of June 28, 2018, but that they could provide a "preliminary conversation" on the change in ownership on July

2, 2018. (*See* Doc. 38-67, Ex. E-1, E-mail from Donna Mangold to Dennis M. Cariello (June 28, 2018, 02:01 PM EST) ("Mangold E-mail").) The Court concludes that the attached analysis was not "a policy on which the agency ha[d] settled" and therefore need not be produced. *See U.S. Fish & Wildlife Serv.*, 141 S. Ct. at 786.

**2.     Documents Hyperlinked to Spreadsheet**

During pre-acquisition review, GCU provided the Department with a spreadsheet entitled "Survey of Select Education Service Provider Relationships with Post-Secondary Institutions." (JA at 38–45.) The spreadsheet included a breakdown of the revenue share of each relationship, as well as "embedded links" to the agreements to which the analysis in the spreadsheet referred. (*See id.*) Although the submitted spreadsheet is in the record, GCU seeks to complete the record by having the Court add the documents that were accessible in the embedded links because "some of the links are no longer active." (Mot. at 12.)

The Court denies the request. GCU has not sufficiently demonstrated that the Department considered these hyperlinked documents in coming to its decision. *See Save the Colorado*, 517 F. Supp. 3d at 899 ("[D]ocuments merely referenced or cited in another document in the administrative record, without clear evidence that these were considered by the agency cannot be supplemented to the administrative record."); *Ctr. for Native Ecosystems*, 711 F. Supp. 2d at 1278 ("[C]onsideration through citation stretches the chain of indirect causation to its breaking point and cannot be a basis for compelling completion of an [a]dministrative [r]ecord."). GCU still may argue that the Department should have considered the documents and that failure to do so renders its decision arbitrary and capricious. That, however, is not the standard the Court employs today. With no clear evidence that the Department considered the hyperlinked documents in denying GCU nonprofit status, the Court denies the request to add them to the record.

**B.     Discovery**

In addition to its request to complete the administrative record, GCU requests the Court permit it to conduct what it terms "limited discovery," including depositions and

- 13 -

interrogatories. (*See* Mot. at 12–17.) As noted earlier, only four limited exceptions may justify expansion of the Court's judicial review in APA cases beyond the administrative record. *See Animal Def. Council*, 840 F.2d at 1436. GCU raises two of those exceptions in its Motion: bad faith and whether the agency has considered all relevant factors and explained its decision. (*See* Mot. at 12–17.) The Court addresses each basis for discovery in turn.

### 1.     Bad Faith

GCU first contends, relying entirely on the June 22, 2018 through June 24, 2018 e-mail thread discussed above, that the Department acted in bad faith in denying it nonprofit status under Title IV. (*Id.* at 13–15.) According to GCU, these e-mails evidence that the Department "secretly rejected GCU's nonprofit status" and wrongfully withheld its decision until after GCE and Gazelle had closed "on a nearly $1 billion transaction." (*Id.* at 13.) GCU thereby argues it should be granted limited discovery to uncover additional evidence of bad faith. (*Id.* at 15.) The Court does not agree.

Far from a smoking gun, these e-mails do not convince the Court that limited discovery is warranted in this case. For one, the Court rejects GCU's bald assertion that the Department's conduct cannot be explained absent bad faith. (*See id.* at 13 (citing *Palantir USG Inc. v. United States*, 129 Fed. Cl. 218, 237 (2016)). As previously discussed, there is no indication that the Department was misleading GCU on the status of its review. Department staff, together with staff from the Office of General Counsel, had conducted an analysis of the transaction, but that analysis was still under review by FSA leadership. (*See* Minor E-mail.) Indeed, the Department relayed as much to GCU directly. (*See* Mangold E-mail.) Further, GCU is wrong to suggest that the Department's decision on preacquisition review had "no determinate end date." (*See* Mot. at 14.) The Department told GCU that its goal was to discuss the transaction with GCU on Monday, July 2, 2018. (*See* Mangold E-mail.) Although this was likely a frustration to GCU given the transaction's July 1, 2018 closing date, it is clear from the very e-mails GCU relies upon to present bad faith that the Department did not think the July 1 date to be of crucial

1  importance to GCU. (*See* Minor E-mail) (noting that GCU "had originally indicated that
2  they would complete the . . . transaction July 1st," but that GCU had not pressured the
3  Department much to deliver a decision letter by then). These e-mails are insufficient to
4  justify expanding this Court's review beyond the administrative record under the "narrowly
5  construed and applied" exception of bad faith.[9] *See Goffney*, 995 F.3d at 747.

## 2.    Relevant Factors

7  GCU next seeks discovery because of "concerns about the record's completeness."
8  (Mot. at 15.) Largely reiterating many of the points it echoed in its argument to justify
9  completion of the record, GCU believes the Court should permit discovery related to the
10 Department's disparate treatment of GCU, its internal practices, and any agency
11 communications about nonprofit conversions. (*See id.* at 15–17; Reply at 6–9.) GCU argues
12 that such discovery will aid this Court in determining whether the Department considered
13 all relevant factors in coming to its decision and that such discovery is necessary for the
14 Court to conduct "meaningful, in-depth, probing review." (*See* Mot. at 16.)

15 The "relevant factors" exception is the most difficult to apply. *Locke*, 776 F.3d at
16 993. "Reviewing courts may admit evidence under this exception only to help the court
17 understand whether the agency complied with the APA's requirement that the agency's
18 decision be neither arbitrary nor capricious." *Id.* (citations omitted). And it is the moving
19 party's burden to "make a viable argument that failure to supplement the record will
20 'effectively frustrate judicial review.'" *Ctr. for Biological Diversity v. Jewell*, No. CV-12-
21 02296, 2014 WL 116408, at *1 (D. Ariz. Jan. 13, 2014) (quoting *Animal Def. Council*, 840
22 F.2d at 1436); *see also Friends of the Earth v. Hintz*, 800 F.2d 822, 829 (9th Cir. 1980)
23 ("When there is such a failure to explain administrative action as to frustrate effective
24 judicial review, the court may obtain from the agency, either through affidavits or
25 testimony, such additional explanations of the reasons for the agency decision as may prove
26 necessary." (internal quotation marks and citation omitted)).

---

[9] GCU's reliance on a single, out-of-circuit district court case—*Sokaogon Chippewa Cmty.
v. Babbitt*, 961 F. Supp. 1276 (W.D. Wisc. 1997)—does not convince this Court otherwise.
(*See* Reply at 2–6.)

The Court finds that GCU has not met its burden to demonstrate that this Court's judicial review would be effectively frustrated if discovery is not permitted. *See Animal Def. Council*, 840 F.3d at 1436. In essence, GCU requests this Court grant it limited discovery to determine whether the record is actually complete. (*See* Reply at 7.) But this is not the standard for supplementing the compiled record with extra-record discovery, and the Court may only "inquire outside the administrative record when necessary to explain the agency's action." *Animal Def. Council*, 840 F.3d at 1436 (citing *Public Power Council v. Johnson*, 674 F.2d 791, 793–94 (9th Cir. 1982)). The Department provided two lengthy explanations for its decision to deny GCU nonprofit status. (*See* JA at 1–35.) If the Department erred by failing to consider other, allegedly similar agreements in the industry between Title IV nonprofit institutions and their for-profit service providers, GCU can make that argument without discovery. *See Jewell*, 2014 WL 116408 at *1 ("Supplementation of a record will not be allowed whenever a plaintiff, in an attempt to convince a court that an agency made an unwise choice, argues that the agency should have considered other information." (citing *Asarco Inc. v. EPA*, 616 F.2d 1153, 1160 (9th Cir. 1980))).

GCU fails to convince the Court that discovery is warranted under either the bad faith or relevant factors exceptions to the general rule limiting judicial review of agency action under the APA to the administrative record alone.

## IV. CONCLUSION

The Court grants GCU's Motion in part and denies it in part. Exhibits B-1, B-2, B-3, B-4, B-13, and B-14 to GCU's Motion will be added to complete the record. All other requests to complete the record and for limited discovery are denied.

**IT IS ORDERED** granting in part and denying in part Plaintiff Grand Canyon University's Motion to Complete the Administrative Record and Take Limited Discovery (Doc. 38).

**IT IS FURTHER ORDERED** that the Department add Exhibits B-1, B-2, B-3, B-4, B-13, and B-14 to Grand Canyon University's Motion to the administrative record. All

- 16 -

other requests to complete the administrative record are denied.

**IT IS FURTHER ORDERED** that Grand Canyon University's request to conduct limited discovery is denied.

Dated this 3rd day of March, 2022.

_____
Susan R. Bolton
United States District Judge