

January 19, 2018

Mr. William Gonzalez
Chairman of the Board of Directors
Gazelle University, Inc.
3300 W. Camelback Road, Building 26
Phoenix, AZ 85017

RE: Phase 1 Tangible Personal Property Valuation of the Grand Canyon University campus and related properties.

Dear Mr. Gonzalez:

This transmittal letter and accompanied draft Excel schedule is intended to meet specific requirements stated in our November 29, 2017 letter of engagement and reflect our "Phase 1" valuation deliverable pertaining to certain tangible personal property ("Assets") of Grand Canyon Education, Inc. ("GCE").

We understand that our valuation will be used for the nonprofit organization called Gazelle University, Inc. ("Gazelle"), the primary Intended User and Client. Further, it is our understanding that Gazelle management ("Management") is contemplating a transaction (the "Proposed Transaction") in which certain assets of Grand Canyon Education, Inc. ("GCE") that relate to the operation of the Grand Canyon University (the "School Assets") would be sold to Gazelle with GCE retaining the remaining administrative and service-related assets (the "Service Assets").

The purpose of our engagement is to provide our opinion of fair market value ("FMV") of the GCE Assets that represent a portion of the School Assets as of October 31, 2017 (the Phase 1 "Valuation Date"). Also, it is our understanding that Management and their advisors will use the Phase 1 opinion for internal Management planning purposes with respect to the Proposed Transaction.

The standard of value for tax reporting purposes is Fair Market Value (FMV). FMV is defined in Revenue Ruling 59-60 as:

> "the price at which the subject property would change hands between a willing buyer and a willing seller when the former is not under any compulsion to buy and the latter is not under any compulsion to sell, both parties having reasonable knowledge of the relevant facts."

As the tangible assets are valued as a part of a going concern, they have been valued under the in-use premise. This premise assumes that the assets will remain "as-is, where is," and continue to be used at their present location for the continuation of business operations.

We did not investigate any financial data pertaining to the present or prospective earning capacity of the operation in which the tangible assets are used. Our conclusion of fair market value assumes that the prospective earnings will provide a fair return on the appraised value of the assets included in the investigation.

The scope of Phase 1 includes the valuation of certain fixed assets based on use of the GCE fixed asset record ("FAR") provided to us as of October 31, 2017. We used and relied on the FAR as the primary basis to estimate the Assets FMV.

*Mr. William Gonzalez*
*January 19, 2018*
*Page 2*

We performed no audit of the FAR and assume that the record reasonably represents the Assets, principally located at 3300 W Camelback Rd, in Phoenix, Arizona. That being said, during our inspection, we saw many of the assets found in the FAR.

Our valuation included a representative inspection of the significant Assets on December 12 through 15, 2017. We inspected the Assets of the GCE main campus located at 3300 West Camelback Road in Phoenix, Arizona, the Hotel, and Golf Course location. Any GCE off-site satellite locations were valued on a desk-top basis only with no inspection.

Due to the extent of Assets, we employed modeling/mass appraisal techniques using the GCE FAR, relying on the assets description, historical cost and acquisition dates as the starting basis in the valuation. We interviewed appropriate Management and personnel to clarify questions with regard to: additional descriptive data where needed, identification of any significant unrecorded retirements, normal life cycle of assets, anticipated remaining life, condition, utility, and other factors that may impact value.

Due to the nature and age of the subject Assets, we relied primarily on the cost and in some instance, the market approach to estimate the Assets fair market value. While the income approach was considered, it was not applied as we believe it is not feasible to attribute income to the individual subject assets, since the assets contribute earnings in concert with one another and all other economic factors of the operation.

In summary, the Assets generally consist following:

- Furniture and fixtures for offices, classrooms, student housing, hotel and golf course clubhouse, and restaurant equipment;
- Computers and related network computer equipment, software, and audio-visual equipment;
- Vehicles;
- Laboratory, medical, and other equipment including phone systems, grounds equipment, and athletic & fitness equipment;
- Certain leasehold improvements located at sites off campus; and
- Library books (minimal), and musical instruments and other assets.

No other assets (i.e. real property, inventories, materials on hand, assets not included in the FAR provided for the valuation, construction in progress (CIP) and intangibles assets) are included in the scope of this valuation.

Based on the analysis discussed in this letter and presented in the accompanied draft Excel schedule, it is our opinion that the fair market value of the Assets of GCE, as of October 31, 2017 is $92,993,000.00.

Our work paper files contain the documentation that sets forth our analyses and supports our conclusions.

This letter is subject to the terms and conditions specified in our engagement letter dated November 29, 2017, and includes our General Assumptions and Limiting Conditions, Appraiser Certification, and our professional qualifications. Also included is a separate provided schedule of the Assets valued (in Excel format).

*Mr. William Gonzalez*
*January 19, 2018*
*Page 3*

We appreciate the opportunity to perform this engagement and be of service to Gazelle University, Inc. Should you have any questions regarding this Phase 1 draft deliverable, please email me at mjohnson@johnval.com or phone me at 626.914.2846.

Very truly yours,

Johnson Valuation, Inc.

By

President

## General Assumptions and Limiting Conditions

This appraisal report is subject to the following general assumptions and limiting conditions:

1. This is an Appraisal Report in a summary format. As such, it might not include full discussions of the data, reasoning, and analyses that were used in the appraisal process to develop the appraiser's opinion of value. Supporting documentation concerning the data, reasoning, and analyses is retained in the appraiser's file. The information contained in this report is specific to the needs of the client and for the intended use stated in this report. The appraiser is not responsible for unauthorized use of this report.

2. No investigation has been made of, and no responsibility is assumed for, the legal description of the property being valued or legal matters, including title or encumbrances. Title to the property is assumed to be good and marketable, unless otherwise stated. The property is further assumed to be free and clear of any liens, easements or encumbrances unless otherwise stated, and all improvements are assumed to lie within property boundaries.

3. Information furnished by others, upon which all or portions of this appraisal is based, is believed to be reliable, but has not been verified in all cases. No warranty is given as to the accuracy of such information.

4. It is assumed that all required licenses, certificates of occupancy, consents or other legislative or administrative authority from any local, state, or national government or private entity or organization have been, or can readily be, obtained or renewed for any use on which the value estimate contained in this report is based.

5. Full compliance with all applicable federal, state and local zoning, use, occupancy, environmental and similar laws and regulations is assumed, unless otherwise stated.

6. No responsibility is taken for changes in market conditions and no obligation is assumed to revise this report to reflect events or conditions that occur subsequent to the appraisal date thereof.

7. The opinion of value is predicated on the financial structure prevailing as of the date of this appraisal.

8. Responsible ownership and competent property management are assumed.

9. Areas and dimensions of the property were obtained from sources believed to be reliable. Maps or sketches included in this report are only to assist the reader in visualizing the property and no responsibility is assumed for their accuracy. No independent surveys were conducted.

10. No soil analysis or geological studies were ordered or made in conjunction with this report, nor was an investigation made of any water, oil, gas, coal, or other subsurface mineral and use rights or conditions. It is assumed that there are no hidden or unapparent conditions of the property, subsoil, or structures that render it more or less valuable. No responsibility is assumed for such conditions or for arranging engineering studies that may be required to discover them.

11. Unless otherwise stated in this report, no hazardous material, which may or may not be present on or near the property, was observed. We have no knowledge of the existence of such materials on, or in, the property; however, we are not qualified to detect such substances. The presence of potentially hazardous substances such as asbestos, urea-formaldehyde foam insulation, or industrial wastes may affect the value of the property. The value estimate herein is predicated on the assumption that there is no such material on, in, or near the property that would cause a loss in value. No responsibility is

assumed for any such conditions or for any expertise or engineering knowledge required to discover them.  The client should retain an expert in this field if further information is desired.

12. Neither Johnson Valuation, Inc. nor any individual signing or associated with this report shall be required by reason of this report to give further consultation, provide testimony, or appear in court or other legal proceedings unless specific arrangements therefore have been made.

13. This report has been made only for the purpose stated, as of the valuation date, and shall not be used for any other purpose or date.  Neither this report nor any portions thereof (including, without limitation, any conclusions, the identity of Johnson Valuation, Inc. or any individuals signing or associated with this report, or the professional associations or organizations with which they are affiliated) shall be disseminated to third parties by any means without the prior written consent and approval of Johnson Valuation, Inc.

14. The date of value to which the opinion expressed in this report applies is set forth in the opinion letter at the front of this report.  Our value opinion is based on the purchasing power of the United States dollar as of that date.

15. This appraisal has been made in conformance with the Uniform Standards of Professional Appraisal Practice of The Appraisal Foundation.

16. This appraisal report is considered a fractional appraisal in that there is no consideration for business goodwill, royalties, licensing or any other type of intangible assets associated with the business wherein the respective tangible assets are located unless otherwise stipulated in the report.

17. This appraisal is the property of both client and Johnson Valuation, Inc. It is understood by all parties that Johnson Valuation, Inc. reserves the right to retain and reuse the information in this appraisal at its sole discretion without any further approval.

18. The appraiser's opinion of machinery and equipment condition is derived from a limited visual inspection and/or discussions with management, maintenance personnel or operators, if available. The equipment was not tested under power for defects. The values reported assume the equipment is operational and serviceable unless otherwise stated in the report. Desktop valuations exclude inspection.

19. Estimates made on a desktop basis are without the benefit of inspection. Values reported assume the assets are in good condition. If a subsequent investigation reveals otherwise, the values may be significantly different than those reported.

20. This valuation does not constitute a fairness opinion and should not be utilized or relied upon for that purpose. Authorized users of this report should consider the information provided herein along with other sources of information and analysis in their efforts to determine a value for use with respect to any transaction

**Appraisal Certification**

I hereby, to our best knowledge and belief, certify the following statements regarding this opinion:

1. The statements of fact contained in this report are true and correct.
2. The reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions, and is our personal, impartial, unbiased professional analyses, opinions, and conclusions.
3. I have no present or prospective interest in the property that is the subject of this report, and we have no personal interest with respect to the parties involved.
4. I have no bias with respect to the subject matter of this report or to the parties involved with this engagement.
5. My compensation for this engagement is not contingent upon the development or reporting of a predetermined value or direction in value that favors the cause of the Company, the amount of the value opinion, the attainment of a stipulated result, or the occurrence of a subsequent event directly related to the intended use of this report.
6. My engagement for the provision of services was not contingent upon developing or reporting predetermined results.
7. My analyses, opinions, and conclusions were developed, and this report has been prepared in conformity with, generally accepted standards and are subject to the requirements of the code of professional ethics and standards of professional conduct of the professional appraisal organizations of which I am a member.
8. I am in compliance with the certification programs of the professional appraisal organization of which we are members.
9. My analyses, opinions, or conclusions were developed, and this report has been prepared, in conformity with the *Uniform Standards of Professional Appraisal Practice*.
10. I have performed no services, as an appraiser or in any other capacity, regarding the property that is the subject of this report within the three-year period immediately preceding acceptance of this assignment.
11. No one provided significant personal property assistance to the person signing this certification.
12. I have made a personal inspection of the majority of tangible assets. A desktop appraisal was performed on certain offsite satellite locations as specified in this report.

*[signature: Mark S. Johnson]*

Mark S. Johnson, ASA
Machinery & Technical Specialties
American Society of Appraisers

AR-C-0524

# Johnson Valuation, Inc.
## MACHINERY & EQUIPMENT VALUATIONS



**MARK S. JOHNSON, ASA**
*President*

**Johnson Valuation, Inc.**

Phone : 626.914.2846
Cell:     626.905.9557

Email :  mjohnson@johnval.com
Web:    www.johnval.com

**Specialization**
- Tangible Asset Valuations (Machinery and Equipment)
- Specialize in unique and one-of-kind assets
- Specialize and valuation of unique improvements
- Development of property records
- Inventory and tagging of assets

**Education & Certifications**
- BA degree, Industrial Arts, California State University at Los Angeles
- Accredited Senior Appraiser (ASA) of the American Society of Appraisers (Machinery and Technical Specialties)

## Background

Mark Johnson, ASA is President of Johnson Valuation, Inc. (JVI). He has over 37 years of machinery, equipment, specialized tangible asset valuation and consulting experience. He is responsible for and involved in a wide range of valuation engagements for financial reporting purposes (in conformance with ASC 820) including: ASC 805, and ASC 360, audit-assist appraisal reviews, and fresh-start accounting. Other appraisal purposes include: various tax matters, asset-based financing, litigation support, condemnation proceedings, insurance placement, and a variety of other appraisal-related services.

Prior to starting JVI in 2011, Mark worked for KPMG where he served as a managing director in KPMG's Economic and Valuation Services group. Additional experience includes Arthur Andersen's Valuation Services Group and Deloitte Financial Advisory Services, LLP where he led the firm's Pacific Southwest tangible asset valuation and fixed asset management consulting group.

## Professional and Industry Experience

- Mr. Johnson teams with business valuation and real property valuation appraisers to coordinate all aspects of valuations for financial reporting purposes. He has been involved with hundreds of valuation reviews for financial reporting of small and large publicly traded companies.

- He has supervised and conducted machinery and equipment and construction valuations within a diverse group of industries including: Agriculture, Aerospace, Automotive, Aerospace, Broadcasting, Construction, Distribution, Entertainment, Financial, Food Processing, Gaming, Healthcare, Hospitality, Manufacturing and Metal Working, Mining, Petroleum, Pharmaceuticals, Plastic, Power Generation, Publishing, Pulp & Paper, Retail and Service, Semiconductor, Steel and Heavy Industrial, Tele-communications, Textiles, Timber and others.

- Has conducted hundreds of valuations on numerous small business to large corporations throughout the United States as well as multiple international assignments including: Canada, the former Yugoslavia, France, China, Peru, Thailand, Israel, Singapore, Mexico, Japan, and Puerto Rico.

- Has testified as an expert witness in California, Kansas, and Missouri.

- Has extensive experience with assisting clients "clean up" and maintain accurate property records through fixed asset management and inventory services.

- Has developed replacement costs, fair value, fair market value, and liquidation values estimates for all types of assets using individual assets and mass appraisal techniques, production capacities considerations, and cost engineering techniques.

- Performed useful and remaining life studies taking into consideration physical deterioration, and obsolescence due to functional and/or economic conditions.

- Has previously served the ASA in numerous capacities including:  member, Board of Governors (Region 9 - Southern California and Nevada, 1999-2003); Chair, ASA International Performance Evaluation Committee Member; ASA Publications and Editorial Review Board; President, Vice President, Treasurer and Examiner Chairman, for the Los Angeles Chapter. Currently serves as a Member of the American Society of Appraisers International Board of Examiners Committee.