**RESPONSES TO REQUESTS FOR INFORMATION**

1. Produce any appraisals, valuations, valuation summaries, or valuation reviews obtained or commissioned by any party to the Transaction for purposes of valuing the Transaction.

   **Response**:
   Please see emailed information titled "GCU Response #1."  The appraisals include real and personal property to be sold to Gazelle University.  These appraisals were performed for Gazelle as of October 31, 2017.   The appraisal firms have been re-engaged to update these appraisals through the closing of the transaction.  Gazelle University has also hired Kotzin and Associates to perform an appraisal of the intangible assets to be acquired, however, it should be noted that this valuation is for accounting purposes only as GCE has agreed to sell these intangibles for $1.00.

2. Identify the members of Gazelle's Board from incorporation to present, including whether each member is a "public member."

   **Response**:
   From incorporation to present, the following are the only Board members of Gazelle.
   Brian Mueller
   Will Gonzalez – public member
   Dr. Jim Rice – public member
   Dr. Fred Miller – public member
   Don Andorfer – public member

3. Identify the principal executive officer of the Foundation.

   **Response**:
   Brian Mueller, President, Secretary and Treasurer

4. Describe how the size of the Foundation's Board (5 out of a maximum of 11) was determined and how the current members were selected.

   **Response**:
   The Foundation's Bylaws provide for no less than three (3) and no more than eleven (11) directors.  The five members of the Gazelle University Board were selected to be the same five members of the GCU Foundation Board.  This was done to ensure consistency and alignment between the interests and mission of the Foundation and Gazelle University and because the five members are long-term members of the University's Board of Trustees who are intimately familiar with the mission of the institution and the proposed transaction.  The Foundation and Gazelle University are reviewing potential new Trustees to increase the size of their respective Boards immediately upon, or subsequent to, the closing of the proposed transaction.  Candidates being considered would all be considered "public members."

5. Identify any provisions governing future decisions about the size of the Foundation's Board and the number of directors who must be public members.

**Response**:
The Gazelle University Bylaws provide that the Board of Trustees of Gazelle University shall consist of the same individuals who are members of the Board of Directors of Grand Canyon University Foundation.  This was done to ensure a consistent alignment between the interest and mission of the Foundation and Gazelle University.  There are no specific provisions governing future decisions about the size of the Foundation's Board aside from the ability of the Foundation's existing Board members to elect new members at its discretion.  The members of the Foundation and Gazelle University Boards are reviewing potential candidates to be added immediately upon, or subsequent to, the closing of the proposed transaction.  Candidates being considered would all be considered "public members."  The Foundation Bylaws provide that some members of the Board of Directors shall be "public members."  The intention of the Foundation's Board to ensure that "public members" represent a majority of its members at all times.  It is currently contemplated that Brian Mueller will be retained as President of Gazelle and GCE following the closing of the Transaction and that Mr. Mueller would resign as a member of the Board of Trustees and Board of Directors of Gazelle and the Foundation, respectively.  As such, it is also contemplated that Article II, Section 4 of the Gazelle Bylaws will be amended, prior to the Closing, to eliminate the requirement that the President of the University shall be a member of the Board.

6. Other than the Transaction, identify all personal or business relationships among any member of Gazelle's and/or the Foundation's Board and:

   a. any executive officer of Gazelle;
   b. any executive officer of the Foundation;
   c. any member of GCE's Board;
   d. any executive officer of GCE;
   e. any of GCE's principal stockholders;
   f. any person who is not a member of Gazelle's Board but was or is a member of a committee formed by Gazelle under Article III of its Bylaws;
   g. any entity of which any person or entity identified above is an officer, director, trustee, direct or indirect owner, partner, or employee.

   **Response**:
   None, but to provide additional clarity, (a) Brian Mueller is CEO and Chairman of the Board of Directors of GCE, President and member of the Board of Trustees of Gazelle, and President, Secretary and Treasurer and member of the Board of Directors of the Foundation, and (b) from time to time, Board members, executive officers of the Foundation, Gazelle University and/or GCE have served adjunct faculty members of Grand Canyon University.   It is currently contemplated that Mr. Mueller will resign his position as a member of the Board of Trustees of Gazelle and as a Director of the Foundation.

7. State whether GCE is a company with which Gazelle or the Foundation does "substantial business" as used in Article III of the Foundation's Bylaws.

   **Response**:

    Yes, upon the closing of the Transaction based upon the Transaction documents that you have seen.

8. Describe the due diligence efforts by Gazelle and the Foundation with respect to the Transaction and produce any documents relating thereto.

    **Response**:
    Gazelle and the Foundation have been represented throughout the Transaction by the law firms of Gallagher & Kennedy, as outside corporate counsel, and Cooley, as outside regulatory counsel, and have received financial advisory services from Wells Fargo and Bank of America.  In addition, they have engaged independent valuation reports and analyses from various experts and a transfer pricing study by Deloitte.  The various reports and studies performed by these representatives, not covered by attorney-client privilege, have been relied upon by Gazelle and the Foundation in completing their due diligence with respect to the Transaction.  In addition, the Schedules produced in conjunction with the agreements, and the agreements themselves, reflect the diligence efforts completed in connection with this Transaction.  Copies of the above-described reports, studies and Schedules are being provided in response to the various Requests for Information herein.

9. Produce any PowerPoint presentations, summaries, reports, or similar documents presented to the Board of Gazelle, the Foundation, and GCE related to the Transaction.

    **Response**:
    Please see emailed information titled "GCU Response #9(a)," "GCU Response #9(b)," and "GCU Response #9(c)."  See "GCU Response #10" for the most recent financial report relating to the Transaction.

10. Produce all documents assessing or analyzing the financial impact of the Transaction on Gazelle, the Foundation, or GCE, including documents reflecting projected revenue streams/losses as a result of the Transaction, including any pro formas relating to the MSA.

    **Response**:
    Please see emailed information titled "GCU Response #10."  The University continues to refine the financial statements based on actual results through March 31, 2018 and its normal forecasting process.  Attached in "GCU Response #10" is our most recent forecast which shows revenue less expenses of approximately $20 million for the University in the first fiscal year.

11. Produce board meeting minutes, resolutions or consents relating to the Transaction.  This request includes the board of Gazelle, the Foundation, and GCE (and any subcommittees thereof).

    **Response**:
    Please see emailed information titled "GCU Response #11."  Please note that Brian Mueller has not been involved in the negotiation of the Transaction.   The negotiation has been between the

public members of the board of Gazelle and the independent board members of GCE who have each relied extensively on their respective independent outside counsel and financial advisory firms.

12. Produce Gazelle's and the Foundation's Form 990s for the past three years.

    **Response**:
    Please see emailed information titled "GCU Response #12."

13. Provide the schedule of employees to be transferred to Gazelle as contemplated in APA, Section 6.4. Include each employee's current salary and the terms of any other compensation to which the employee is or may be entitled.

    **Response**:
    Please see emailed information titled "GCU Response #13." In addition to the information included provided under "GCU Response #13," a limited number of employees who are transferring to Gazelle had previously received equity awards from GCE. It is currently contemplated that the outstanding, unvested equity awards received by these individuals will be terminated at the closing of the Transaction and the value of these awards will be replaced with a cash-based deferred compensation plan that will vest over the period of time that the equity awards were scheduled to vest. Please see emailed information titled "GCU Response #13" for a copy of the deferred compensation plan. Please also note that the Board of Gazelle has hired a not-for-profit compensation consultant to analyze the compensation of its leadership team to ensure that it is consistent with market rates.

14. Identify any GCE employees to be jointly employed by GCE and Gazelle and explain how joint employee compensation has been or will be determined.

    **Response**:
    As approved by HLC, it is currently contemplated that Brian Mueller will be the only employee jointly employed by both GCE and Gazelle. We are awaiting feedback from the Department before the Boards formalize the final compensation arrangements for Mr. Mueller with each entity. It is currently contemplated, however, that Mr. Mueller's current salary and bonus will remain unchanged and be divided evenly between Gazelle and GCE beginning with the closing of the Transaction. In addition, Mr. Mueller would continue to hold equity, and be eligible for future equity awards, as part of his overall compensation arrangement with GCE.

15. Produce any Schedules or Exhibits to the APA, MSA, and CA not previously provided and produce any amendments to the draft documents previously provided.

    **Response**:
    Please see emailed information titled "GCU Response #15."

16. State whether the parties have agreed on the terms of the CA, including the interest rate and loan amounts and, if so, describe those terms.

    **Response**:
    The purchase price, which is estimated to be approximately $825 million to $875 million at the closing of the Transaction, would be paid in the form of a seven-year senior secured note. The CA would provide for interest only payments, with all principal and accrued and unpaid interest due at maturity. It is currently anticipated that the annual interest rate on the senior secured note would be approximately 6.0%.

17. Produce the Conflict of Interest Policy reference in Gazelle's Bylaws.

    **Response**:
    Please see emailed information titled "GCU Response #17."

18. Identify all persons or entities that have been engaged to perform any transfer pricing study in connection with the Transaction, their engagement letters, and any studies produced by them.

    **Response**:
    Gazelle engaged Deloitte to perform a transfer pricing study. Please see emailed information titled "GCU Response #18."

19. Explain how Gazelle and/or the Foundation are paying for the legal, appraisal, transfer pricing study, and other advisory services used or contemplated in connection with the Transaction.

    **Response**:
    GCE is advancing the funds necessary to pay for the legal, appraisal, transfer pricing study, and other advisory services used or completed in connection with the Transaction. Upon the closing of the Transaction, the funds that were advanced will be added to the total amount due under the terms of the senior secured note that would be subject to the terms of the CA, or at the discretion of the Board of Directors of GCE, may potentially be forgiven.